**2022-1898**

# United States Court of Appeals
### for the
## Federal Circuit

**RETURN MAIL, INC.,**
*Plaintiff-Appellant*

v.

**UNITED STATES,**
*Defendant-Appellee*

Appeal from the Judgment and Order Denying Motion to Alter Judgment
in the United States Court of Federal Claims, Case No. 1:11-cv-130-CFL
Charles F. Lettow, Senior Judge

## PLAINTIFF-APPELLANT'S NON-CONFIDENTIAL
## PRINCIPAL AND OPENING BRIEF

Alfred R. Fabricant
Peter Lambrianakos
Vincent J. Rubino, III
Joseph M. Mercadante

FABRICANT LLP
411 Theodore Fremd Avenue
Suite 206 South
Rye, New York 10580
(212) 257-5797
ffabricant@fabricantllp.com
plambrianakos@fabricantllp.com
vrubino@fabricantllp.com
jmercadante@fabricantllp.com

*Attorneys for Plaintiff-Appellant*

## <u>PATENT CLAIMS AT ISSUE</u>

### U.S. Patent No. 6,826,548

42.     A method for processing a plurality of undeliverable mail items, comprising:

receiving from a sender a plurality of mail items, each including i) a written addressee, and ii) encoded data indicating whether the sender wants a corrected address to be provided for the addressee;

identifying, as undeliverable mail items, mail items of the plurality of mail items that are returned subsequent to mailing as undeliverable;

decoding the encoded data incorporated in at least one of the undeliverable mail items;

creating output data that includes a customer number of the sender and at least a portion of the decoded data;

determining if the sender wants a corrected address provided for intended recipients based on the decoded data;

if the sender wants a corrected address provided, electronically transferring to the sender information for the identified intended recipients that enable the sender to update the sender's mailing address files; and

if the sender does not want a corrected address provided, posting return mail

data records on a network that is accessible to the sender to enable the

sender to access the records.

44.     The method of claim 42, wherein the encoded data further indicates a

name and address of the intended recipient.

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Return Mail, Inc. certifies the following:

1. Provide the full names of all entities represented by undersigned counsel in this case:

   **Return Mail, Inc.**

2. Provide the full names of all real parties in interest (if the party named in the caption is not the real party in interest) for the entities. Do not list the real parties if they are the same as the entities:

   **None/Not Applicable**

3. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10 percent or more of the stock in the entities:

   **None/Not Applicable**

4. The names of all law firms and the partners or associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4):

   **COVINGTON & BURLING LLP, One City Center, 850 Tenth Street, NW, Washington, D.C. 20001-4956: George F. Pappas, Richard L. Rainey, Steven J. Rosenbaum**

   **SMYSER, KAPLAN & VESELKA, L.L.P., 700 Louisiana Street, Suite 2300, Houston, TX 77002: Lee L. Kaplan**

   **ELLIOTT LAW PLLC, 6750 West Loop South, Suite 995, Bellaire, TX 77401: Doug Elliot**

5.    The following cases are pending in a court or agency and will directly affect or be directly affected by this court's decision in the pending appeal:

***Return Mail, Inc. v. USA*, Case No. 1:11-cv-00130-CFL (U.S. Court of Federal Claims**

6.    Provide any information required, Case No under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

**None/Not Applicable**

Dated:  November 10, 2022        By:    */s/ Alfred R. Fabricant*
                                        Alfred R. Fabricant
                                        Fabricant LLP

# **TABLE OF CONTENTS**

**Page(s)**

PATENT CLAIMS AT ISSUE.................................................................. i

CERTIFICATE OF INTEREST ............................................................ iii

STATEMENT OF THE ISSUES..............................................................1

INTRODUCTION ....................................................................................2

STATEMENT OF THE CASE..................................................................3

    I.      OVERVIEW.....................................................................3

           A.    The Postal Service Solution ...................................... 3

           B.    Return Mail's Solution............................................. 6

           C.    U.S. Patent No. 6,826,548...................................... 13

    II.     PROCEDURAL HISTORY ............................................27

    III.   SUMMARY JUDGMENT................................................29

SUMMARY OF THE ARGUMENT ......................................................29

ARGUMENT AND STANDARD OF REVIEW....................................30

    IV.   STANDARD OF REVIEW .............................................30

    V.     SUMMARY JUDGMENT WAS INAPPROPRIATE IN
              VIEW OF DISPUTED MATERIAL FACTS AND
              CONFLICTING EXPERT TESTIMONY .........................32

           A.    Procedure Requires Disputed Material Facts to be
                  Resolved in Favor of the Non-Moving Party ......... 32

           B.    Experts Disagreed Regarding *Alice* Step Two, Including
                  What Is Routine and Conventional .......................... 38

    VI.   THE COURT OF FEDERAL CLAIMS' *ALICE* ANALYSIS
              WAS FLAWED .................................................................39

A.    The Court of Federal Claims Ignored its own Claim
      Constructions Which Introduced Additional Structure to
      the Claims ................................................................ 40

B.    After *Berkheimer*, *Alice* Step Two Requires a Factual
      Determination of Which Steps Are Well-Known,
      Routine, and Conventional........................................... 43

C.    The Court's *Alice* Analysis was Improperly Undertaken
      Based on Vacated Proceedings with an Incomplete
      Record Under a Pre-*Berkheimer* Paradigm ............................ 48

D.    The Elements of the Claims Must be Considered
      Individually and as an Ordered Combination ........................... 50

CONCLUSION ................................................................54

CERTIFICATE OF COMPLIANCE .....................................................55

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014)..................................................................*passim*

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................31, 32

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ................................................*passim*

*buySafe, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) ........................................................40

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019) ........................................................31

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
No. 17-cv-05928-YGR, 2021 WL 1421612 (N.D. Cal. Apr. 14,
2021) ........................................................................................35

*Cherokee Gen. Corp. v. United States*,
150 Fed. Cl. 270 (2020) ...........................................................38, 39

*Cooper v. Ford Motor Co.*,
748 F.2d 677 (Fed.Cir.1984) ....................................................32, 33

*DIRECTV Group, Inc. v. U.S.*,
670 F.3d 1370 (Fed. Cir. 2012) ........................................................32

*Eagle View Techs., Inc. v. Xactware Sols., Inc.*,
358 F. Supp. 3d 399 (D.N.J. 2019)....................................................35

*EcoServices, LLC v. Certified Aviation Servs.*, LLC,
830 F. App'x 634 (Fed. Cir. 2020) ....................................................43

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ..................................................41, 42

*I4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed.Cir.2010), cert. granted, 562 U.S. 1060 (2010) .................38

*Jagoe v. Sec'y of Dep't of Health & Hum. Servs.*,
  No. 08-678V, 2012 WL 13036265 (Fed. Cl. Aug. 3, 2012) .......................38, 39

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012)...............................................................................................40

*Microsoft Corp. v. i4i Ltd. P'ship*,
  564 U.S. 91 (2011)...............................................................................................31

*Miller v. Dep't of Justice*,
  842 F.3d 1252 (Fed. Cir. 2016) .........................................................................31

*Ocado Innov., Ltd. v. AutoStore AS*,
  No. 21-cv-41-JL, 2021 WL 3604249 (D.N.H. Aug. 13, 2021) ........................45

*Price v. Symsek*,
  988 F.2d 1187 (Fed. Cir. 1993) .........................................................................31

*Return Mail, Inc. v. U.S. Postal Serv.*,
  774 F. App'x 684 (Fed. Cir. 2019) ....................................................................28

*Return Mail, Inc. v. U.S. Postal Serv.*,
  868 F.3d 1350 (Fed. Cir. 2017), rev'd, 139 S. Ct. 1853 (2019)..................28, 46

*Santosky v. Kramer*,
  455 U.S. 745 (1982)............................................................................................32

*Slyce Acquisition Inc. v. Syte-Visual Conception Ltd.*,
  No. W-19-cv-257, 2020 WL 278481 (W.D. Tex. Jan. 10, 2020)......................32

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  839 F.3d 1138 (Fed. Cir. 2016) .........................................................................40

*TecSec, Inc. v. Adobe Inc.*,
  978 F.3d 1278 (Fed. Cir. 2020) ....................................................................41, 49

*U.S. Postal Serv. v. Return Mail, Inc.*,
  No. CBM2014-00116, 2014 WL 5339212 (P.T.A.B. October 16,
  2014) ...............................................................................................................27, 28

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) ............................................................38

*Vaporstream, Inc. v. Snap Inc.*,
No. 2:17-CV-220, 2020 WL 136591 (C.D. Cal. Jan. 13, 2020)..................48, 49

*Wells Fargo & Co. v. United States*,
827 F.3d 1026 (Fed. Cir. 2016) ..........................................................30

**Statutes**

35 U.S.C. § 101 .............................................................................*passim*

35 U.S.C. § 282 ................................................................................31

**Other Authorities**

Rules of the Court of Federal Claims 56(a) ............................................31

## STATEMENT OF THE ISSUES

1.    Did the Court of Federal Claims err in its determination that there was no genuine issue of material fact regarding whether the claims offer any kind of new application of processing undeliverable mail and providing an updated address where procedure requires any dispute of material fact be resolved in favor of the non-movant and where there was conflicting qualified expert testimony?

2.    Did the Court of Federal Claims err by not incorporating structure imparted by its own claim constructions in its *Alice* analysis?

3.    Did the Court of Federal Claims err by granting summary judgment where Appellee did not put forth proper evidence of which limitations were well-understood, routine, and conventional, and the Court also did not perform this analysis?

4.    Did the Court of Federal Claims err by improperly crediting the findings of prior vacated proceedings adjudicated with an incomplete record under a pre-*Berkheimer* paradigm?

5.    Did the Court of Federal Claims err in its *Alice* analysis by not properly considering the claims as an ordered combination?

## **INTRODUCTION**

The claims of U.S. Patent No. 6,826,548 ("the '548 Patent"), when viewed as a complete ordered combination, presented a landmark advancement within the concrete application of processing returned mail pieces. The '548 Patent discloses a physical and technological process with a specific combination of hardware and software (including decoding data with decision-logic as to a corrected address or not), that have been adapted and configured in a certain way ("upstream process" rather than "downstream process," *see infra* Section I.C) to create technological improvement to the process of handling returned mail. The claimed inventions were not well-understood, routine, and conventional at the time of the invention—nearly twenty years ago—and represent specific improvements over the prior art and prior existing systems and methods.

The Court of Federal Claims improperly granted summary judgment where there was a genuine issue of material fact and conflicting expert testimony. The Court also undertook a flawed *Alice* analysis where it ignored its own claim constructions (which provided additional structure), and it did not identify which limitations were well-known, routine, and conventional, as required under *Berkheimer*. The Court improperly credited findings from vacated decisions and did not consider the elements of the claims as an ordered combination.

2

## STATEMENT OF THE CASE

### I.    OVERVIEW

#### A.    The Postal Service Solution

In 2001, the Postal Service attempted to track customer moves by having customers submit change of address information on a form to the Postal Service. Appx711, 4; Appx768, 5; Appx778, 26. The Postal Service forwards the physical form to a Computerized Forwarding System (CFS) unit, where the data from the form is manually entered into a computer. *Id.* This information is then put into local and national databases for use by several address correction technologies. *Id.*

Undeliverable mail was a massive problem for the Postal Service: "Approximately 40 million postal customers move each year, and each move may require a change in a postal customer's mailing address." Appx766, 1:26-28.

By 2001, the Postal Service had introduced several technologies for handling the problem of incorrectly addressed mail: the National Change of Address ("NCOA") database, FASTforward, and Address Change Service ("ACS"). Appx747, Fig. 4. Two of these technologies (NCOA and FASTforward) were pre-mailing technologies, *i.e.*, directed at preventing undeliverable mail by correcting mailing addresses before a sender mails a letter. *Id.*; Appx 767, 4:28-58. These pre-mailing technologies "use USPS provided data to correct the given addresses" in a mailing list. *Id.* Mailing lists can be run against the NCOA database at periodic intervals (*e.g.*, every six months). Appx788, 1:54-59. FASTforward has the

additional "capability [of] correcting the destination address on the mailpiece," if "a change of address notification or forwarding order exists for a given addressee." Appx789, 3:8-11.

The third Postal Service technology (ACS) was a post-mailing technology that sought to deal with undeliverable mail after a sender had mailed the piece Appx747, Fig. 4, Appx767, 4:28-58. Unlike the pre-mailing technologies, ACS is directly administered by the Postal Service. *Id.* When a postal carrier cannot deliver a mail piece due to customer relocation, the mail item may be sent to a CFS unit. Appx711. A CFS clerk then types in the information from the envelope to look up the name and address on the mail item in the CFS look-up database, *id.*, Appx747, Fig. 4, Appx 767, 4:28-58 & Appx825. If the clerk finds a match between the name and address on the hard copy mail item and the information in the look-up database, then in certain situations there was an opportunity for an electronic notification to be generated. Appx711. Thus, ACS was "an electronic enhancement to and not a replacement of the traditional manual address correction process." Appx736; Appx254, ¶ 41. Although ACS provided the ability to electronically transmit addresses, the remainder of ACS required traditional manual address correction processes:

> ACS customers must register and be assigned a Participant ID (7 characters), determine the desired disposition of the mail piece if it cannot be delivered as addressed, and then prepare the mail piece with that information and may include an additional 4 to 16 character line

(Keyline) that identifies the addressee. Correct handling of that undeliverable piece requires ***that an employee recognize that the mail cannot be delivered as addressed, the reason that it can't, the endorsement or lack thereof that determines the mail piece disposition, and manual keying of the Participant ID and Keyline (where used) along with other envelope elements.***

Appx825 (emphasis added) (describing state of ACS in 2004); Appx254-255, ¶ 42 (1997 ACS "was very much still a manual system"). But this "manual processing of ACS information is less than optimal" because "[m]anual data entry is costly and is subject to human error." Appx835-837; Appx254-255, ¶¶ 41-42.

A fundamental problem with ACS is that a "relatively high amount of mail . . . is undeliverable because the intended recipient has moved and not left a forwarding address." Appx788, 1:32-35. This problem was particularly acute for high-volume mailers, such as bulk mail advertisers, who would often use mailing lists to send many thousands of mail pieces each month. *See* Appx53, 1:25-38, Appx254, ¶ 41. Such high-volume mailers would often not want to pay to find new addresses for a mailing list that they were renting. Appx4135-4137. Thus, mailers with rented lists would simply use out-of-date mailing lists, thereby incurring unnecessary costs (*e.g.*, lost postage, lost opportunity) associated with undeliverable mail. *See id.* Failure to correct mailing lists also inflicted costs on the Postal Service for handling returned mail. *See* Appx844-854.

Around 2000, the Postal Service was developing pilot tests for the Postal Automated Redirection System (PARS), a then "state of the art strategy and

technology." Appx856-857. Similar to the pre-mailing NCOA and FASTforward technologies, PARS attempted to correct addresses before attempted delivery. Unlike those technologies, however, PARS was implemented by the Postal Service directly rather than its licensees. PARS focused on "[p]oint of entry redirection" so that improperly addressed mail could be intercepted and redirected to the correct location, thereby "allow[ing] processing to the final, proper destination without delay." Appx856, Appx858. Otherwise, an incorrectly addressed "mailpiece must be processed to the customer addressed destination, manually identified, and handled by the carrier, then rehandled and sent to the redirection process in the local plant." Appx858.

### B.    Return Mail's Solution

By 2000, Plaintiff Return Mail had begun developing a system for processing *returned* mail in a much more efficient and robust way. As Return Mail realized, there was an important technological need that the Postal Service had not fulfilled: automating the processing of returned mail *after* a failed delivery attempt. Appx53, 1:55-60 (emphasis added); Appx252-253, ¶ 36. Return Mail further recognized that such mail would often be undeliverable "because the intended recipient has moved without notice," *e.g.*, had moved without providing a forwarding address to the Postal Service. Appx53, 1:29-33. Because the Postal Service lacked a forwarding

address, it was important to collect as much information from the returned mail as possible.

At the time of the '548 Patent invention, the system described in the 1997 ACS was state-of-the-art for the Postal Service, and so it is an ideal point of comparison. In addition, both the 1997 ACS and the '548 Patent claims are in the "field" of "processing of returned mail" and, in fact, the same subfield, essentially that of providing updated address information to mailers.

There were a number of obvious technical shortcomings with the return mail processing that existed before the '548 Patent, including an inability to handle large volumes of mail efficiently and also inaccuracy of processing. The problem with 1997 ACS is that, although the Appellee attempts to characterize it as an automatic system, it was not. Externally, the 1997 ACS provides electronic address notifications, and so is more automated than the previous approach. However, internally, the 1997 ACS was very much still a manual system. As part of the process at the time of the 1997 ACS, the CFS operator must read (which is not decoding) a mail piece and type in the participant code and also correctly read any endorsements and act on them accordingly. A further requirement is that the participant code must be looked up in a database to see if it is active. This is part of what the CFS operator does in the processing of the mail piece at the time of the 1997 ACS.

Unlike the Postal Service, which prior to 2004 focused on reading plain-text information from returned mail through keyed data entry or using optical character recognition (OCR) technology, Return Mail realized that it would be important to encode all useful information into a "block of machine-readable data," such as a 2-D barcode. Appx53, 2:66-3:10; Appx252-253, Appx260, ¶ 36, 58. And Return Mail identified a particularly important type of information to be encoded on the mail: *information indicating whether the sender wants an attempt made to provide a corrected address for the intended recipient*. Appx50, Fig. 3; Appx248, Appx256-257, ¶¶ 11, 48. Using that information, Return Mail developed technology that provided useful results to the sender, based on whether the sender wanted updated address information:



FIG. 3

If the sender wanted updated address information, then Return Mail could send such information. Appx50, Fig. 3 (elements 308 through 316). But if the sender did not want updated address information, perhaps due to a cost concern (*see e.g.*, Appx4135-4137), then Return Mail could still provide useful information in the form of data records obtained from the block of machine-readable data on the undeliverable mail. *See* Appx50, Fig. 3 (elements 304 and 306). That would allow

the sender to take further steps, such as deleting obsolete addresses from a subsequent mailing. *See* Appx53, 2:17-33.

Furthermore, in claims 42 and 44, the encoded decision logic is decoded at a later strategic point in the mailing process, after the mail item is identified as being "undeliverable" and begins to move back in an upstream direction are the sender's wishes decoded, and then acted upon. The consequences of performing that decoding at that particular point in the mailing process are important because only a small subset of mail items needs to be decoded, which makes the process focused, efficient, and fast. And, as the unrebutted evidence has established, the United States Postal Service has itself incorporated the patented invention in its OneCode ACS process and benefited richly. *See* Appx609-618, ¶¶947-971. It was the Postal Service's use of Return Mail's patented invention that provided the benefits, not the Delivery Confirmation service.

Using its invention, Return Mail, under the direction of inventor and president Mitch Hungerpillar, began processing returned mail for a variety of customers and continues to process returned mail for customers to this day, although this business has been harmed by the Postal Service's subsequent activity in this space. Appx5064. Return Mail also filed patent applications for its invention in 2001 and 2002.

Between 2003 and 2006, Return Mail discussed its invention with the Postal Service. Appx5065-5068. Around April 2003, Mr. Jeff Freeman, the Postal Service's Manager of Mail Technology Strategy called Return Mail to discuss its invention. *Id*. In 2004, U.S. Patent No. 6,826,548 B2 issued to Return Mail. Subsequent technical discussions between the parties culminated in a January 2006 meeting about licensing the '548 Patent and a joint pilot program to use Return Mail's invention. Appx5065-5068.

Rather than license Return Mail's invention, the Postal Service introduced OneCode ACS technology in the Spring of 2006. Appx5065-5068. OneCode ACS introduced a "Tracking Barcode" to "create[] a unique identifier that can be scanned and recorded to trace mailpieces." Appx827; Appx263, ¶ 64. Thus, a "barcode reader" could be used to "determine data usually obtained from the mailpiece as keyed data entry or Optical Character Reader (OCR) produced data." Appx827. And "[s]ome of the data normally printed in text on the mail would instead be contained in the barcode." *Id*. This new barcode also includes information that "represent[s] the service" desired by the mailer, *i.e.*, whether the mailer wants address services to be provided. *Id.* The Postal Service subsequently sought and obtained a patent on OneCode ACS. *See* Appx794-833, Appxs893-938.

In 2003 the Postal Service described the technological advantages provided by its proposed OneCode ACS system, which also was known during development as PLANET-ACS:

> Manual processing of ACS information is less than optimal. Manual data entry is costly and is subject to human error. . . . [E]ven where technology can be applied to processing of UAA mail pieces there still remains problems in the proper identification and interpretation of the multiple values that must be factored in every disposition decision. PARS cannot always read the ancillary service endorsement, the ACS participant code, the ACS keyline, and the mail class determination from each mail piece that is necessary prior to making a disposition decision. Consequently, even in a PARS-enabled environment the USPS must still expend manual effort on a significant portion of UAA mail to properly process the mail piece and provide the mailer-requested services.

> Through the PLANET I ACS pilot, the USPS seeks to evaluate whether the use of a machine-readable barcode can improve the read rates of ACS mail. The plan is to replace alphanumeric values that are currently used to request ACSprocessing with a barcode that conveys the same information.

Appx879-880. As the foregoing excerpt makes clear, in 2003—more than a year after Return Mail filed its patent application and began commercially processing mail—the Postal Service was still evaluating whether encoded data could improve return mail processing. By contrast, Return Mail had recognized the importance of encoding data to allow the functionality of upstream processing, indicating whether the sender wants a corrected address onto a mailpiece long before the Postal Service did.

### C.    U.S. Patent No. 6,826,548

The inventions claimed in the '548 Patent are directed to technological architecture for undeliverable mail processing and, more particularly, to methods, systems, and products for processing undeliverable mail, *e.g.*, mail that is not delivered due to an inaccurate or expired address for the intended recipient. Appx53-54, 1:20-24, 1:29-38, 3:21-24.; Appx253, Appx270, ¶¶ 38, 83.

The '548 Patent solved the prior art problems, not just by computerizing previously manual tasks, but by drastically changing the entire method of handling returned mail. The claims of the '548 Patent require processing the information *after a failed delivery*, known as "upstream" processing, rather than prior art systems which processed the information *before a failed delivery*, known as "downstream processing." Appx256-257, Appx270-272, ¶¶ 48-50, 83, 85.

The prior art undeliverable mail systems relied extensively on human handling of any mail items that were determined to be undeliverable. Appx254-255, ¶¶ 41-42. Those systems were costly and inefficient, and plagued by human errors. Typically, for undeliverable mail items, the processing used by the Postal Service would begin when a postal carrier discovered the mail item was undeliverable—*i.e.*, the mail item failed attempted delivery. In other cases, it was known prior to any attempt at delivery that a particular mail item could not be delivered at the original address, and that particular mail item was intercepted by Postal Service personnel

before delivery was attempted. Typically, in either case the carrier would physically deliver that mail item to one of the over 200 Computerized Forwarding System (CFS) units located throughout the United States to begin processing the mail item. Operators at those CFS units followed what the Postal Service referred to as ACS to handle both undeliverable mail items and intercepted mail.

Among the many shortcomings of the systems and methods used by the Postal Service prior to the filing of the '548 Patent was that, for mail to be forwarded to a different address, the Postal Service required an English-language "endorsement" on the outside of the envelope, which was limited to First Class Mail items. The endorsement, usually printed next to the mailing address or return address, simply read "Address Service Requested," or "Change Service Requested." Typically, whenever an undeliverable mail item was routed to the CFS, the Postal Service process required a human CFS operator to read the endorsement, and then determine, by viewing a look-up table, whether the Postal Service had previously assigned a "participant" code to that sender. Appx254-255, ¶¶ 41-42. That procedure, described in a published Postal Service document entitled "Publication 8," also referred to as "1997 ACS," sets forth what was well-understood, routine, and conventional in the undeliverable mail processing industry prior to the inventions of the '548 Patent. That procedure was costly, slow, and inefficient, and was plagued with human errors.

The inventors of the '548 Patent recognized that a need existed for improved technological architecture for processing returned mail that would overcome the historical problems with prior art manual handling and would do so quickly, efficiently, accurately, and at substantially less cost. Appx254-255, ¶ 42.

The improvements recited in the '548 Patent solved many of the problems encountered in prior art undeliverable mail processing systems, reduced inefficiencies and human error, and also reduced the overall costs involved in the processing of undeliverable mail. Appx253, ¶ 38. As expressed in the '548 Patent specification:

> Accordingly, it will be appreciated that an improved method of processing returned mail is now provided that addresses the shortcomings of historical manual updating methods and does so at a substantially reduced cost. A high volume mail user subscriber need no longer retain large staffs for manually receiving, researching, updating, and re-mailing pieces of mail that are returned undeliverable. ***The methodology of the present invention, instead of being virtually all manual, is accomplished virtually entirely automatically through the exchange of data files between computers.*** Thus, not only is the necessity for the physical handling of large volumes of physical envelopes eliminated for subscribers, the address file updating process can be accomplished much quicker than is possible with manual processing. The likelihood of human error in researching and updating addresses is eliminated with the result that a more reliable and constantly updated address database may be maintained.

Appx55-56, 6:54 – 7:4 (emphasis added).

Most of the individual steps and elements set forth in the claims were not well-understood, routine, and conventional in the undeliverable mail industry at the time

of the '548 Patent filing date. Appx270, ¶ 83. The ordered combinations of steps and elements in the claims were likewise not well-understood, routine, and conventional in that industry. *Id*.

In addition to the upstream vs. the downstream approach, claims 42 and 44 of the '548 Patent recites novel, inventive, non-obvious, and nonconventional features that were not well-understood, routine, and conventional in the industry as of the '548 Patent's effective filing date, including:

- The use of machine-readable encoded data on each of a plurality of undeliverable mail items in which the encoded data indicates whether the sender of the mail items wants a corrected address to be provided for the addressee;

- Decoding of that particular encoded data, performed electronically by a specially-programmed computer, without the need for human interaction;

- Creating, via a specially-programmed computer, output data that includes a customer number and at least a portion of the decoded data;

- Determining via a specially-programmed computer if the sender wants a corrected address provided;

- Electronically transferring specific information to the sender if the sender wants a corrected address; and

- Posting specific information on a computer network, if the sender does not want a corrected address.

*See also* Appx270-271, ¶ 84.

One of the inventive features of the '548 Patent, which was a significant improvement over the prior art, is the requirement that a plurality of mail items be encoded with specific decision-logic data, namely, data indicating that a sender wants a corrected address to be provided. Appx248, ¶ 11. The indication that a sender wants a corrected address to be provided is encoded in the "encoded data," meaning that it needs to be electronically deciphered, and cannot be understood by the human mind alone, without first being electronically decoded by a specially-programmed computer. In specific embodiments disclosed in the specification of the '548 Patent, the encoded data has the form of a two-dimensional bar code. Using this feature, a sender essentially decides in advance—for a plurality of mail items—whether the sender wants corrected address information provided in the event any of those mail items is later found to be undeliverable. In claim 44, the machine-readable encoded data not only indicates whether the sender of the mail items wants a corrected address to be provided for the addressee, but also indicates a name and address of the intended recipient. This advance decision by the sender is critical because in many cases a sender has no desire at that particular time to retrieve corrected address information of the recipient. Thus, expressing that decision via the

17

recited encoding on the mail item is critical to improving the overall efficiency of the processing of the mail items. Providing this data in encoded form, *e.g.*, as a 2-dimensional barcode on the mail item itself, *e.g.*, on the outside of the envelope, even before the item is mailed, provides substantial efficiencies in downstream processing. That inventive feature was not well-understood, routine, and conventional in the industry at the time the '548 Patent was filed.

Another exemplary inventive feature of the '548 Patent, which also provides an improvement over the prior art, is the requirement that the encoded data be decoded—*i.e.*, deciphered into useable form. Appx252-253, Appx257, Appx267-268, ¶¶ 36, 50, 77. This deciphering is necessarily performed electronically using a specially-programmed computer, and cannot be performed by the human mind, either alone or with a pencil and paper. This decoding feature contributed to increased efficiency, lowering of processing costs, and reduction in human error, as compared with prior art systems and methods used for handling undeliverable mail. One of the benefits of the decoding feature is that it is not performed manually, or by the human mind, but rather by a specially-programmed computer, and thus does not require human interaction. Decoding encoded data indicating that a sender wants a corrected address to be provided was not well-understood, routine, and conventional in the undeliverable mail industry at the time the '548 Patent was filed. Indeed, a unique system needed to be developed by the inventors specifically to

implement the claimed inventions. As discussed in the provisional application, Serial

No. 60/263,788, in October 2000, Return Mail contracted with Lockheed Martin

Distribution Technologies, Inc. to develop and build a customized recognition, data

capture and mail sorting system according to Return Mail's specifications, which

would include new, application-specific software to implement the claimed

inventions. Appx271-272 ¶ 85 and Appx4135-4137. Until then, that system had

never been built. Generic and conventional software or hardware was not available

in the undeliverable mail industry for such implementation.

The specification of the '548 Patent describes the decoding of a 2-dimensional

barcode that has been encoded with the specified information with reference to FIG.

2:

> The two-dimensional barcode is then decoded from each envelope as
> indicated in logic block 206.

Appx54, 4:43-44.

*  *  *

> Next, as indicated in logic block 506, the two-dimensional barcode on
> the envelope is decoded. An output file is then created from the decoded
> envelopes as indicated in output block 508.

Appx55, 5:48-51.

Using special hardware and processing software, Appx264, ¶¶ 67-68, 85, the

electronic decoding for implementation of the claimed inventions is described in the

patent specification. Illustrative details of the decoding of the 2-dimensional bar

codes are described:

> Between the pair of vertical bars is the continuous byte string returned
> by the 50 2-D bar code decode process. Thus, the content and parsing
> structure of the printed code are transparent to recognition and output
> processes with line interpretation/parsing governed by embedded line
> delimiters (such as CR/LF).

Appx55, 6:48-53. The specification describes specific embodiments of successful

decoding of a 2-dimensional barcode:

> [A] two-dimensional barcode is found and successfully decoded.
> Physical sorting of the mail and the recording of envelope data depends
> on the read outcome. Rejected mail can be selectively routed to
> different reject bins depending on the two different reject types (i.e., no
> code found or code cannot be determined). No data is saved for rejected
> items. Data records for successfully decoded items are saved for later
> retrieval with the items themselves routed to a successful read bin.

*Id.*, 6:15-25. Additionally, the specification describes optical scanning of the

encoded data:

> Referring to FIG. 1, at the return mail service provider's location, the
> returned mail (block 15) is received from the United States Postal
> Service (block 90) and passed through a high volume mail sorter 20 and
> optical scanner 40 by return mail sorter and data processing operators
> 30. The optical scanner 40 reads the information previously optically
> encoded onto each mail piece before it was sent.

Appx54, 3:32-38.

Moreover, for example, yet another inventive feature of the '548 Patent that

was an improvement over the prior art is the creation of output data that includes a

customer number of the sender and at least a portion of the decoded data. Appx257,

20

Appx267-268, Appx270-271, ¶¶ 50, 77, 84. This feature adds to efficiency, reduces costs, and avoids human error because it is performed automatically, by a specially-programmed computer. The creation of output data that includes a customer number of the sender and at least a portion of the decoded data was not well-understood, routine, and conventional in the industry at the time the '548 Patent was filed. As described therein:

> Data contained on the envelope is collected and an output data file is created in output block 208. The data in this output file is then sorted by customer numbers, as indicated in logic block 210. From this sorted data, output files are created based on the customer number as indicated in output.

Appx54, 4:45-49.

An additional inventive feature of the '548 Patent that was an improvement over the prior art is determining if the sender wants a corrected address based on the decoded data. Appx248, Appx256-257, Appx259-260, ¶¶ 11, 48, 57. That determination is performed by a specially-programmed computer using at least some of the decoded decision-logic data and was not well understood, routine, and conventional in the industry at the time the '548 Patent was filed. Appx264, ¶¶ 67-68. The '548 Patent specification describes a specific embodiment of the determination, and the steps that follow that determination:

> In decision block 302, a test is made to determine if the sender (originator) wants the return mail application service provider to provide corrected addresses for intended recipients.

Appx54, 4:54-57.

\* \* \*

> If a determination is made in decision block 302 that the sender wants
> to have correct addresses provided for the intended recipients, then the
> return mail application server then sends the returned mail data records
> to an address update service bureau, such as the USPS NCOA address
> correction databases or the databases provided by licensed service
> providers.

Appx54, 4:63 – 5:3.

The '548 Patent also includes, as an inventive feature, the electronic transfer of specific information to the sender, if the sender wants a corrected address provided, *i.e.*, electronically transferring to the sender information for the identified intended recipients that enable the sender to update the sender's mailing address filed. Appx270-271, ¶ 84. This inventive feature is logically related to the determination of whether the sender wants the corrected address at all. Generic computer technology was not available at the time to perform that determination or electronic transfer. That inventive feature was not well-understood, routine, and conventional in the industry at the time the '548 Patent was filed. Appx270-272, ¶¶ 84-85. If the sender wishes to have the return address information, then that information is electronically transferred to the sender. As expressed in the '548 Patent specification: "The return mail service provider then electronically transfers corrective data records to the subscriber." Appx53, 2:11-13.

22

Yet another additional inventive feature is the posting of return mail records on a network if the sender does not want a corrected address provided. Appx252, Appx257, Appx267-268, ¶ 36, 50, 77. Such posting of return mail records on a network based on the sender's wishes was not well-understood, routine, and conventional in the industry at the time the '548 Patent was filed. Appx270-272, ¶¶ 84-85. Generic computer technology was not available at the time to perform that determination or electronic transfer. Appx271-272, ¶ 85. Although the use of a computer network, such as the internet, is ubiquitous today, it was not at the time the '548 Patent was filed; and it was not well-understood, routine, and conventional in the undeliverable mail industry to use a network, such as the internet, for posting of return mail records so that the sender would have access to the records if the sender did not want the corrected address information. Even if a sender did not wish to have a corrected address at the time a mail item is initially mailed out, it was recognized by the inventors that the corrected address and other information of the recipient would be potentially useful information for subsequent mailings, if not to that particular sender, then to others, and could also be accessed by that sender at any time. The posting of the information on a network is depicted in the drawings, *e.g.*, FIG. 3, block 304, which describes the posting as: "Place returned mail records on internet website for sender pickup," and is also described in Appx55, 6:26-30 ("At any time, the operator may momentarily end processing, causing this file to be closed

23

and become network accessible for the return mail service provider data processing operations.").

The inventive features unique to the '548 Patent—including at least those identified above—are reflected in the asserted claims, each of which sets forth a different ordered combination of inventive steps and elements.

Notably, the claims of the '548 Patent when viewed as a whole, including as an ordered combination, are not merely the recitation of well-understood, routine, and conventional technologies or components. Appx270-271, ¶¶ 83-84. The claimed inventions were not well-understood, routine, and conventional at the time of the invention—nearly twenty years ago—and represent specific improvements over the prior art and prior existing systems and methods.

The technological architecture of the claimed inventions also provide improved computer and network efficiency for undeliverable mail processing systems, at least because, for example, they use the encoded data described above on one or more undeliverable mail items, indicating whether the sender wants a corrected address to be provided for the addressee; electronically decode the encoded data using a specially-programmed computer, *e.g.*, a programmed camera, without the need for human interaction; create output data that includes a customer number and at least a portion of the decoded data; determine if the sender wants a corrected address provided using at least some of the decoded decision logic data;

electronically transfer specific information to the sender if the sender wants a corrected address; and post specific information on a network if the sender does not want a corrected address. Appx256-258, ¶¶ 48-52. The inventors did more than simply apply available technology to an existing problem. Rather, their inventions, as embodied in the asserted claims, were a significant advancement in undeliverable mail technology at the time of the '548 Patent filing date. Further, the inventions covered by the asserted claims solved many problems encountered in prior art undeliverable mail processing systems, and the inventions reduced inefficiencies, human error, and the overall costs involved in the processing of undeliverable mail.

The '548 Patent specification also describes the "requirements for an automated system to aid in data capture (and outcome-based sorting) of returned mail items" as including components that were developed for Return Mail by Lockheed Martin Distribution Technologies, Inc. *See e.g.* Appx271-272, ¶ 85. Those components were discussed in the provisional application, and an updated description was set forth in the later-filed non-provisional application, which appeared in the issued patent specification as follows:

> 2. a camera subsystem to read the PDF417 2-D barcode. Hardware and process software in this device are derived from a standard mixed media optical character recognition (MLOCR) camera configuration. Recognition software is integrated to read a PDF417 format two-dimensional barcode printed as a portion of the return address block.

> 3. an application specific sort program to coordinate camera and transport processes.

Appx55, 5:59-67; Appx271-272, ¶ 85.

The above-described improvements over the prior art represent meaningful limitations and/or inventive concepts based upon the state of the art nearly two decades ago. Appx270-272, ¶¶ 84-85. Further, in view of these specific improvements, the inventions of the asserted claims, when such claims are viewed as a whole and in ordered combinations, were not routine, well-understood, conventional, generic, existing, commonly used, well-known, previously known, typical, or the like in the undeliverable mail industry as of nearly two decades ago because, until the inventions of the asserted claims of the '548 Patent, the claimed inventions were not existing or even considered in the undeliverable mail field.

The asserted claims, including as a whole and where applicable in ordered combination, comprise non-conventional and non-generic arrangements that are technical improvements to systems for managing and processing undeliverable mail, including those improvements noted above. Appx253-266, ¶¶ 38-73.

The claimed inventions are directed to technological architecture, are necessarily rooted in computer technology, and comprise an improvement over prior technologies in order to overcome the problems, including those noted above.

The patent claims, beginning with the decoding of data regarding whether a customer wants updated address information, to the storing and processing of that information, and through the electronic notification of the updated address

information to the customer, create a technological improvement in the processing of undeliverable mail, and also include the transformation of data, including the decoding of the specifically recited encoded data on the mail items being processed.

## II.    PROCEDURAL HISTORY

On January 31, 2007, the Postal Service filed a Request for *Ex Parte* Reexamination of the '548 Patent, using prior art related to its ACS system. The claims at issue in this appeal were added to the application and found to be patentable in a Reexamination Certificate issued on January 4, 2011. Appx60-65.

Return Mail filed its original complaint against the Postal Service, alleging patent infringement, on February 28, 2011. *See* Appx1319-1326. The Court of Federal Claims issued its opinion on claim construction on October 4, 2013. *See* Appx1931-1956.

In April of 2014, the Postal Service petitioned the Patent Trial and Appeal Board (the "PTAB") for a covered business method ("CBM") review of the '548 Patent. This case was stayed during that process. *See* Appx36, Order of October 21, 2014, ECF No. 83. The PTAB invalidated all the challenged claims of the '548 Patent and '548 Reexamination Certificate, determining that the claims were patent-ineligible under 35 U.S.C. § 101. *U.S. Postal Serv. v. Return Mail, Inc.*, No. CBM2014-00116, 2014 WL 5339212 at *13-15 (P.T.A.B. October 16, 2014).

On appeal, the Court of Appeals for the Federal Circuit affirmed the PTAB's invalidity decision after initially determining that the Postal Service had standing to petition for review by the PTAB. *Return Mail, Inc. v. U.S. Postal Serv.*, 868 F.3d 1350, 1366-69 (Fed. Cir. 2017), rev'd, 139 S. Ct. 1853 (2019). A panel of this Court stated that claims 42 and 44 were abstract, as they "simply recite existing business practice with the benefit of generic computing technology." *Id.* at 1368. In that respect, the Federal Circuit determined that the "claims only recite routine, conventional activities such as identifying undeliverable mail items, decoding data on those mail items, and creating output data" and therefore did not find an inventive concept that transformed the abstract idea into a patent-eligible application. *Id.* at 1368-69.

The United States Supreme Court granted certiorari but only as to the issue of "whether a federal agency is a 'person' able to seek [CBM] review under the [Leahy-Smith America Invents Act of 2011]." *Return Mail*, 139 S. Ct. at 1859. The case was reversed and remanded because a federal agency was held to not be a "person" for the purposes of the Act and could not seek CBM review. *Id.* at 1867-68. The Supreme Court did not reach the substantive issue of whether the '548 Patent was invalid under Section 101. The Federal Circuit then remanded the case to the PTAB "with instructions to dismiss in light of the Supreme Court's disposition." *Return Mail, Inc. v. U.S. Postal Serv.*, 774 F. App'x 684 (Fed. Cir. 2019).

With the PTAB related proceedings thus concluded, the stay in the case in the Court of Federal Claims was lifted in September 2019. *See* Appx39, Order of September 5, 2019, ECF No. 108.

## III.   SUMMARY JUDGMENT

The Postal Service filed a Motion for Summary Judgment under 35 U.S.C. § 101 on August 25, 2021, with a declaration from Dr. Josef Lubenow. Return Mail filed its Opposition in Response on September 22, 2021, and the Postal Service filed its Reply on October 6, 2021.

Return Mail filed its own Motion for Summary Judgment under 35 U.S.C. § 101 on August 26, 2021, with a declaration from Dr. Craig Nettles. The Postal Service filed its Response in Opposition on September 23, 2021, and Return Mail filed its Reply on October 7, 2021.

## <u>SUMMARY OF THE ARGUMENT</u>

This case should never have been decided on summary judgment. All justifiable inferences must be drawn in favor of the Appellant and any *doubt* as to the existence of a genuine dispute of material fact must also be resolved in favor of the non-movant. This case features conflicting qualified expert testimony, cementing that it is not an appropriate case for summary judgment. Appellant's respected and qualified expert, Dr. Nettles, has repeatedly and thoroughly stated in his reports and

testimony that many aspects of the '548 Patent are inventive, and it is unequivocal that the combination of the features is inventive.

Further, the Court of Federal Claims' *Alice* analysis was flawed. To begin, the Court ignored the structure imparted by its own *Markman* Order which found aspects of the claims were "electronic terms." This infected the PTAB, Federal Circuit, and subsequently the Court of Federal Claims' *Alice* analysis.

Exacerbating this issue, the Court of Federal Claims improperly relied on the vacated decisions of the PTAB and Federal Circuit, which were decided under different standards of review and under a pre-*Berkheimer* paradigm that did not require a concrete identification of what was well-known, routine, and conventional at the time of the invention.

Finally, the Court of Federal Claims did not properly consider the claims as an ordered combination, as is required in an *Alice* analysis. The inventions of the '548 Patent can only be properly assessed as an ordered combination. This case is emblematic for how an *Alice* analysis can be skewed by viewing each limitation in a vacuum and not in the context of the entire claim.

## <u>ARGUMENT AND STANDARD OF REVIEW</u>

## IV.  STANDARD OF REVIEW

The Federal Circuit reviews a grant of summary judgment by the Court of Federal Claims de novo. *Wells Fargo & Co. v. United States*, 827 F.3d 1026, 1032

(Fed. Cir. 2016). Summary judgment is appropriate where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *see also* Rules of the Court of Federal Claims 56(a).

Patents granted by the USPTO are presumptively valid. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 (2011) (citing 35 U.S.C. § 282). This presumption of validity extends to patent-eligible subject matter. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019). Overcoming the presumption of validity in an infringement case generally requires clear and convincing evidence, *Microsoft*, 564 U.S. at 95, and for Section 101 eligibility, the Federal Circuit has applied the same clear and convincing evidence standard. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("Any fact, such as [whether a claim element or combination is well-understood, routine, and conventional], that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence.").

The clear and convincing standard "has been described as evidence which produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is 'highly probable.'" *Miller v. Dep't of Justice*, 842 F.3d 1252, 1257–58 (Fed. Cir. 2016) (quoting *Price v. Symsek*, 988 F.2d 1187, 1191 (Fed. Cir. 1993)). As other federal courts have noted in the Section 101 context, "clear and convincing evidence is a high bar and the same heightened standard required to

terminate a parent-child relationship." *Slyce Acquisition Inc. v. Syte-Visual Conception Ltd.*, No. W-19-cv-257, 2020 WL 278481, at *4 (W.D. Tex. Jan. 10, 2020) (citing *Santosky v. Kramer*, 455 U.S. 745, 769-70 (1982)).

## V. SUMMARY JUDGMENT WAS INAPPROPRIATE IN VIEW OF DISPUTED MATERIAL FACTS AND CONFLICTING EXPERT TESTIMONY

### A. Procedure Requires Disputed Material Facts to be Resolved in Favor of the Non-Moving Party

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. An issue is genuine if it "may reasonably be resolved in favor of either party." *Id*. at 250, 106 S. Ct. 2505. Determination of whether a genuine issue of material fact exists is to be made by considering "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *DIRECTV Group, Inc. v. U.S.*, 670 F.3d 1370 (Fed. Cir. 2012) (quoting *Anderson*, 477 U.S. at 255. Further, "[i]n cases in which there is doubt as to the existence of a genuine issue of material fact, that doubt must be resolved in favor of the nonmovant." *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679 (Fed.Cir.1984). The court should act with caution when granting a motion for summary judgment, and it is appropriate to deny such a motion "where there is reason to believe that the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255.

The Court of Federal Claims found "[b]ecause the '548 Patent claims are directed to the abstract idea of processing undeliverable mail and providing an updated address, and because there is no genuine dispute of material fact that those claims fail to offer any kind of new application of that idea, the court holds that the disputed patent is patent-ineligible under 35 U.S.C. § 101." Appx25-26.

There was a genuine dispute of material fact as to whether the claims fail to offer a new application for processing undeliverable mail and this case should not have been decided on summary judgment. The court improperly ignored Dr. Nettles' reports and testimony. In this case, as "the evidence of the nonmovant is to be believed and all justifiable inferences" are to be drawn in Return Mail's favor, there is a genuine dispute of material fact. If "there is *doubt* as to the *existence* of a genuine issue of a material fact, that doubt must be resolved in favor of the nonmovant." (emphasis added.) *Cooper*, 748 F.2d at 679. It simply cannot be said, based on the record and Dr. Nettles' reports and testimony, that there is *no doubt* as to the *existence* of a genuine issue of material fact.

Dr. Nettles painstakingly described the state of the prior art as well as the inventive concept and technological improvement provided by the '548 Patent. *See* Appx253-269, ¶¶ 37-82. Dr. Nettles also provided a Section 102/103 Appendix where he discussed the shortcomings of each piece of prior art the Postal Service alleged. *See* Appx396-618. Per Dr. Nettles' report, there is a genuine dispute of

material fact, at least regarding whether the following features incorporated into claims 42 and 44 were well-known, routine, and conventional in the industry as of the '548 Patent filing date:

- The use of machine-readable encoded data on each of a plurality of undeliverable mail items in which the encoded data indicates whether the sender of the mail items wants a corrected address to be provided for the addressee (*see e.g.* '548 Patent, 2:66-3:10, 4:54-61, Figs. 1-3);

- Decoding of that particular encoded data, performed electronically by a specially-programmed computer without the need for human interaction (*see e.g.* '548 Patent, 4:34-45, Fig. 2);

- Creating, via a specially-programmed computer, output data that includes a customer number and at least a portion of the decoded data (*see e.g.* '548 Patent,4:45-47, Fig. 2);

- Determining via a specially-programmed computer if the sender wants a corrected address provided (*see e.g.* '548 Patent, 4:54-57, Fig. 3);

- Electronically transferring specific information to the sender if the sender wants a corrected address (*see e.g.* '548 Patent, 4:63-5:10, Fig. 3); and

- Posting specific information on a computer network if the sender does not want a corrected address (*see e.g.* '548 Patent, 4:58-63, Fig. 3).

Appx354-355, ¶ 142.

Whether these features were well-known, routine, and conventional is material because that determination directly affects patentability under *Alice* step two. The issue is genuine because given Dr. Nettles' non-conclusory reports and testimony, it may be resolved in Return Mail's favor.

Appellee has been unable to establish that any of the above-identified inventive concepts were well-understood, routine, and conventional at the time of invention. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 17-cv-05928-YGR, 2021 WL 1421612, *13 (N.D. Cal. Apr. 14, 2021) ("Defendants cite no evidence in any form to show that attaching user information at an intermediary device was conventional."); *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, 358 F. Supp. 3d 399, 410 (D.N.J. 2019) ("defendants have not presented clear and convincing evidence that the specific combination of the claimed method steps or system elements were routine, well-understood, and conventional at the time of the invention to one of skill in the art in the field of generating roof pitch estimation reports.").

In contrast to Dr. Nettles' thorough discussion, Appellee's expert, Dr. Josef Lubenow, while baldly asserting the claim elements were well-known, routine, and conventional (*see* Appx122-123, ¶¶ 103-104), provided no substantive analysis, much less clear and convincing evidence, that these claim elements were, in fact,

CONFIDENTIAL MATERIAL OMITTED

well-known, routine, and conventional in either his report tendered with the Appellee's Motion for Summary Judgment or his deposition. Dr. Lubenow instead made overly broad statements about how certain aspects of the claim language, *e.g.* barcodes (but not barcodes indicating whether the sender wanted a corrected address), were well-known, routine, and conventional, and without addressing, in detail, the specific inventive concepts set forth in Return Mail's amended complaint. Appx120-122, ¶¶ 98, 103. Dr. Lubenow did not identify particular prior art making the elements of claims 42 and 44 well-known, routine, and conventional in January 2002, and testified that he could not do so. *See, e.g.,* Appx20227-20230 at 28:11-23, 30:5-20, 36:7-24, 39:23-40:10 ██████████████████████████████

███████████████████████████████████████████████████████

██████████.

The Court of Federal Claims baldly stated, without citation, that "[t]he limitations of the '548 patent claims were well-known and conventional at the time of the patent application, including the purportedly inventive concept of updating a mailing address *after* a failed delivery attempt. *See* Appx53 1:20-60 (describing the "historical[]" and "not uncommon" practice of researching and updating mailing addresses of "mail that is returned to sender")." Appx25.

This cursory and offhanded reference to a few lines of the patent specification is inadequate to invalidate the subject claims under clear and convincing evidence.

Claim element 42b, identifies as "undeliverable mail items" those that are returned subsequent to mailing. Appx23828-23829 at 112--115. The state of the art at the time was focused on intercepting and redirecting mail as it moved downstream. The goal of the prior art approach "was basically to do that matching early during processing [*e.g.,* change of address form] of the mail," and then forward it before attempted delivery rather than addressing undeliverable mail after the mail failed delivery and was moving upstream. Appx23829 at 115-117. A method addressing mail moving upstream was not well-known, routine, and conventional: "The '548 Patent is based on a different upstream approach to handling undeliverable mail. . . ." Appx270, ¶ 83; *see also* Appx23829 at 115 ("there is no clear indication of a failed delivery here [in the Allen reference]."); Appx23829, Appx23831 at 114-117, 124 ("main thrust" of prior art approaches "is to intercept the mail and redirect it before there has been a delivery attempt."), 130 (noting the Court's claim construction of a "failed a delivery attempt"); *see also* Appx1940 (*Markman* Order) (noting that "parties apparently agree that the claims are limited to situations occurring after the Postal Service has attempted delivery to an intended recipient. . . ."), Appx1945 (construing "undeliverable mail items" as "mail items that fail attempted delivery").

It was improper for the Court of Federal Claims to overlook the robust record indicating a genuine dispute of material fact and to decide this case on summary judgment.

### B. Experts Disagreed Regarding *Alice* Step Two, Including What Is Routine and Conventional

The presence of competing qualified expert testimony also dictates that summary judgment was not an appropriate avenue in this case. *See Cherokee Gen. Corp. v. United States*, 150 Fed. Cl. 270, 282 (2020) ("It is clear to the Court, however, that—given the technical nature of the issues and the parties' reliance upon expert testimony to support their conflicting positions—summary judgment is not an appropriate vehicle. . ."). *See Jagoe v. Sec'y of Dep't of Health & Hum. Servs.*, No. 08-678V, 2012 WL 13036265, at *19 (Fed. Cl. Aug. 3, 2012) ("The undersigned . . . agrees with respondent that petitioner's Motion for Summary Judgment is not appropriate. As is easily seen from the documentary evidence and expert testimony, there is a great deal of contention and competing evidence regarding most, if not all, of petitioner's case. Viewing the evidence with inferences drawn in respondent's favor, petitioner's Motion for Summary Judgment fails.").

Further, the court did not indicate it discredited the expert testimony, and therefore should have found a genuine dispute of material fact for the fact-finder to decide as to *Alice* step two. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1306 (Fed. Cir. 2011) ("It is decidedly the [fact-finder]'s role to evaluate the weight to be given to the testimony of dueling qualified experts."); *I4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed.Cir.2010), cert. granted, 562 U.S. 1060

(2010) ("[I]t is not the district court's role under Daubert to evaluate the correctness of facts underlying an expert's testimony.")).

Throughout his reports and deposition testimony Dr. Nettles repeatedly stated in a non-conclusory manner that many aspects of the '548 Patent claims were not well-known, routine, and conventional. He discussed each piece of alleged prior art. *See* Appx396-618. He refuted the conclusory statements of Appellee's expert. *See* Appx270-272, ¶¶ 83-86; *see also* Appx354-357 ¶¶ 141-44. He presented his opinions buttressed by intrinsic and extrinsic evidence. As in *Cherokee* and *Jagoe*, this case involves technical issues and there is "a great deal of contention and competing evidence." Beyond the presence of a genuine dispute of material fact discussed in the previous section, the fact that there is conflicting and non-conclusory expert testimony in this case requires it not be resolved at the summary judgment stage.

## VI. THE COURT OF FEDERAL CLAIMS' *ALICE* ANALYSIS WAS FLAWED

Pursuant to Supreme Court precedent construing 35 U.S.C. § 101, "[l]aws of nature, natural phenomena, and abstract ideas" are ineligible subject matters for patent protection. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589-90 (2013)). Under the Supreme Court's two-part test to determine patent eligibility, a court must (1) "determine whether the claims at issue are directed to

one of those patent-ineligible concepts," and (2) if so, "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012)). The second step has been characterized as "a search for an 'inventive concept'" that "amounts to significantly more than a patent on" the abstract idea. *Id.* (quoting *Mayo*, 566 U.S. at 72-73); *see also Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146 (Fed. Cir. 2016).

A.    **The Court of Federal Claims Ignored its own Claim Constructions Which Introduced Additional Structure to the Claims**

The Order states, "[m]oreover, Return Mail's assertions that the '548 claims are limited to *electronic* encoding and decoding or *customized* computers and programming are unavailing. It is not enough to "'attempt to limit the use' of the abstract . . . idea 'to a particular technological environment.'" *buySafe, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (citing *Alice*, 573 U.S. at 22-24)." Appx1943.

Electronic encoding and customized computers and programming do not limit the use of the abstract idea to a technological environment. They impart structure and particularity to the system, such that when viewed as an ordered combination, the inventive concept is clear and patentable. The Court's *Markman* Order discusses

that these are "electronic terms," which brings the process out of the realm of possibly being done by the human mind, thus providing electronic structure. *See* Appx1948. This issue became apparent in the Board's analysis during the CBM proceedings. The Board went beyond the claim constructions that corresponded to the Court of Federal Claims' *Markman* Order. *See* Appx4760. After acknowledging the Court of Federal Claims' construction of "decoding" as "deciphering information into useable form," the Board concluded that construction "does not necessarily bring it out of the realm of processes performed in the past by human beings." The Board's conclusion ran counter to the Court of Federal Claims' *Markman* Order, which instead concluded that "decoding" was an "electronic term." *See* Appx1948. This shows how failing to acknowledge the inherent structure imparted by the *Markman* Order's requirement of "electronic terms" infects the entire *Alice* steps one and two analysis.

Regarding step one, this court has repeatedly warned that mischaracterizing a claim or disregarding its elements is improper: this results in "'a high level of abstraction' that is 'untethered from the claim language' and that 'overgeneraliz[es] the claim.'" *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1295 (Fed. Cir. 2020) (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016)) (rejecting Section 101 arguments that disregarded claim elements and ignored specification).

The Court of Federal Claims' Order ignores this warning and improperly oversimplifies claims 42 and 44 on summary judgment.

The Return Mail invention presented a watershed advancement within the concrete application of processing returned mail pieces. *See* Appx55-57, 6:54-7:4. As the Federal Circuit found in *Enfish*, here "the invention's ability to run on a general-purpose computer [does not] doom[] the claims." *Enfish, LLC*, 822 F.3d at 1339. Return Mail's provisional application discusses that new, application-specific software being used in the context of a unique ordered combination of hardware was needed to implement the claimed invention. *See* Appx698.

The claims include a physical and technological process, including mail pieces, sorters, scanners, encoded information and computers. As the Federal Circuit analyzed and held in an analogous case involving the automation of a process (plane washing) previously done by humans:

> Indeed, we addressed whether "claims simply use a computer as a tool to automate conventional activity" in the context of Alice step one in McRO. 837 F.3d at 1314. In McRO, the representative claim was directed to "[a] method for automatically animating lip synchronization" that used "rules" to perform animation. We held that the claim was not directed to an abstract idea. *Id*. at 1316. In reaching that conclusion, we noted that the claim did not use a computer as a tool to automate conventional activity and instead employed a computer "to perform a distinct process to automate a task previously performed by humans." *Id*. at 1314. Here, as the specification makes clear, human operators were washing aircraft engines before the patented invention. That the claimed system achieves automation of a task previously performed by humans, however, does not mean the claimed system is necessarily directed to an abstract idea. The claims of the '262 patent

are directed to ***a specific combination of a type of washing unit, information detector, and control unit, configured in a certain way to create technical improvements to systems*** for washing jet engines. In our view, the claims of the '262 patent thus present an even stronger case for eligibility than the representative method claim in McRO.

*EcoServices, LLC v. Certified Aviation Servs.*, LLC, 830 F. App'x 634, 643 (Fed. Cir. 2020) (emphasis added).

Similarly, the '548 Patent is directed to a specific combination of hardware (transport, scanner) and software (including decoding data with decision-logic as to a corrected address or not), that have been adapted and configured in a certain way (upstream process rather than downstream) to create technological improvement to the process of handling returned mail; and thus it is patent-eligible.

By improperly ignoring its own claim constructions, which provided added structure and particularity to the claims, the Court of Federal Claims infected its own *Alice* analysis and erroneously found the claims of the '548 Patent unpatentable.

**B.    After *Berkheimer*, *Alice* Step Two Requires a Factual Determination of Which Steps Are Well-Known, Routine, and Conventional**

For Appellee to prevail on step two of the *Alice* inquiry, Appellee must prove that the patented claims' combinations of elements were well-known, routine, and conventional, all by clear and convincing evidence. *Berkheimer*, 881 F.3d at 1368.

Return Mail filed its amended complaint on December 19, 2019 that identified inventive concepts of the '548 Patent. Appx5072-5079, ¶ 39, ¶¶ 40-51. These claim

elements, both individually and particularly as an ordered combination, were not well-known, routine, and conventional at the time of the non-provisional application in 2002. Appx270-271, ¶¶ 83-84.

As discussed in section A.1 above, although Return Mail provided a list of inventive concepts in December 2019, Dr. Lubenow provided no substantive analysis, much less clear and convincing evidence, that these claim elements were in fact well-known, routine, and conventional. Dr. Lubenow instead made overly broad statements about how certain aspects of the claim language, *e.g.* barcodes (but not barcodes indicating whether the sender wanted a corrected address), were well-known, routine, and conventional, and without addressing in detail the specific inventive concepts set forth in Return Mail's amended complaint. Appx120-122, ¶¶ 98, 103.

For example, in Claim element 42c, the decoding of the encoded data, also was not well-known, routine, and conventional. *See e.g.* Appx23813 at 51 (acknowledging that implementing encoding is a straightforward task, but "[k]nowing what to encode and how to use that encoded data is not a straightforward task."). The prior art, *e.g.* 1997 ACS, was a manual process that required human review and input. Appx254-255, ¶¶ 41-42. Appellee and Appellee's expert attempt to avoid this inventive concept by claiming that decoding can be done, as in the prior art, in the human mind. Appx86-87; Appx124, ¶ 106 Appellee's position is contrary

to the '548 Patent's teaching of automating the handling of the returned mail through the reading by scanners and decoding by computers *after* the mail has been returned (upstream processing). Appx259-260, Appx267, ¶¶ 57-58, 75 ("There is no suggestion in the '548 Patent that it was intended to apply to human readable data and human performance of claim steps."); *id*., ¶ 76 (noting that Appellee has taken position in its '197 Patent that bar codes are not human readable, and that a human decoding "even a simple code as part of the processing of returned mail would be impractical and inconsistent with the purposes of the patent."); *see also, e.g., Ocado Innov., Ltd. v. AutoStore AS*, No. 21-cv-41-JL, 2021 WL 3604249, *7-8 (D.N.H. Aug. 13, 2021) (rejecting "human mind" argument after reviewing purpose and specification of patent; patent addressed controlling multiple robots on a grid). Appellee's position also is inconsistent with the Court of Federal Claims' *Markman* ruling that decoding is an electronic step, excluding human performance of the decoding step. Appx1948, Appx1950; Appx1181-1186. Dr. Nettles' position is consistent with the Court of Federal Claims' *Markman* ruling: noting that the Caesar cipher can be done in the human mind, "but it doesn't really pertain to the patent." Appx1159-1186,  at 59-60, 247-248 ("a person of ordinary skill would understand that these are performed by using machines, not by humans.")

With regard to claim element 42d (creating output data that includes a customer number and at least a portion of the decoded data), this also was an

CONFIDENTIAL MATERIAL OMITTED

inventive concept that was not well-known, routine, and conventional. Appx257, Appx267-268, Appx270-271, ¶¶ 50, 77, 84. Dr. Lubenow could testify only that

████████████████████████████████████████████████████

████████████. Appx20253. This speculative conjecture, with no factual basis, falls far short of the clear and convincing evidence required for Appellee to prevail.

None of Appellee, its expert, the Board, the Federal Circuit, or the Court of Federal Claims in its Order provided a fulsome and proper analysis by stepping through each limitation of the claims and identifying what was well-understood, routine, and conventional.

For example, the Order states,

> Again, Return Mail's "claims only recite routine, conventional activities such as identifying undeliverable mail items, decoding data on those mail items, and creating output data." *Return Mail*, 868 F.3d at 1368. Similarly, "the limitations [of] reciting particular types of encoded data or particular uses of that data once decoded, such as sending the data or making it available to the sender, depending on the sender's preferences" do not represent a new or useful application. *Id.* at 1368-69. Unlike *Diehr*'s novel application of a mathematical equation to solve a specific problem and obtain measurements that practitioners of the art "had not been able to obtain," *Alice*, 573 U.S. at 223 (brackets omitted) (citing *Diehr*, 450 U.S. at 178), the language of the '548 patent claims provide for the conventional processing of undeliverable mail items but on a computer. Instead, as with *Benson*, the '548 patent claims' reliance on "any kind of computer system," '548 patent, col. 7, line 7, fails "to supply a 'new and useful' application of the [abstract] idea" of sorting undeliverable mail items and providing an updated mailing address. *Id.* at 222 (citing *Benson*, 409 U.S. at 67).

* * *

The limitations of the '548 patent claims were well-known and conventional at the time of the patent application, including the purportedly inventive concept of updating a mailing address after a failed delivery attempt. *See* '548 patent, col. 1, lines 20-60 (describing the "historical[]" and "not uncommon" practice of researching and updating mailing addresses of "mail that is returned to sender"). To restate known, conventional steps, but on a computer, is insufficient to transform the claims—otherwise directed to an abstract idea—into an inventive application.

* * *

Moreover, Return Mail's assertions that the '548 claims are limited to electronic encoding and decoding or customized computers and programming are unavailing. It is not enough to "'attempt to limit the use' of the abstract . . . idea 'to a particular technological environment.

Appx25.

That is the extent of the Court of Federal Claims' specific analysis related to these claims and *Alice* step two. The dearth of concrete discussion of what limitations were well-understood, routine, and conventional, and what pieces of art rendered them so makes sense given the fact that neither Appellee, nor its expert, properly put forth such evidence. It was clear error for the Court of Federal Claims to grant summary judgment without proper evidence and analysis of *Alice* step two, as required under *Berkheimer*.

**C.    The Court's *Alice* Analysis was Improperly Undertaken Based on Vacated Proceedings with an Incomplete Record Under a Pre-*Berkheimer* Paradigm**

While the Court of Federal Claims stated it agrees that the vacated proceedings do not have a preclusive effect, it also improperly credited the findings of those proceedings as persuasive in its analysis. *See* Appx21. The Final Written Decision in the vacated PTAB decision was based on a different factual record under a different standard of proof.

The Order is based on a subsequently vacated PTAB decision, which was based on a less complete record and different claim construction standard than the Court of Federal Claims had when rendering its Order. Section 101 jurisprudence is now in a post-*Berkheimer* world. The vacated proceedings' lack of factual examination concerning what was well-understood, routine, and conventional is not sufficient today, where a patent challenge cannot prevail if it "fail[s] to present any evidence showing that the specific combination of elements performed in the specific order claimed in the patents-in-suit was conventional and generic at the time of the invention." *Vaporstream, Inc. v. Snap Inc.*, No. 2:17-CV-220, 2020 WL 136591, at *8 (C.D. Cal. Jan. 13, 2020) (citing *Berkheimer* in denying summary judgment of ineligibility following defendant's "fail[ure] to conduct a proper ordered combination analysis.").

Even if the vacated proceedings had actually conducted any factual analysis related to the '548 Patent's eligibility (which they did not), that analysis would have been under the stated "preponderance of the evidence" standard, rather than the heightened clear and convincing evidence standard required here. *Compare* Appx4773 (relying on preponderance threshold) *with Berkheimer*, 881 F.3d at 1368 (mandating clear and convincing evidence for Section 101 factual analysis). There was no finding or even discussion in the vacated opinion regarding whether the patent would fail the heightened standard.

The vacated proceedings also followed a "broadest reasonable construction" standard for claim construction and did not proceed under the same full *Markman* Order and memorandum issued by the Court of Federal Claims, which included key additional commentary pointing to the specifically electronic nature of the claim elements here. *See* Appx1948; *see also* Appx1265-1266.

The different factual record in the present case versus the vacated proceedings cannot be ignored. Appellee attempts to downplay the role played by expert testimony or other extrinsic evidence in an eligibility analysis. But courts may, in fact, review extrinsic evidence in analyzing eligibility defenses. *See Vaporstream*, 2020 WL 136591, at *9 (taking *Alice* step two expert testimony into account); *see also TecSec, Inc.*, 978 F.3d at 1297 (finding defendant's ineligibility analysis

49

insufficient and noting proffered expert declaration asserting specific, unconventional improvement found in claimed combination of techniques).

Rather than undertaking a comprehensive review of the record before it, including a new report from Dr. Nettles, the Court of Federal Claims improperly rubber-stamped the prior vacated proceedings, which were themselves erroneous, without conducting the requisite analysis. The vacated proceedings, aside from being dead letter as matter of law, proceeded on an incomplete analysis of inventiveness for patent eligibility, under a lower standard for proving facts in support of patent ineligibility, using fewer parameters for the technological context of the claims than found in this Court's *Markman* memorandum, under a factual record lacking specific post-*Berkheimer* testimony concerning the non-well understood, non-routine, non-conventional nature of the asserted claims.

### D.    The Elements of the Claims Must be Considered Individually and as an Ordered Combination

Both Appellee and the Court of Federal Claims provide cursory statements regarding consideration of the claim limitations of the '548 Patent as an ordered combination ("This abstractness is evident whether the court considers the claim limitations individually or as an ordered combination . . . Contrary to Return Mail's contention that claims 42 and 44 are directed to a specific improvement of processing returned mail and relaying address data, the texts of those claims do not describe any such improvement individually or as an ordered combination"). Appx22.

The record shows how vital the ordered combination requirement is to an *Alice* analysis in this case. The '548 Patent creates a series of steps that were not previously used as an ordered combination. *See* Appx253, ¶ 39 (Dr. Nettles' testimony that the "ordered combination" of the '548 Patent claims "effect[s] an improvement in the field of return mail processing."); Appx258, Appx265-266, ¶¶ 52, 71 ("In my opinion, the '548 Patent claims also are patentable because the machines are combined in a novel way to effect the purpose of the '548 Patent claims."); Appx253-266, ¶¶ 39-73 (describing series of ordered steps to achieve technological improvement). As Dr. Nettles notes, Appellee also has patents, *e.g.* the '197 Patent, that also "use[s] combinations of machines that were known before the patents" to improve the technology of mail processing. Appx266, ¶ 72.

Furthermore, in claims 42 and 44, the encoded decision logic is decoded at a later strategic point in the mailing process, after the mail item is identified as being "undeliverable" and begins to move back in an upstream direction where the sender's wishes are decoded, and then acted upon. The consequences of performing that decoding at that particular point in the mailing process are important because only a small subset of mail items need to be decoded, which makes the process focused, efficient, and fast. *See, e.g.,* Appx333, Appx336, Appx338-339, Appx343 ¶¶ 66, 77-78, 94, 108.

As the unrebutted evidence has established, the Postal Service has, itself, incorporated the patented invention in its OneCode ACS process and benefited richly. *See, e.g.*, Appx609-618, ¶¶ 947-971. It was the Postal Service's use of Return Mail's patented invention that provided the benefits.

For example, one report dated from 2007 issued by Christensen Associates, Inc. (undertaken on the Postal Service's behalf) sheds further light on the magnitude of volumes and costs presented by Undeliverable-as-Addressed (UAA) mail. The report estimates that each electronic address correction notice would cost $0.21 under PARS (the Postal Service previous system), but once OneCode ACS would be implemented, that cost would be expected to drop to $0.004. Appx23407. While the 2007 report focuses on address quality-related issues, it also specifically includes mail piece volumes in which the addressee "refuses or fails to claim the mail," among other delivery failures.

The Christensen report further identifies that the OneCode ACS environment specifically constitutes an "important variation of electronic notification processing," and that OneCode ACS's use of the Intelligent Mail barcode would further reduce the cost of processing electronic notices associated with UAA letters. Appx23437-23447. The report also highlights that a key distinguishing feature of OneCode ACS would be the ability to identify letters requiring electronic notices by reading the barcode, rather than using OCR technology and remote encoding centers.

*See* Appx23461-23462. Thus, although the specific applicability of the claims is for "undeliverable" mailpieces, the benefit including cost-savings, applies more broadly to UAA mail as well.

Dr. Nettles has opined that it was OneCode ACS's implementation of the IntelligentMail barcode that made this encoding and decoding of upstream information possible for the Postal Service to practice the patented invention. The Postal Service's internal communications confirm as much. In one conversation, Postal Service personnel acknowledged that "USPS's ability to use this barcode is crucial." *See* Appx617, ¶ 970, Appx23563-23564. As the Postal Service explained, although Intelligent Mail Barcode is "just one step in the OneCode Vision," "if this crucial step is interfered with, the One Code Vision, including . . . OneCode ACS will fail." Appx617, ¶ 970. In other words, the success of the Postal Service's OneCode ACS rises and falls on that system's successful inclusion of this crucial combination claimed in the '548 Patent.

It was a clear error for the Court of Federal Claims to not properly consider the claims of the '548 Patent as an ordered combination, as required by *Alice*. This lack of analysis is fatal to the Court's decision on patentability.

## **CONCLUSION**

The Court of Federal Claims overreached in deciding this case on summary judgment. The record is rife with genuine disputes of material fact and conflicting expert testimony. Further, the Court's *Alice* analysis was flawed and inadequate. The Court ignored its own claim constructions and did not factually determine which claim steps were well-known, routine, and conventional, as required under *Berkheimer*. The Court also improperly credited prior vacated decisions and failed to consider the elements of the claims as an ordered combination.

For the foregoing reasons, Return Mail respectfully requests that the Court reverse and vacate the Court of Federal Claims Order on Summary Judgment finding unpatentable claims 42 and 44 of the '548 Patent, and remand the case to the Court of Federal Claims for trial.

Dated:  November 10, 2022          Respectfully submitted,

                                  */s/ Alfred R. Fabricant*
                                  Alfred R. Fabricant
                                  Peter Lambrianakos
                                  Vincent J. Rubino, III
                                  Joseph M. Mercadante
                                  **FABRICANT LLP**
                                  411 Theodore Fremd Avenue
                                  Suite 206 South
                                  Rye, New York 10580
                                  Telephone: (212) 257-5797
                                  Facsimile: (212) 257-5796

                                  ***Attorneys for Plaintiff-Appellant***
                                  ***Return Mail, Inc.***

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this Brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A). This Brief contains 12,188 words, excluding the parts of the Brief exempted by Fed. R. App. 27(d) and Fed. Cir. R. 27(d). This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6). This Brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14 point Times New Roman font.

Dated: November 10, 2022

Respectfully submitted,

*/s/ Alfred R. Fabricant*
Alfred R. Fabricant
Peter Lambrianakos
Vincent J. Rubino, III
Joseph M. Mercadante
**FABRICANT LLP**
411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

***Attorneys for Appellant***
***Return Mail, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused to be electronically filed the foregoing Plaintiff-Appellant's Principal and Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on November 10, 2022 and thus caused to be served on all registered counsel of record a copy of the same via the CM/ECF system.

Dated:  November 10, 2022                    */s/ Alfred R. Fabricant*
                                                                   Alfred R. Fabricant

# ADDENDUM

# In the United States Court of Federal Claims

No. 11-130 C

(Filed December 22, 2011)

RETURN MAIL, INC.,                  )
      Plaintiff,                  )
          v.                  )
                                    )
THE UNITED STATES,                  )
              Defendant.   )
                                    )

## **PROTECTIVE ORDER**

## Definitions

1.    The term "Protected Information" shall mean any document, transcribed  or

otherwise recorded oral testimony, or other tangible thing that has been designated pursuant to

the terms hereof and that contains financial, business, scientific, technical, economic, or

engineering information, including patterns, plans, compilations, program devices, formulas,

designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether

tangible or intangible, and whether or how stored, compiled, or memorialized physically,

electronically, graphically, photographically, or in writing, if: (a) the owner thereof has taken

reasonable measures to keep such information in confidence; and (b) the information derives

independent economic value, actual or potential, from not being generally known to, and not

being readily ascertainable through proper means by, the public. Protected Information shall

also include, but is not limited to, information in the possession, custody, or control of a party that is Protected Information of non-parties or third-parties.

2.      The term "Qualified Person" shall refer to the following:

(a)      outside counsel of record for the parties to this action, including their assigned associates, paralegal assistants and secretaries, and employees or agents;

(b)      assigned attorneys of the Department of Justice and their supervisors, paralegal assistants and secretaries, and assigned support personnel;

(c)      assigned attorneys for the United States Postal Service and the United States Postal Regulatory Commission and their supervisors, paralegal assistants and secretaries, and assigned support personnel;

(d)      litigation support contractors for the Qualified Persons identified in (a), (b), and (c), above. A "litigation support contractor" as used herein is defined as a contractor who is subject to an obligation, either by contract or trade practice, to maintain the confidentiality of any material received in performance of the contracted services and who is retained to provide support service with respect to either a lawyer's general professional activities or specifically in support of the lawyer's activities in this case. By way of example and not limitation, "litigation support contractor" includes copying services, court reporters, document storage and management contractors, database management contractors and information technology and network support contractors.

(e)      court personnel and official court reporters;

(f)      any independent expert, including clerical support staff, who is retained or consulted by counsel solely for the purpose of assisting in this action retained for the purpose of assisting counsel in this action, subject to the requirements of paragraph 13;

(g)     any other person who is designated as a Qualified Person by order of the court or by written agreement of the parties, subject to the requirements of paragraph 13;

(h)     outside legal counsel for RMI who executes an "Undertaking Concerning Confidentiality" set forth in Exhibit A; or

(i) any other counsel who enters an appearance in this case.


Designation of Protected Information

3.      Any party may designate as Protected Information any document, written discovery response, or deposition testimony that the designating party and its counsel believe, in good faith, constitutes or discloses Protected Information.  Such document, response, or testimony shall be labeled with the legend "PROTECTED INFORMATION, SUBJECT TO PROTECTIVE ORDER," "PROTECTED INFORMATION," or a marking of like import.  As an alternative to the Protected Information markings required by this Order, the producing party may utilize any pre-existing protected information designation contained in the document or thing, such as "PROPRIETARY," "RESTRICTED," "CONFIDENTIAL,"[1] "COMPETITION SENSITIVE," "LIMITED DATA RIGHTS," "RESTRICTED RIGHTS," or words of like import.  For a document, such marking shall appear on each page of the document that contains Protected Information.  Any Protected Information produced by a party may be designated as Protected Information by the non-producing party by providing written notice to counsel for the producing party.

---

[1]     The designator "CONFIDENTIAL" in this sense relates to information that is proprietary to a business entity rather than classified national security information.

4.      The parties reserve the right to submit to a non-party or a third-party (including a contractor) those documents in the possession of a party that have not been previously marked with restrictive markings for pre-production review.  After submission of documents, the non-party or third-party may seek protection for the documents within thirty (30) days of submission. Any documents submitted to the non-party or third-party for which no protection has been sought within thirty (30) days shall be produced.  Any non-party or third-party seeking protection shall do so in good faith.

5.      Either party may designate information disclosed at the deposition of a party or one of its present or former officers, directors, employees, agents, or consultants by so stating on the record or in writing within thirty (30) days of receipt of the transcript by counsel for the designating party.  Such written notification shall identify the specific pages and lines of the transcript that contain Protected Information.  Any party possessing a copy of the transcript shall mark the designated pages with appropriate markings as specified in paragraph 3, above.  All information disclosed during a deposition shall be treated as Protected Information until at least thirty (30) days after a transcript of the deposition is received by counsel for each of the parties.

6.      If a party designates information as Protected Information on the record at a deposition, the court reporter, to the extent possible, shall segregate into separate transcripts information designated as Protected Information from information not so designated.  The page numbers of the separate transcripts shall be consecutive so as to permit the pages to be merged into a complete transcript at the time of trial or as the court may direct.

7.      An exhibit to a deposition shall be treated in accordance with the confidentiality designation already given to it.  If an exhibit has not been previously designated, it shall be treated in accordance with any designation given to it on the record at the time of the deposition,

or if no such designation is made, shall be treated as being designated as Protected Information for a period of thirty (30) days after a transcript of the deposition is received by counsel for each of the parties.  Notwithstanding the foregoing, nothing prevents a Party or the deponent either on the record at the deposition or at any later date from changing the designation of a previously designated exhibit in accordance with the terms of this Protective Order.

<u>Challenges to Protected Information Designation</u>

8.    A party shall not be obligated to challenge the propriety of a Protected Information designation at the time made, and a failure to do so shall not preclude a subsequent challenge thereto.  In the event that a party disagrees at any time with a Protected Information designation made by another party, the parties shall make a good-faith attempt to resolve the dispute without involving the court.

9.    If the parties cannot resolve the dispute on their own, the objecting party may file a motion with the court challenging the designation of the material as Protected Information. The designating party shall have the burden of proving that its Protected Information designation is proper.  During the pendency of any challenge, the information in question shall be treated as Protected Information in accordance with the provisions of this protective order until such designation has been removed by order of the court or by written consent of the designating party.

<u>Use of Protected Information</u>

10.    Protected Information shall be used solely for the purpose of this action, including appeals.

**Appx5**

11.    Within ninety (90) days after the termination of all litigation among the parties hereto, including any appeals, each document and every tangible thing that contains or reveals Protected Information and any copies thereof shall be either (a) returned to the attorney of record for the producing party or (b) destroyed with a representation of such destruction being made to the attorney of record for the producing party; provided, that the United States Department of Justice and outside counsel for RMI may retain one (1) copy of such documents as each deems necessary, solely for archival purposes.  Any portion of the official record that contains or reveals Protected Information shall be exempt from this paragraph.

<u>Disclosure of Protected Information</u>

12.    Except as otherwise provided in this protective order, a receiving party may only disclose Protected Information to:

(a)    a Qualified Person;

(b)    any person who is, in whole or in part, the author or originator of the Protected Information in question;

(c)    any person identified on the document as a recipient of the Protected Information in question prior to its production in this action;

(d)    a witness where the witness is a current employee of the designating party and the witness' name appears on the Protected Information as a person who has previously seen or had access to the Protected Information, or if it is reasonably established that the witness has knowledge of information contained in the document about which the witness is being examined;

(e)    a witness where the designating party has consented on the record of the deposition to the showing of the Protected Information to the witness; or

(d)      any person who otherwise received a copy of the Protected Information in a manner not inconsistent with any provision of this protective order.

13.      At least ten (10) business days prior to the first disclosure of any Protected Information to an independent expert according to paragraph 2(f) or any other person according to paragraph 2(g), counsel that desires to disclose Protected Information shall provide the identity, residence address, and curricula vitae of each expert or person who is to be given access to Protected Information.  If a party objects to the expert or person, it shall make its objections known in writing within ten (10) business days of notification.  If agreement on the expert or person cannot be reached, the objecting party shall have ten (10) business days after making its objections known to seek a protective order from the court.  In such case, no disclosure shall be made to the expert or person until the court has ruled on the motion for a protective order.  If the objecting party fails to seek a protective order within that time, the objection shall be deemed waived and such Protected Information may be disclosed to the expert or person subject to this protective order.  Counsel must first obtain a signed declaration in the form shown in attached Exhibit A from the expert or person before disclosing Protected Information to the expert or person.

14.      Nothing in this protective order shall prevent disclosure of Protected Information if the designating party consents to such disclosure or if the court, after notice to all parties, orders such disclosure.

<u>Filing of Protected Information</u>

15.      The Clerk of the United States Court of Federal Claims is directed to maintain under seal any pleading, motion, brief, memorandum, exhibit, affidavit, declaration, transcript,

response to a discovery request, or other paper filed with the court that has been designated, in whole or in part, as containing or revealing Protected Information.

16.     In the event that a party wishes to use Protected Information in a pleading, motion, brief, memorandum, exhibit, affidavit, declaration, transcript, response to a discovery request, or other paper filed with any court, such paper shall be filed under seal in accordance with the rules of the Court of Federal Claims.

17.     This order constitutes leave of court or permission to file materials under seal in the Court's CM/ECF system, as required by RCFC, Appendix E, paragraph 12.

<u>Inadvertent Disclosure</u>

18.     During the course of this litigation, Protected Information inadvertently or unintentionally disclosed without a concurrent designation as Protected Information shall not be deemed a waiver in whole or in part of a claim that the disclosed information is Protected Information, either as to the specific information disclosed or as to any other information relating thereto.  In order to maintain its Protected Information status, however, any such Protected Information must be so designated within ten (10) business days after the designating party learns of the inadvertent or unintentional disclosure.  In the event of an unintentional or inadvertent disclosure, immediately after learning of the same, all parties shall take reasonable and appropriate action to cure the violation and retrieve any Protected Information from any person who is not a Qualified Person.

19.     Any discovery documents produced in this litigation may later be designated as "Attorney-Client Privileged," "Attorney Work Product," or, in the case of defendant, as privileged according to any legally-accepted Governmental privilege.  In such an instance, no

waiver of privilege or immunity shall be deemed to have occurred.  Upon such designation, the

receiving attorney shall promptly collect all copies of such documents and return them to the

producing party, or sequester such documents, summaries of such documents, and notes relating

to such documents for further review of the Court.  In the event that the receiving party believes

in good faith that the producing party cannot properly assert any privilege or immunity with

respect to the documents, the receiving party reserves the right to contest the assertion of such

privilege pursuant to the Rules of the United States Court of Federal Claims and other applicable

law.  The producing party shall bear the burden to show that the disclosed information is

privileged.


<u>Miscellaneous</u>

20.    No party shall be responsible to another party for any use made of information

that was not properly designated as Protected Information.

21.    Nothing in this protective order shall prejudice the right of a party to oppose

production of any information for lack of relevance, privilege, or any other ground.

22.    Nothing in this protective order shall prejudice the right of a party to seek at any

time a further order modifying this protective order.

23.    Nothing in this protective order shall prejudice the right of a party to petition the

court at any time for greater or lesser restrictions to be placed on the disclosure of any Protected

Information.

24.    Nothing in this protective order shall prevent a party or its counsel from

disclosing or using any information or documents that:  (a) are from the party's own files and

that the party itself has designated as Protected Information; or (b) were lawfully in the non-designating party's possession prior to disclosure by the producing party.

25.     Any markings and restrictions imposed by this protective order may be challenged in Court with respect to information that:  (a) appears in issued patents or printed publications that are generally available to the public or become publicly known; or (b) any party or its counsel has, since disclosure by the producing party, lawfully obtained from a non-party having the right to disclose such information.

26.     Nothing in this protective order shall be construed to limit or deny discovery in this litigation; to preclude a party from challenging a request for production of any protected information that is not discoverable pursuant to RCFC 26 and relevant case law; to preclude any party for moving the Court for an order compelling production or disclosure of such material; would require production or disclosure of any protected information deemed by counsel for the producing party to be protected from disclosure by the attorney-client privilege, the attorney work product immunity, or any other privilege or immunity so long as the withheld materials are identified in the manner required by the Rules of the Court of Federal Claims.

27.     The provisions of this protective order shall survive and remain in full force and effect after the termination of this action.


s/ James F. Merow
Senior Judge

EXHIBIT A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RETURN MAIL, INC.,                          **)**
                                            **)**
                                            **)**
                    Plaintiff,              **)**
                                            **)**        No. 11-130C
          v.                                **)**
                                            **)**
THE UNITED STATES,                          **)**        Senior Judge James F. Merow
                                            **)**
                                            **)**
                    Defendant.              **)**

UNDERTAKING CONCERNING CONFIDENTIALITY

I, _____, hereby certify that:

1.      My address is _____.

2.      I am presently employed by _____, which is

located at the following address _____.

3.      My present occupation or job description is _____.

4.      I have received a copy of the Protective Order in this action.

5.      I have read and understand all of the provisions of the Protective Order.

6.      I agree to be bound by the terms of the Protective Order.

7.      I will not divulge to persons other than those specifically authorized by said

Protective Order, and will not copy or use except solely for the purpose of this litigation, any

information obtained pursuant to said Protective Order, except as provided in said Protective

Order.  I also agree to notify any stenographic or clerical personnel who are required to assist me

of the terms of said Protective Order.

8.      I will return each document and each other tangible thing that discloses or reveals any Protected Information to the attorney who provided such document or other tangible thing to me.  Moreover, I will deliver any copies, abstracts, summaries, notes, or other records regarding the contents of any Protected Information to the attorney who provided such Protected Information to me.

9.      I understand that my failure to abide by the terms of the Protective Order entered in the above-captioned action may subject me, without limitation, to penalties for contempt of court.

10.      I submit to the jurisdiction of the court in the above-captioned action for the purpose of enforcing the terms of the Protective Order and freely and knowingly waive any right that I may otherwise have to object to the jurisdiction of said court.

I state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on: _____  Signature:    _____


Print Name:    _____

# In the United States Court of Federal Claims

No. 11-130C

(Filed: April 6, 2022)



|  |  |  |
|---|---|---|
| **RETURN MAIL, INC.,** | ) | Patent infringement case; persuasive, but |
|  | ) | not precedential, effect of prior decision |
| Plaintiff, | ) | of the Federal Circuit that was reversed by |
|  | ) | the Supreme Court on jurisdictional |
| v. | ) | grounds; patent-eligibility under 35 |
|  | ) | U.S.C. § 101 |
| **UNITED STATES,** | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

Lee L. Kaplan, Smyser Kaplan & Veselka, L.L.P., Houston, Texas, for plaintiff. With him on the briefs was Douglas H. Elliott, Elliot and Polasek, PLLC, Bellaire, Texas.

Shahar Harel, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Brian M. Boynton, Acting Assistant Attorney General, Gary L. Hausken, Director, and Rachel Hicks, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel were Rebecca Harker Duttry, Attorney, and Stephan J. Boardman, Attorney, United States Postal Service, Washington, D.C.

## OPINION AND ORDER

LETTOW, Senior Judge.

Pending before the court in this patent infringement case are the United States' ("the government" or "defendant") motions for summary judgment under 35 U.S.C. §§ 101, 102, and 305 and Return Mail, Inc.'s ("plaintiff" or "Return Mail") cross-motions for partial summary judgment under 35 U.S.C. §§ 101 and 305. *See* ECF Nos. 169, 171-73. At issue are claims 42 and 44 of U.S. Patent No. 6,826,548 (the "'548 patent"), titled "System and Method for Processing Returned Mail," and the reexamination certificate for the '548 patent. The '548 patent claims a "technological invention improving the manner in which undeliverable mail is identified and processed." Pl.'s § 101 Summ. J. Mot. at 1 ("Pl.'s § 101 Mot."), ECF No. 172. Defendant argues that claims 42 and 44 are not valid claims because (1) they address patent-ineligible subject matter under 35 U.S.C. § 101, *see* Def.'s § 101 Summ. J. Mot. at 1 ("Def.'s § 101 Mot."), ECF No. 169, (2) the claims are anticipated by prior art under 35 U.S.C. § 102, and (3) the reexamined claims are broader than the original claims of the '548 patent in contravention of 35 U.S.C. § 305, *see* Def.'s §§ 102, 305 Summ. J. Mot. at 1 ("Def.'s §§ 102, 305 Mot."), ECF No. 171.

In turn, plaintiff opposes summary judgment under Sections 101, 102, and 305. *See* Pl.'s Opp'n to Def.'s § 101 Mot. ("Pl.'s § 101 Opp'n"), ECF No. 175; Pl.'s Opp'n to Def.'s § 102 Mot. ("Pl.'s § 102 Opp'n"), ECF No. 179; Pl.'s Opp'n to Def.'s § 305 Mot. ("Pl.'s § 305 Opp'n"), ECF No. 178. Return Mail also cross-moves for summary judgment as to two of the government's affirmative defenses, arguing that the claims are valid under Section 101 and have not been impermissibly expanded under Section 305. *See* Pl.'s § 101 Mot.; Pl.'s § 305 Summ. J. Mot. ("Pl.'s § 305 Mot."), ECF No. 173. The parties have completed briefing. *See* Def.'s § 101 Opp'n, ECF No. 177; Def.'s § 305 Opp'n, ECF No. 180; Pl.'s § 101 Reply, ECF No. 184; Pl.'s § 305 Reply, ECF No. 183. Def.'s § 101 Reply, ECF No. 182; Def.'s §§ 102, 305, Reply, ECF No. 186. The court held a hearing on January 24, 2022, and supplemental briefs by the parties were filed on February 4 and 16, 2022. *See* Pl.'s Supp. Br. § 101, ECF No. 207; Def.'s Supp. Br. § 101, ECF No. 206. The motions are ready for disposition.

For the reasons stated, the court grants defendant's motion for summary judgment on the ground that it has established that claims 42 and 44 of the '548 patent are invalid under 35 U.S.C. § 101 and denies plaintiff's cross-motions for partial summary judgment.

## BACKGROUND[1]

### *A. The '548 Patent*

The application for the '548 patent was filed on January 24, 2002, and the patent issued November 30, 2004. *See* '548 patent. The patent describes a "method, system and program product for processing returned mail." *Id.*[2] Return Mail is the assignee of the '548 patent. *Id.* The patent underwent ex parte reexamination, which resulted in the original thirty-eight claims being cancelled and claims 39-63 being added. *See* Ex Parte Reexamination Certificate 6,826,548 (Jan. 4, 2011).[3] Claims 39-63, which will be presented in greater detail as relevant below, do not mirror the original claims of the patent word for word. *Compare* '548 patent, *with* Ex Parte Reexamination Certificate 6,826,548; *see also* Def.'s §§ 102, 305 Mot. at 5-14.

The claimed invention aims to provide an "improved method of processing returned mail that overcomes the historical problems with prior art manual handling." '548 patent, col. 1, lines 55-57. Essentially, the patent addressed an automated process that had previously required manual entry by humans. *See* Pl.'s § 101 Mot. at 9. The invention encodes information from the sender, such as the name and address of the recipient, into a two-dimensional barcode. *See* '548

---

[1] The following recitations do not constitute findings of fact by the court. Instead, the recited factual elements are taken from the relevant complaint and the parties' briefs and attached appendices.

[2] "Returned mail" is sometimes referred to as "undeliverable mail," which means "mail that is not delivered due to an inaccurate or expired address for the intended recipient." Pl.'s § 101 Mot. at 8.

[3] References to the '548 patent throughout this opinion include the Ex Parte Reexamination Certificate.

patent, col. 2, lines 4-5; col. 2, line 66 to col. 3, line 15.  If undeliverable, the mail is sent to a processing location where the barcode is scanned, and the encoded information is decoded.  *Id.*, col. 2, lines 14-20; col. 3, lines 15-51.  The computer system which stores the encoded information interacts with a database of stored corrected addresses via "any conventional telecommunications data line."  *Id.*, col. 3, lines 53-54.  Afterwards, depending on what the sender elected, either a corrected address is provided if available or a notification is sent to the sender if they did not request a corrected address.  *See* '548 Reexamination Certificate, col. 2, lines 1-24.

For purposes of the present litigation, Return Mail only asserts claims 42 and 44, which cover:

42. A method for processing a plurality of undeliverable mail items, comprising:

receiving from a sender a plurality of mail items, each including i) a written addressee, and ii) encoded data indicating whether the sender wants a corrected address to be provided for the addressee;

identifying, as undeliverable mail items, mail items of the plurality of mail items that are returned subsequent to mailing as undeliverable;

decoding the encoded data incorporated in at least one of the undeliverable mail items;

creating output data that includes a customer number of the sender and at least a portion of the decoded data;

determining if the sender wants a corrected address provided for intended recipients based on the decoded data;

if the sender wants a corrected address provided, electronically transferring to the sender information for the identified intended recipients that enable the sender to update the sender's mailing address files; and

if the sender does not want a corrected address provided, posting return mail data records on a network that is accessible to the sender to enable the sender to access the records.

44. The method of claim 42, wherein the encoded data further indicates a name and address of the intended recipient.

'548 Reexamination Certificate, col. 2, lines 1-24, 30-32.

3

**Appx15**

*B. Procedural History*

In 2003, the parties began discussing whether the Postal Service would obtain a license for the '548 patent. Am. Compl. ¶¶ 10-15, ECF No. 128. In 2006, the Postal Service introduced the OneCode ACS system, which creates a "[t]racking [b]arcode" for mail and allows a barcode reader to "determine data usually obtained from the mailpiece as keyed data entry or [o]ptical [c]haracter [r]eader . . . produced data." Pl.'s § 101 Mot., Ex. 6 at 34. When the parties could not reach an agreement as to the licensing of the '548 patent, Return Mail filed suit against the government in February 2011, alleging that the OneCode ACS system infringes the patent. *See* Compl., ECF No. 1.

The court issued its opinion on claim construction on October 4, 2013. *See* ECF No. 54. In April of 2014, the Postal Service petitioned the Patent Trial and Appeal Board ("the PTAB") for a covered business method ("CBM") review of the '548 patent. This case was stayed during that process. *See* Order of October 21, 2014, ECF No. 83. The PTAB invalidated all the challenged claims of the '548 patent and reexamination certificate, determining that the claims were patent-ineligible under 35 U.S.C. § 101. Specifically, the PTAB held that the claims "more likely than not" covered patent-ineligible subject matter. *United States Postal Serv. v. Return Mail, Inc.*, No. CBM2014-00116, 2014 WL 5339212 at *13-15 (P.T.A.B October 16, 2014).

On appeal, the Court of Appeals for the Federal Circuit affirmed the PTAB's invalidity decision after initially determining that the Postal Service had standing to petition for review by the PTAB. *Return Mail, Inc. v. United States Postal Serv.*, 868 F.3d 1350, 1366-69 (Fed. Cir. 2017), *rev'd*, ___ U.S. ___, 139 S. Ct. 1853 (2019). The Federal Circuit reasoned that claims 42 and 44 were abstract as they "simply recite existing business practice with the benefit of generic computing technology." *Id.* at 1368. In that respect, the Federal Circuit determined that the "claims only recite routine, conventional activities such as identifying undeliverable mail items, decoding data on those mail items, and creating output data" and therefore did not find an inventive concept that transformed the abstract idea into a patent-eligible application. *Id.* at 1368-69.

The United States Supreme Court granted certiorari but only as to the issue of "whether a federal agency is a 'person' able to seek [CBM] review under the [Leahy-Smith America Invents Act of 2011]." *Return Mail*, 139 S. Ct. at 1859. The case was reversed and remanded because a federal agency was held to not be a "person" for the purposes of the Act and could not seek CBM review. *Id.* at 1867-68. Of note is that the Supreme Court did not reach the substantive issue of whether the '548 patent was invalid under Section 101. The Federal Circuit then remanded the case to the PTAB "with instructions to dismiss in light of the Supreme Court's disposition." *Return Mail, Inc. v. United States Postal Serv.*, 774 Fed. Appx. 684 (Fed. Cir. 2019).

With the PTAB related proceedings thus concluded, the stay in this case was lifted in September 2019. *See* Order of September 5, 2019, ECF No. 108. Now in this court, defendant renews its argument that the '548 patent is invalid under Section 101, as well as under Sections 102 and 305. *See* Def.'s § 101 Mot. at 26-27; Def.'s §§ 102, 305 Mot. at 5, 14. Contrastingly, plaintiffs seek partial summary judgment rejecting these affirmative defenses on the grounds that the patent is valid as an inventive concept, that the government failed to adequately support its

contentions of invalidity, and that the patent was not impermissibly broadened during the reexamination process. *See* Pl.'s § 101 Mot. at 1, 27-28; Pl.'s § 305 Mot. at 2.

## STANDARDS FOR DECISION

### *A. 28 U.S.C. § 1498*

Pursuant to 28 U.S.C. § 1498, the United States has waived sovereign immunity and granted this court exclusive jurisdiction to adjudicate patent infringement claims against the federal government "[w]henever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same." *See FastShip, LLC v. United States*, 892 F.3d 1298, 1307 n.1 (Fed. Cir. 2018), *aff'g*, 122 Fed. Cl. 71, 78 (2015) (recognizing that Section 1498 grants this court jurisdiction over patent infringement claims against the United States); *Hitkansut LLC v. United States*, 130 Fed. Cl. 353, 367 (2017), *aff'd*, 721 Fed. Appx. 992 (Fed. Cir. 2018). Moreover, the statute provides that "the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the [g]overnment and with the authorization or consent of the [g]overnment, shall be construed as use or manufacture for the United States." 28 U.S.C. § 1498(a). Such an unauthorized "use or manufacture of an invention" under Section 1498(a) is analogous to a taking of property under the Fifth Amendment of the United States Constitution. *See Motorola, Inc. v. United States*, 729 F.2d 765, 768 (Fed. Cir. 1984). The government's "taking" of a nonexclusive and compulsory license to any United States patent occurs "as of the instant the invention is first used or manufactured by [or for] the [g]overnment." *Decca Ltd. v. United States*, 640 F.2d 1156, 1166 (Ct. Cl. 1980).

The government has waived sovereign immunity only for the compulsory taking of a non-exclusive patent license, and the government's liability under 28 U.S.C. § 1498 diverges from private liability under 35 U.S.C. § 271:

> Government liability under Section 1498 arises from the "use or manufacture by or for the United States." There is no mention of liability for a "sale" to the United States of a device covered by a patent. In contrast, with respect to private liability for patent infringement, the "sale" of a patented device is specifically defined in 35 U.S.C. § 271 as an act of infringement.

*de Graffenried v. United States*, 25 Cl. Ct. 209, 215 (1992) (brackets omitted); *compare* 28 U.S.C. § 1498, *with* 35 U.S.C. § 271.[4]

---

[4] Section 271(a) of Title 35 of the United States Code provides in relevant part:

whoever without authority *makes, uses, offers to sell, or sells* any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

### B. Available Defenses

Under Section 1498(a), "[i]n the absence of a statutory restriction, *any defense* available to a private party is equally available to the United States." *Motorola*, 729 F.2d at 769 (quoting 28 U.S.C. § 1498, Revisor's Notes) (emphasis added). Thus, the invalidity defenses available to private parties involved in patent disputes under 35 U.S.C. § 282(b) are also available to the government. *See, e.g.*, *Messerschmidt v. United States*, 29 Fed. Cl. 1, 17-40 (1993) (granting the government's cross-motion for summary judgment in plaintiff's patent infringement suit, having found plaintiff's patent invalid on the basis of anticipation, indefiniteness, and obviousness), *aff'd*, 14 F.3d 613 (Fed. Cir. 1993). Nonetheless, an issued patent is presumed valid, 35 U.S.C. § 282(a), and the government must prove invalidity by clear and convincing evidence, *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). This burden of persuasion remains on the government throughout a pending action, *see Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed. Cir. 1983), including for summary judgment, *see Anderson v. Liberty Lobby*, 477 U.S. 242, 254 (1986) (holding that when deciding a motion for summary judgment, a court must bear in mind the applicable evidentiary burden under the substantive law).

### C. Summary Judgment

A grant of summary judgment is appropriate when the pleadings, affidavits, and evidentiary materials filed in a case demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Rules of the Court of Federal Claims ("RCFC"). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute is genuine if it might "return a verdict for the nonmoving party." *Id.* If "the record taken as a whole [cannot] lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

The burden of demonstrating the absence of any genuine dispute is on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Accordingly, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita*, 475 U.S. at 587-88 (alteration omitted) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The nonmoving party may defeat summary judgment by presenting material facts of its own, more than "[m]ere denials or conclusory statements," that indicate "an evidentiary conflict created on the record." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984). To establish "that a fact cannot be or is genuinely disputed," a party must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." RCFC 56(c)(1)(A).

When both parties have moved for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences

---

35 U.S.C. § 271(a) (emphasis added).

against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." *Id*. "To the extent there is a genuine issue of material fact, both motions must be denied." *Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 969 (Fed. Cir. 2009).

## ANALYSIS

The parties' cross-motions for summary judgment address whether the '548 patent is ineligible under 35 U.S.C. § 101. "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. Pursuant to Supreme Court precedent construing 35 U.S.C. § 101, "[l]aws of nature, natural phenomena, and abstract ideas" are ineligible subject matters for patent protection. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589-90 (2013)).[5] Under the Supreme Court's two-part test to determine patent eligibility, a court must (1) "determine whether the claims at issue are directed to one of those patent-ineligible concepts," and (2) if so, "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012)). The second step has been characterized as "a search for an 'inventive concept'" that "amounts to significantly more than a patent on" the abstract idea. *Id.* (quoting *Mayo*, 566 U.S. at 72-73); *see also Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146 (Fed. Cir. 2016).

### A. Alice *Step One*

"The 'abstract ideas' category [of patent-ineligible concepts] embodies 'the longstanding rule that an idea of itself is not patentable.'" *Alice*, 573 U.S. at 218 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)) (internal quotation marks and brackets omitted). At step one of the *Alice* analysis, the court inquires "whether the claims 'focus on a specific means or method or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 909 (Fed. Cir. 2017) (internal alterations omitted) (quoting *McRO Inc. v. Bandai Namco Games America, Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)).

While there is no "definitive rule to determine what constitutes an abstract idea," the Federal Circuit has "held claims ineligible as directed to an abstract idea when they merely collect electronic information, display information, or embody mental processes that could be performed by humans." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1346-47 (Fed. Cir. 2017) (quotation marks omitted). Various abstract or conceptual subject matters have proven to

---

[5] These three categories of ineligible subject matter are judicially created. *See Hitkansut LLC v. United States*, 115 Fed. Cl. 719, 723 (2014), *aff'd*, 721 Fed. Appx. 992 (Fed. Cir. 2018).

be patent-ineligible abstract ideas under 35 U.S.C. § 101. *See, e.g.*, *Alice*, 573 U.S. at 219 (holding patent ineligible "a method of exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement risk," which embodied the abstract idea of intermediated settlement); *Benson*, 409 U.S. at 71-72 (holding patent-ineligible an algorithm for converting binary-coded decimal numerals into pure binary form, as it was "in practical effect . . . a patent on the algorithm itself"); *Parker v. Flook*, 437 U.S. 584, 594-95 (1978) (holding patent-ineligible a mathematical formula for computing "alarm limits" in a catalytic conversion process). On the other hand, "specific improvements in technology, method, or material that make more useful concepts, ideas, or materials are patent eligible." *3rd Eye Surveillance, LLC v. United States*, 140 Fed. Cl. 39, 52 (2018) (citing *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1048-49 (Fed. Cir. 2016) (holding that a "new and useful laboratory technique for preserving [a type of liver cell]" was patent-eligible subject matter); *see also Hitkansut*, 130 Fed. Cl. at 380 (holding patent-eligible a "new and more efficient method for treating metal parts to change their physical properties").

Invoking computers or other technologies to make an abstract idea more efficient is neither a "new and useful process, machine, manufacture, or composition of matter," nor a "new and useful improvement thereof" under 35 U.S.C. § 101. For example, *Secured Mail Solutions* concerned claims involving "methods whereby a sender affixe[d] an identifier on the outer surface of a mail object . . . before the mail object [was] sent . . . [, and c]omputers and networks [were] used to communicate the information about the mail object's contents and its sender after the mail object [was] delivered." 873 F.3d at 907. Specifically, the *Secured Mail Solutions* patents involved affixing a barcode, a QR code, or a personalized URL to the outside of mail items. *Id.* The Court of Appeals held that the claims in that case were directed to an abstract idea because the claims were "not directed to a new barcode format, an improved method of generating or scanning barcodes, or similar improvements in computer functionality." *Id.* at 910. The claims lacked any description of how the identifiers were generated or were different from conventional means of communicating mail item information, such as affixing a return address. *Id.* Moreover, the claims were "not limited by rules or steps that establish[ed] how the focus of the methods [was] achieved." *Id.* at 911. Instead, they concerned the abstract idea of "using a marking affixed to the outside of a mail object to communicate information about the mail object." *Id.*; *see also Credit Acceptance Corp. v. Westlake Sers.*, 859 F.3d 1044, 1054-1056 (Fed. Cir. 2017) (holding patent claims abstract where they involved electronic "communication between previously unconnected systems—the dealer's inventory database, a user credit information input terminal, and creditor underwriting servers"—because doing so merely automated the "previously manual processing of loan applications" and invoked computers "merely as a tool" instead of offering an improvement).

The government argues that Return Mail's patent claims are abstract because "they simply take known steps involving the abstract concept of processing returned mail, and then automate those known steps." Def.'s § 101 Mot. at 15. Defendant argues that—unlike the patent claims in *McRO*, which proved patent-eligible because they created a novel set of rules for performing lip synchronization in video games, *id.* at 14 (citing generally 837 F.3d 1299)—the '548 patent claims recite "an 'existing business practice with the benefit of generic computing technology,'" *id.* at 15 (quoting *Return Mail*, 868 F.3d at 1368), which "a human can mentally

perform," *id.* at 15-16 (citing *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)).

Return Mail responds—quoting the opinion of its expert, Dr. Scott Nettles—that the '548 claims "are directed to specific means or methods that improve the relevant technology and are a specific and concrete invention centered on the automated processing of undeliverable mail." Pl.'s § 101 Opp'n at 8.  Plaintiff further argues that its patent claims are not directed to an abstract concept because they concern "a physical and technological process including mail pieces, sorters, scanners, encoded information and computers," *id.*, because the ordered steps included in the claims "were not previously used as an ordered combination," *id.* at 9, and because those steps were directed to "achiev[ing] a technological improvement in the processing of returned mail," *id.* at 10.

As a threshold matter, the court addresses Return Mail's assertion that the Federal Circuit's opinion in *Return Mail*, 868 F.3d at 1368-69—and the PTAB's underlying CBM decision—are "null and void, as if they never occurred" because the Supreme Court reversed the Court of Appeals.  Pl.'s § 101 Opp'n at 3.  The court agrees that the Federal Circuit's opinion no longer has preclusive effect on the parties, *see O'Connor v. Donaldson*, 422 U.S. 563, 577 n.12 (1975) ("Of necessity our decision vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect, leaving [the Supreme] Court's opinion and judgment as the sole law of the case."); however, the court disagrees with the contention that it may not consider the Federal Circuit's opinion for its persuasive value, especially where the pertinent decision was reversed on a procedural question separate and distinct from the merits of the Court of Appeal's eligibility analysis, *see Los Angeles Cnty. v. Davis*, 440 U.S. 625, 646 n.10 (1979) (Powell, J., dissenting) ("Although a decision vacating a judgment necessarily prevents the opinion of the lower court from being the law of the case, the expressions of the court below on the merits, if not reversed, will continue to have precedential weight and, until contrary authority is decided, are likely to be viewed as persuasive authority." (internal citations omitted)).

Return Mail further argues that the court is prevented from considering the Federal Circuit's opinion because of the different evidentiary standards of proof at the PTAB and this court.  *See* Pl.'s § 101 Opp'n at 4.  Regardless of debates over the extent to which extrinsic evidence may be appropriate in the Section 101 eligibility analysis, *see CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1374-79 (Fed. Cir. 2020) (Dyk, J., concurring in part and dissenting in part), it is undisputed that "*Alice* step one presents a legal question that can be answered based on the intrinsic evidence," *id.* at 1372 (Stoll, J.); *see also In re Comiskey*, 554 F.3d 967, 975 (Fed. Cir. 2009) ("It is well-established that" invalidity under Section 101 "is a question of law." (quoting *AT & T Corp. v. Excel Commc'ns, Inc.*, 172 F.3d 1352, 1355 (Fed. Cir. 1999))).  The legal question of invalidity, at *Alice* step one, is therefore not affected by the different standards of proof applicable to factual issues.  *See Microsoft*, 564 U.S. at 114 (Breyer, J., concurring) (explaining that "the evidentiary standard of proof [in a Section 101 invalidity analysis] applies to questions of fact and not to questions of law").  Moreover, to hold that PTAB decisions may not apply in trial courts due to differing standards of proof would render PTAB invalidity decisions meaningless because a disappointed patent holder would automatically have a second chance to litigate the validity question before the trial court.  This cannot be, nor has it been, the case.

The court reiterates that it agrees with Return Mail to the extent that the Supreme Court's reversal deprived the Federal Circuit's and the PTAB's decisions of preclusive effect. It is not true, however, that the court is therefore barred from considering those decisions. The court therefore concludes that the Federal Circuit's reasoning in *Return Mail*, 868 F.3d at 1368-69 is worthy of consideration here.[6]

The text of the '548 patent claims reveals a series of steps that describe an abstract idea, namely, processing returned mail and relaying mailing address data. "Claim 42 recites 'receiving from a sender a plurality of mail items,' 'identifying undeliverable mail items,' 'decoding encoded data,' 'creating output data,' and 'determining if the sender wants a corrected address.'" *Return Mail*, 868 F.3d at 1368 (quotation marks and ellipses omitted). In considering the same '548 patent claims at issue here, the Federal Circuit held that "[t]hese steps are analogous to the steps of 'collecting data,' 'recognizing certain data within the collected data set,' and 'storing that recognized data in memory,' which [it] found to be abstract" in another case. *Id.* (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014), *cert. denied*, 577 U.S. 914 (2015)). This abstractness is evident whether the court considers the claim limitations individually or as an ordered combination.

Additionally, the '548 patent claims are not directed to an improvement on the abstract idea of processing returned mail and relaying address data. They do not offer a practitioner of the art something that had been hitherto unavailable, like the claims for a new way of performing lip synchronization in video games in *McRO*. Instead, like the claims in *Secured Mail Solutions* and *Credit Acceptance Corp.*, the '548 claims restate a process that was historically performed manually by people and invokes computers merely as a tool to automate that previously manual process. *See* '548 Patent, col. 1, lines 39-47. Contrary to Return Mail's contention that claims 42 and 44 are directed to a specific improvement of processing returned mail and relaying address data, the texts of those claims do not describe any such improvement individually or as an ordered combination. Instead, they recite the conventional, historically manual processing of returned mail and updating addresses while invoking computers "merely as a tool." *Credit Acceptance Corp.*, 859 F.3d at 1055.

---

[6] Return Mail also argues that the PTAB's and the Federal Circuit's opinions are inapplicable to the present motions because the PTAB used a different claim construction standard than would be used at the trial court. Pl.'s § 101 Opp'n at 4. Prior to November 2018, the PTAB applied the "broadest reasonable interpretation" standard to claim construction in various proceedings, including CBM reviews; however, in a final agency rulemaking, the Board adopted the same claim construction standard used in trial courts as set out in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). *See* Changes to the Claim Construction Standard for Interpreting Claims in Trial Proceedings Before the Patent Trial and Appeal Board, 83 Fed. Reg. 51,340 (Oct. 11, 2018) (to be codified at 37 C.F.R. pt. 42). This rulemaking was made to apply only to covered PTAB proceedings filed on or after November 13, 2018. *Id.* The CBM review at issue in this case was filed before the effective date of the final PTAB rulemaking. *See Return Mail, Inc.*, No. CBM2014-00116.

While plaintiff argues that tangible items, such as computers and scanners, remove claims 42 and 44 from the realm of abstract ideas, *see* Pl.'s § 101 Opp'n at 8, such tangible instruments do not appear in claims 42 and 44, *see Return Mail*, 868 F.3d at 1369 ("In addition, Return Mail points to hardware, such [as] 'a mail sorter, optical scanner, databases, application servers, and the mail itself' to argue that claims 42–44 result in an 'improvement to an existing technological process.' However, those limitations do not appear in the subject claims; instead, the claims focus only on encoding and decoding certain information and placing that information over a network.'" (internal citations omitted)). Whatever may be said for other claims in the '548 patent that Return Mail no longer asserts,[7] claims 42 and 44 are lacking in any references beyond the abstract idea of processing undeliverable mail items. Moreover, even if claims 42 and 44 described a "physical and technological process including mail pieces, sorters, scanners, encoded information and computers," Pl.'s § 101 Opp'n at 8, this would amount to an abstract idea "for which computers [and these other pieces of technology] are invoked merely as a tool." *Credit Acceptance Corp.*, 859 F.3d at 1055. As with *Secured Mail Solutions*, these implements would render the abstract idea of relaying address information on returned mail items more efficient but would not render that idea "less abstract." 873 F.3d at 910. The court therefore holds that the asserted '548 patent claims are directed to an abstract idea.

### B. Alice *Step Two*

That the '548 claims are directed to an abstract idea does not end the analysis, and the court considers whether those claims embody an inventive application of processing mail items and updating a return address that is "significantly more" than just that abstract idea. *See Alice*, 573 U.S. at 217-18. To prevail at step two of *Alice*, the '548 claims "must involve more than performance of 'well-understood, routine, and conventional activities previously known to the industry.'" *Content Extraction*, 776 F.3d at 1347-48 (brackets omitted) (quoting *Alice*, 573 U.S. at 225). Whether the '548 claims embody a patent-eligible application of an abstract idea is a question of law; however, whether the claims at issue involve more than well-understood, routine, and conventional activities is a factual question. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). "When there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, [or] conventional to a skilled artisan in the relevant field, this issue can be decided on summary judgment as a matter of law." *Id.*

In the context of computer-based claims, the Court in *Alice* explained:

> In *Benson*, . . . we considered a patent that claimed an algorithm implemented on "a general-purpose digital computer." Because the algorithm was an abstract idea, the claim had to supply a "'new and useful'" application of the idea in order to be patent eligible. But the computer implementation did not supply the necessary inventive concept; the process could be "carried out in existing computers long in use."

573 U.S. at 222 (internal citations omitted). The Court continued,

---

[7] "The Court: Plaintiff's claims . . . focus specifically and solely . . . on claims 42 and 44 of the patent. Is that correct? [Counsel for Return Mail]: Yes, Your Honor." *See* Hr'g Tr. 11:6-11 (Jan. 21, 2021).

In *Diehr*, by contrast, we held that a computer-implemented process for curing rubber was patent eligible, but not because it involved a computer. The claim employed a "well-known" mathematical equation, but it used that equation in a process designed to solve a technological problem in "conventional industry practice." The invention in *Diehr* used a "thermocouple" to record constant temperature measurements inside the rubber mold—something "the industry had not been able to obtain."

*Id.* at 223 (brackets and internal citations omitted).

Similarly, the abstract idea of processing undeliverable mail items and providing an updated address is not patent eligible on its own. Nevertheless, Return Mail may prevail by demonstrating a genuine issue of material fact as to whether its claimed method goes beyond generically applying the idea on computers, as in *Benson*, and instead applies it in an inventive way to provide some improvement or novel solution as in *Diehr*. *See Hitkansut*, 115 Fed. Cl. at 732 ("In *Diehr*, the underlying mathematical equation that determined at what point in the process a rubber mold should be opened was not patent eligible, but a method for applying that equation more accurately and effectively was eligible." (citing *Diehr*, 450 U.S. at 187)); *see also, e.g.*, *Thales Visionix*, 850 F.3d at 1349 ("Just as claims directed to a new and useful technique for defining a database that runs on general-purpose computer equipment are patent eligible, so too are claims directed to a new and useful technique for using sensors to more efficiently track an object on a moving platform." (internal citation omitted)).

The government contends that the '548 patent claims fail to provide an "inventive concept" under *Alice* step two because they "tak[e] known and conventional business practices (*e.g.*, steps for sorting returned mail) and generically apply[] those practices to computers." Def.'s § 101 Mot. at 16-17. Defendant specifically argues that Return Mail's claims lack limitations directed to an inventive concept: *e.g.*, that according to plaintiff's expert, "elements of the claims were routine, conventional, and well-understood" at the time of Return Mail's application, *id.* at 18 (citing Return Mail's expert, Dr. Scott Nettles), that encoding and decoding data based on whether a sender wants an updated address "amount to a basic logic determination" and do not "transform the abstract idea into patent-eligible subject-matter," *id.* (quoting *Return Mail*, 868 F.3d at 1368-69), that Return Mail's invocation of computers fails to provide the inventive concept because the '548 patent says "any kind of computer system" would suffice, *id.* at 20 (brackets omitted) (citing '548 Patent, col. 7, line 7), and that other tangible technologies that Return Mail identifies in its argument are not found in the disputed claims 42 and 44, *id.*

Return Mail concedes that some of the limitations of claim 42 were known at the time of the '548 patent application; however, it contends that none of them were well-known, routine, and conventional. Pl.'s § 101 Opp'n at 12-15. Plaintiff further avers that limiting claims to mail items after an unsuccessful delivery attempt was unknown at the time, *id.* at 13, that the encoding and decoding limitation was directed to electronic means that could not have been humanly performed, *id.* at 14-15, and that the use of computers required some customization and programming to implement the '548 claims, *id.* at 17. Return Mail also argues that the

government's reliance on analogies to Federal Circuit opinions "is not evidence" sufficient to support its summary judgment motion. *Id.* at 15-16.

Again, Return Mail's "claims only recite routine, conventional activities such as identifying undeliverable mail items, decoding data on those mail items, and creating output data." *Return Mail,* 868 F.3d at 1368. Similarly, "the limitations [of] reciting particular types of encoded data or particular uses of that data once decoded, such as sending the data or making it available to the sender, depending on the sender's preferences" do not represent a new or useful application. *Id.* at 1368-69. Unlike *Diehr*'s novel application of a mathematical equation to solve a specific problem and obtain measurements that practitioners of the art "had not been able to obtain," *Alice*, 573 U.S. at 223 (brackets omitted) (citing *Diehr,* 450 U.S. at 178), the language of the '548 patent claims provide for the conventional processing of undeliverable mail items but on a computer. Instead, as with *Benson*, the '548 patent claims' reliance on "any kind of computer system," '548 patent, col. 7, line 7, fails "to supply a 'new and useful' application of the [abstract] idea" of sorting undeliverable mail items and providing an updated mailing address. *Id.* at 222 (citing *Benson*, 409 U.S. at 67).

The limitations of the '548 patent claims were well-known and conventional at the time of the patent application, including the purportedly inventive concept of updating a mailing address *after* a failed delivery attempt. *See* '548 patent, col. 1, lines 20-60 (describing the "historical[]" and "not uncommon" practice of researching and updating mailing addresses of "mail that is returned to sender"). To restate known, conventional steps, but on a computer, is insufficient to transform the claims—otherwise directed to an abstract idea—into an inventive application. *See, e.g., Alice*, 573 U.S. at 225 (holding that claims failed to "do more than simply instruct the practitioner to implement the abstract idea . . . on a generic computer" where "each step of the process [was] 'purely conventional'" individually and "as an ordered combination" (brackets omitted)); *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) (holding no inventive concept where "the claims 'add' only generic computer components such as an 'interface,' 'network,' and 'database'" because "[t]hese generic computer components do not satisfy the inventive concept requirement"); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) ("Nor, in addressing the second step of *Alice,* does claiming the improved speed or efficiency inherent with applying the abstract idea on a computer provide a sufficient inventive concept."); *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter.").

Moreover, Return Mail's assertions that the '548 claims are limited to *electronic* encoding and decoding or *customized* computers and programming are unavailing. It is not enough to "'attempt to limit the use' of the abstract . . . idea 'to a particular technological environment.'" *buySafe, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (citing *Alice* 573 U.S. at 22-24) (brackets and additional citations omitted). Because the '548 patent claims are directed to the abstract idea of processing undeliverable mail and providing an updated address, and because there is no genuine dispute of material fact that those claims fail to offer any kind of new application of that idea, the court holds that the disputed patent is patent-

ineligible under 35 U.S.C. § 101.  Defendant's remaining grounds for summary judgment under Sections 102 and 305 are moot.

## CONCLUSION

For the foregoing reasons, defendant's Section 101 motion for summary judgment is GRANTED and the plaintiff's cross-motions for partial summary judgment are DENIED.  The remaining summary judgment motions are DENIED AS MOOT.

The Clerk is directed to enter judgment for defendant.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge

# In the United States Court of Federal Claims
### No. 11-130 C
### Filed: April 6, 2022


**RETURN MAIL, INC.**

                                                  **JUDGMENT**

    **v.**


**THE UNITED STATES**


Pursuant to the court's Opinion and Order, filed April 6, 2022, granting defendant's Section 101 motion for summary judgment and denying plaintiff's cross-motions for partial summary judgment,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that judgment is entered in favor of defendant.  No costs.


                                         Lisa L. Reyes
                                         Clerk of Court

                         By:    s/ Debra L. Samler

                                           Deputy Clerk


NOTE: As to appeal to the United States Court of Appeals for the Federal Circuit, 60 days from this date, see RCFC 58.1, re number of copies and listing of all plaintiffs. Filing fee is $505.00.

# In the United States Court of Federal Claims

No. 11-130C

(Filed: May 6, 2022)

———————————————

| | |
|---|---|
| **RETURN MAIL, INC.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| **v.** | ) |
| | ) |
| **UNITED STATES,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

———————————————

ORDER

Pending before the court is plaintiff's motion to alter or amend the judgment, ECF No. 210, entered upon the court's order and opinion granting defendant's summary judgment motion against plaintiff, ECF No. 208. Plaintiff's submission is unavailing to support a grant of a motion for alteration or amendment of the judgment previously entered. Plaintiff's motion is therefore DENIED.

It is so **ORDERED**.

s/ Charles F. Lettow\
Charles F. Lettow\
Senior Judge

APPEAL,BOC,CLOSED,ECF,PROTO

## US Court of Federal Claims
## United States Court of Federal Claims (COFC)
## CIVIL DOCKET FOR CASE #: 1:11−cv−00130−CFL

RETURN MAIL, INC. v. USA
Assigned to: Senior Judge Charles F. Lettow
Case in other court:  22−01898
Cause: 28:1491 Tucker Act

Date Filed: 02/28/2011
Date Terminated: 04/06/2022
Jury Demand: None
Nature of Suit: 508 Patent
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**RETURN MAIL, INC.**          represented by

**Joseph M Mercadante**
Fabricant LLP
411 Theodore Fremd Avenue
Suite 206 South
Rye, NY 10580
646−797−4343
Fax: 212−257−5796
Email: jmercadante@fabricantllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**George Frank Pappas**
Covington & Burling LLP (DC)
One City Center
850 Tenth Street, NW
Washington, DC 20001−4956
(202) 662−5594
Email: gpappas@cov.com
*TERMINATED: 04/22/2014*

**Lee Landa Kaplan**
Smyser, Kaplan & Veselka, L.L.P.
700 Louisiana Street
Suite 2300
Houston, TX 77002
(713) 221−2300
Fax: (713) 221−2320
Email: lkaplan@skv.com
*TERMINATED: 06/03/2022*

**Richard L. Rainey**
Covington & Burling LLP (DC)
One City Center
850 Tenth Street, NW
Washington, DC 20001−4956
202−662−5565
Fax: 202−778−5565
Email: rrainey@cov.com
*TERMINATED: 01/26/2012*

**Steven J. Rosenbaum**
Covington & Burling LLP (DC)
One City Center
850 Tenth Street, NW
Washington, DC 20001−4956
202−662−5568
Email: srosenbaum@cov.com
*TERMINATED: 04/06/2011*

V.

**Defendant**

| | | |
|---|---|---|
| **USA** | represented by | **Shahar Harel**<br>United States Department of Justice<br>1100 L Street, NW<br>Room 8520<br>Washington, DC 20530<br>202–305–3075<br>Email: shahar.harel@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Conrad Joseph DeWitte , Jr**<br>Commercial Litigation Branch, Civil<br>Division<br>U.S. Department of Justice<br>Washington, DC 20530<br>(202) 307–0459<br>Fax: (202) 307–0345<br>Email: conrad.dewitte@usdoj.gov<br>*TERMINATED: 11/08/2019* |
| | | **David Allen Foley , Jr.**<br>U.S. Department of Justice – Civil Divison<br>P.O. Box 888<br>Ben Franklin Station<br>Washington, DC 20044<br>(202) 307–0346<br>Fax: (202) 307–0345<br>Email: david.a.foley@usdoj.gov<br>*TERMINATED: 05/18/2018*<br>*ATTORNEY TO BE NOTICED* |
| | | **John Andrew Hudalla**<br>U. S. Department of Justice – Civil Div.<br>Post Office Box 480<br>Ben Franklin Station<br>Washington, DC 20044<br>(202) 307–0334<br>Fax: (202) 307–0345<br>Email: john.hudalla@usdoj.gov<br>*TERMINATED: 10/10/2014* |

| Date Filed | # | Docket Text |
|---|---|---|
| 02/28/2011 | 1 | COMPLAINT against USA (PS) (Filing fee $350, Receipt number 072004) (Five copies served on Department of Justice), filed by RETURN MAIL, INC. **Answer due by 4/29/2011.**(hw1) (Additional attachment(s) added on 3/4/2011: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (hw1). (Entered: 03/02/2011) |
| 02/28/2011 | 2 | NOTICE of Designation of Electronic Case. (hw1) (Entered: 03/02/2011) |
| 02/28/2011 | 3 | NOTICE of Assignment to Senior Judge James F. Merow (hw1) (Entered: 03/02/2011) |
| 03/08/2011 | 4 | Rule 7.1 Disclosure Statement, filed by RETURN MAIL, INC. (Rosenbaum, Steven) (Entered: 03/08/2011) |
| 03/28/2011 | 5 | MOTION to Substitute Attorney Richard Rainey in place of Steven Rosenbaum *as Counsel of Record*, filed by RETURN MAIL, INC.**Response due by 4/14/2011.**(Rosenbaum, Steven) (Entered: 03/28/2011) |
| 04/06/2011 | 6 | NOTICE of Appearance by John Andrew Hudalla for USA. (Hudalla, John) (Entered: 04/06/2011) |
| 04/06/2011 | | ORDER granting 5 Motion to Substitute Attorney. Added attorney Richard L. Rainey for RETURN MAIL, INC.  Signed by Senior Judge James F. Merow. (lae) Copy to |

| | | parties. (Entered: 04/06/2011) |
|---|---|---|
| 04/13/2011 | 7 | Unopposed MOTION for Extension of Time until 6/28/2011 to File Answer re 1 Complaint,, filed by USA.**Response due by 5/2/2011.**(Hudalla, John) (Entered: 04/13/2011) |
| 04/13/2011 | 8 | ORDER granting 7 Motion for Extension of Time to Answer. **Answer due by 6/28/2011.** Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 04/13/2011) |
| 06/28/2011 | 9 | Unopposed MOTION to Notify Interested Party Siemens Dematic PA, filed by USA.**Response due by 7/15/2011.** (Attachments: # 1 Exhibit A)(Hudalla, John) (Entered: 06/28/2011) |
| 06/28/2011 | 10 | ANSWER to 1 Complaint,, filed by USA.**JPSR due by 8/19/2011.**(Hudalla, John) (Entered: 06/28/2011) |
| 06/28/2011 | 11 | ORDER granting 9 Defendant's Unopposed Motion to Notify Third Party. **The clerk's office shall issue a notice in accordance with RCFC 14(b) 3–4.** Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 06/28/2011) |
| 06/28/2011 | | **NOTICE shall be issued by the clerk's office in accordance with RCFC 14(b) 3–4.** Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 06/28/2011) |
| 07/08/2011 | 12 | NOTICE to Third Party (Siemens Dematic PA) pursuant to Rule 14(b)(1) forwarded to defendant's attorney for service this day. (dls) (Entered: 07/08/2011) |
| 07/27/2011 | 13 | Return of Service Executed, filed by USA showing service by Certified Mail of Notice/Summons on Siemens Dematic PA, on 7/14/2011. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Hudalla, John) (Entered: 07/27/2011) |
| 08/11/2011 | 14 | MOTION for Extension of Time until September 23, 2011 to Extend deadline to file the joint preliminary status report, filed by RETURN MAIL, INC, USA.**Response due by 8/29/2011.**(Rainey, Richard) (Entered: 08/11/2011) |
| 08/11/2011 | 15 | ORDER granting 14 Motion for Extension of Time. **JPSR due by 9/23/2011.** Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 08/11/2011) |
| 08/23/2011 | 16 | Joint MOTION for Extension of Time until September 15, 2011 to Extend date for Siemens Dematic PA to Appear, filed by RETURN MAIL, INC, USA.**Response due by 9/9/2011.**(Rainey, Richard) (Entered: 08/23/2011) |
| 08/24/2011 | 17 | ORDER granting 16 Motion for Extension of Time for Siemens Dematic PA ("Siemens") to Appear. Siemens to respond in accordance with RCFC 14 on or before 9/15/11. Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 08/24/2011) |
| 09/06/2011 | 18 | Unopposed MOTION to Amend Pleadings – Rule 15 10 Answer, filed by USA.**Response due by 9/23/2011.** (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Hudalla, John) (Entered: 09/06/2011) |
| 09/06/2011 | 19 | ORDER granting 18 Unopposed Motion to Amend Answer – Rule 15(a)(2). Signed by Senior Judge James F. Merow. (vns) Copy to parties. (Entered: 09/06/2011) |
| 09/06/2011 | 20 | AMENDED ANSWER to 1 Complaint,, filed by USA. (Hudalla, John) (Entered: 09/06/2011) |
| 09/15/2011 | 22 | Letter filed, from Mark Supko, counsel for Siemens Industry, Inc. (ac7) (Entered: 09/16/2011) |
| 09/16/2011 | 21 | ORDER re response by Siemens Industry, Inc. to Notice served on July 14, 2011. Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 09/16/2011) |
| 09/23/2011 | 23 | JOINT PRELIMINARY STATUS REPORT. (Attachments: # 1 Supplement)(Rainey, Richard) (Entered: 09/23/2011) |
| 10/06/2011 | 24 | SCHEDULING ORDER (special procedures).  Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 10/06/2011) |

| 12/22/2011 | 25 | Joint MOTION for Protective Order, filed by All Parties.**Response due by 1/9/2012.** (Attachments: # 1 Exhibit Stipulated Protective Order)(Rainey, Richard) (Entered: 12/22/2011) |
| --- | --- | --- |
| 12/22/2011 | 26 | ORDER granting 25 Motion for Protective Order.  Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 12/22/2011) |
| 12/22/2011 | 27 | PROTECTIVE ORDER.  Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 12/22/2011) |
| 01/26/2012 | 28 | Consented MOTION to Substitute Attorney George F. Pappas in place of Richard L. Rainey, filed by All Plaintiffs.(Rainey, Richard) (Entered: 01/26/2012) |
| 01/26/2012 |  | ORDER NOTICE granting 28 Motion to Substitute Attorney (Consented) pursuant to Rule 83.1(c)(4). Added attorney George Frank Pappas for RETURN MAIL, INC. Attorney Richard L. Rainey terminated. Entered by the Clerk.  Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 01/26/2012) |
| 04/25/2012 | 29 | MOTION to Seal Document *in Forthcoming Motion to Disqualify Plaintiff's Proposed Expert Witness*, filed by USA.**Response due by 5/14/2012.**(Hudalla, John) (Entered: 04/25/2012) |
| 04/30/2012 | 30 | **SEALED** MOTION To Disqualify Plaintiff's Proposed Expert Witness, Angelo Wider, MOTION for Protective Order *Preventing His Access to Protected Information*, filed by USA.**Response due by 5/17/2012.** (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(Hudalla, John) (Entered: 04/30/2012) |
| 05/11/2012 | 31 | MOTION to Compel *Plaintiff to Disclose its Proposed Claim Constructions for 14 Claim Terms* (Response due by 5/29/2012.), MOTION to Stay Claim Construction Proceedings *Pending the Disposition of the Motion to Compel*, filed by USA. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Hudalla, John) (Entered: 05/11/2012) |
| 05/14/2012 | 32 | RESPONSE to 29 MOTION to Seal Document *in Forthcoming Motion to Disqualify Plaintiff's Proposed Expert Witness*, filed by RETURN MAIL, INC.**Reply due by 5/24/2012.** (Pappas, George) (Entered: 05/14/2012) |
| 05/15/2012 | 33 | ORDER granting 29 Motion to Seal Document 30 MOTION To Disqualify Plaintiff's Proposed Expert Witness, Angelo Wider MOTION for Protective Order *Preventing His Access to Protected Information.* **ECF No. 30 shall remain under seal pending further order of the court.** Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 05/15/2012) |
| 05/17/2012 | 34 | **SEALED**RESPONSE to 30 MOTION To Disqualify Plaintiff's Proposed Expert Witness, Angelo Wider MOTION for Protective Order *Preventing His Access to Protected Information*, filed by RETURN MAIL, INC.**Reply due by 5/29/2012.** (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit Exhibit F, # 7 Exhibit Exhibit G)(Pappas, George) (Entered: 05/17/2012) |
| 05/29/2012 | 35 | **SEALED**REPLY to Response to Motion re 30 MOTION To Disqualify Plaintiff's Proposed Expert Witness, Angelo Wider MOTION for Protective Order *Preventing His Access to Protected Information*, filed by USA. (Attachments: # 1 Exhibit J)(Hudalla, John) (Entered: 05/29/2012) |
| 05/29/2012 | 36 | RESPONSE to 31 MOTION to Compel *Plaintiff to Disclose its Proposed Claim Constructions for 14 Claim Terms* MOTION to Stay Claim Construction Proceedings *Pending the Disposition of the Motion to Compel*, filed by RETURN MAIL, INC.**Reply due by 6/8/2012.** (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Pappas, George) (Entered: 05/29/2012) |
| 06/08/2012 | 37 | REPLY to Response to Motion re 31 MOTION to Compel *Plaintiff to Disclose its Proposed Claim Constructions for 14 Claim Terms* MOTION to Stay Claim Construction Proceedings *Pending the Disposition of the Motion to Compel*, filed by USA. (Attachments: # 1 Exhibit D)(Hudalla, John) (Entered: 06/08/2012) |

| 06/14/2012 | | SCHEDULING ORDER: **Telephone Conference Call set for 6/14/2012 at 03:00 PM before Senior Judge James F. Merow.** Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 06/14/2012) |
|---|---|---|
| 06/14/2012 | | Minute Entry for proceeding held in Washington, DC on 6/14/2012, before Senior Judge James F. Merow: Telephone Conference Call. [Total number of days of proceeding: 1]. Official Record of proceeding taken via electronic digital recording (EDR). (Click <u>HERE</u> for link to Court of Federal Claims web site forms page for information on ordering: certified transcript from reporter or certified transcript of proceeding from official digital recording.)(lae) (Entered: 06/14/2012) |
| 06/14/2012 | <u>38</u> | SCHEDULING ORDER re further special procedures. Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 06/14/2012) |
| 08/13/2012 | <u>39</u> | JOINT STATUS REPORT *(Joint Claim Construction Statement)*, filed by All Parties. (Attachments: # <u>1</u> Appendix Appendix A: Agreed Constructions, # <u>2</u> Appendix Appendix B: Terms in Dispute)(Pappas, George) (Entered: 08/13/2012) |
| 08/15/2012 | | ORDER Setting Oral Argument on Defendant's Motion <u>30</u> MOTION To Disqualify Plaintiff's Proposed Expert Witness, Angelo Wider: **Oral Argument set for 8/29/2012 at 02:30 PM (Telephonic) before Senior Judge James F. Merow. Chambers will call parties.** Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 08/15/2012) |
| 08/27/2012 | | ORDER: Oral Argument scheduled for 8/29/12, will no longer be telephonic, but will now be held at the National Courts Building. The courtroom assignment will be posted in the lobby. (lae) Copy to parties. (Entered: 08/27/2012) |
| 08/29/2012 | | Minute Entry for proceeding held in Washington, DC on 8/29/2012, before Senior Judge James F. Merow: Oral Argument. [Total number of days of proceeding: 1]. Official Record of proceeding taken via electronic digital recording (EDR). (Click <u>HERE</u> for link to Court of Federal Claims web site forms page for information on ordering: certified transcript from reporter or certified transcript of proceeding from official digital recording.)(lae) (Entered: 08/29/2012) |
| 08/30/2012 | <u>40</u> | ORDER Setting Claim Construction Hearing. **Hearing set for 12/20/2012 at 10:00 AM in the National Courts Building before Senior Judge James F. Merow.** Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 08/30/2012) |
| 10/01/2012 | <u>41</u> | MEMORANDUM, filed by RETURN MAIL, INC. (Attachments: # <u>1</u> Exhibit U.S. Patent No. 6,826,548 C1, # <u>2</u> Exhibit Excerpt from Reexamination History, November 9, 2009, Amendments and Reconsideration, # <u>3</u> Exhibit Excerpt from June 8, 2010 Amendments and Reconsideration, # <u>4</u> Exhibit Excerpt from USPS Glossary of Postal Terms, Pub. 32, May 1997, # <u>5</u> Exhibit Excerpt from Return Mail Inc., Business Plan Presentation dated July 13, 2000)(Pappas, George) (Entered: 10/01/2012) |
| 10/22/2012 | <u>42</u> | **SEALED** ORDER denying <u>30</u> Defendant's Motion to Disqualify Plaintiff's Proposed Expert Witness; and denying <u>30</u> Motion for Protective Order Preventing Proposed Expert's Access to Protected Information. **On or before 10/31/12, by motion or stipulation, the parties shall file under seal a status report(s) with their positions whether this Order should remain under seal and, if so, submit any redactions proposed to permit public access to the Order.** Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 10/22/2012) |
| 10/31/2012 | <u>43</u> | JOINT STATUS REPORT *Regarding Redactions*, filed by All Parties. (Hudalla, John) (Entered: 10/31/2012) |
| 11/05/2012 | <u>44</u> | MEMORANDUM re: <u>41</u> Memorandum,, filed by USA. (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2, # <u>3</u> Exhibit 3, # <u>4</u> Exhibit 4, # <u>5</u> Exhibit 5, # <u>6</u> Exhibit 6, # <u>7</u> Exhibit 7, # <u>8</u> Exhibit 8, # <u>9</u> Exhibit 9, # <u>10</u> Exhibit 10, # <u>11</u> Exhibit 11, # <u>12</u> Exhibit 12, # <u>13</u> Exhibit 13)(Hudalla, John) (Entered: 11/05/2012) |
| 11/16/2012 | <u>45</u> | REISSUE OF ORDER filed under seal on October 22, 2012.  Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 11/16/2012) |
| 11/19/2012 | <u>46</u> | MEMORANDUM, filed by RETURN MAIL, INC. (Attachments: # <u>1</u> Exhibit Exhibit F, # <u>2</u> Exhibit Exhibit G)(Pappas, George) (Entered: 11/19/2012) |

| 12/20/2012 | | Minute Entry for proceeding held in Washington, DC on 12/20/2012, before Senior Judge James F. Merow: Claims Construction Hearing. [Total number of days of proceeding: 1]. Official Record of proceeding taken via electronic digital recording (EDR). (Click HERE for link to Court of Federal Claims web site forms page for information on ordering: certified transcript from reporter or certified transcript of proceeding from official digital recording.)(lae) (Entered: 12/20/2012) |
|---|---|---|
| 12/20/2012 | | ORDER finding as moot 31 Motion to Compel; finding as moot 31 Motion to Stay (as agreed by counsel following claims construction hearing).  Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 12/20/2012) |
| 05/16/2013 | 47 | Notice Of Filing Of Certified Transcript for proceedings held on June 14, 2012 in Washington, DC. (dw1) (Entered: 05/16/2013) |
| 05/16/2013 | 48 | TRANSCRIPT of Proceedings held on June 14, 2012 before Senior Judge James F. Merow. Total No. of Pages: 1–26. Procedures Re: Electronic Transcripts and Redactions. For copy, contact Heritage Court Reporting, (202) 628–4888. Forms to Request Transcripts. Notice of Intent to Redact due 5/23/2013. Redacted Transcript Deadline set for 6/17/2013. Release of Transcript Restriction for 8/15/2013. (dw1) (Entered: 05/16/2013) |
| 05/16/2013 | 49 | Notice Of Filing Of Certified Transcript for proceedings held on August 29, 2012 in Washington, DC. (dw1) (Entered: 05/16/2013) |
| 05/16/2013 | 50 | TRANSCRIPT of Proceedings held on August 29, 2012 before Senior Judge James F. Merow. Total No. of Pages: 1–35. Procedures Re: Electronic Transcripts and Redactions. For copy, contact Heritage Court Reporting, (202) 628–4888. Forms to Request Transcripts. Notice of Intent to Redact due 5/23/2013. Redacted Transcript Deadline set for 6/17/2013. Release of Transcript Restriction set for 8/15/2013. (dw1) (Entered: 05/16/2013) |
| 05/16/2013 | 51 | Notice Of Filing Of Certified Transcript for proceedings held on December 20, 2012 in Washington, DC. (dw1) (Entered: 05/16/2013) |
| 05/16/2013 | 52 | TRANSCRIPT of Proceedings held on December 20, 2012 before Senior Judge James F. Merow. Total No. of Pages: 1–173. Procedures Re: Electronic Transcripts and Redactions. For copy, contact Heritage Court Reporting, (202) 628–4888. Forms to Request Transcripts. Notice of Intent to Redact due 5/23/2012. Redacted Transcript Deadline set for 6/17/2013. Release of Transcript Restriction set for 8/15/2013. (dw1) (Entered: 05/16/2013) |
| 08/23/2013 | 53 | ORDER re request for a status conference. (lae) Copy to parties. (Entered: 08/23/2013) |
| 10/04/2013 | 54 | ORDER (Markman) re claims construction. Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 10/04/2013) |
| 12/11/2013 | 55 | STATUS REPORT ORDER:  **Joint Status Report due by 1/13/2014.** Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 12/11/2013) |
| 01/13/2014 | 56 | JOINT STATUS REPORT *regarding this Court's December 11, 2013 Order (Dkt. No. 55)*, filed by RETURN MAIL, INC. (Pappas, George) (Entered: 01/13/2014) |
| 01/31/2014 | 57 | JOINT STATUS REPORT *regarding scheduling*, filed by RETURN MAIL, INC. (Pappas, George) (Entered: 01/31/2014) |
| 02/11/2014 | 58 | SCHEDULING ORDER: **September 26, 2014 – Close of fact discovery; November 7, 2014 – disclosure of expert reports; December 5, 2014 – Disclosure of any expert reports (rebuttal); January 16, 2015 – Depositions of expert witnesses to be completed; January 30, 2015 – Post discovery conference; February 13, 2015 – Meeting of counsel; March 13, 2015 – Pretrial submissions; April 17, 2015 – Responsive pretrial submissions; May 1, 2015 – Further responsive submissions and stipulations, if any; May 22, 2015 – Pretrial conference; June 8, 2015 – Trial begins. If either party has a good–faith objection to this schedule, it must inform the court no later than 14 days from the date of this order.** Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 02/11/2014) |
| 02/25/2014 | 59 | NOTICE, filed by RETURN MAIL, INC re 58 Scheduling Order,,, (Pappas, George) (Entered: 02/25/2014) |

| | | |
|---|---|---|
| 04/15/2014 | 60 | MOTION to Stay This Action *Pending Post−Grant Review of the Patent−in−Suit Before the Patent Trial and Appeal Board*, filed by USA.**Response due by 5/2/2014.** (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Hudalla, John) (Entered: 04/15/2014) |
| 04/21/2014 | 61 | Consented MOTION to Substitute Attorney Lee L. Kaplan in place of George F. Pappas , filed by RETURN MAIL, INC. (Attachments: # 1 Affidavit of Lee L. Kaplan, # 2 Text of Proposed Order)(Kaplan, Lee) (Entered: 04/21/2014) |
| 04/22/2014 | | ORDER NOTICE granting re: 61 Plaintiff's Motion to Substitute Attorney (Consented) pursuant to Rule 83.1(c)(4). Added attorney Lee Landa Kaplan for RETURN MAIL, INC. Attorney George Frank Pappas terminated. Entered by the Clerk.  Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 04/22/2014) |
| 05/02/2014 | 62 | RESPONSE to 60 MOTION to Stay This Action *Pending Post−Grant Review of the Patent−in−Suit Before the Patent Trial and Appeal Board* , filed by RETURN MAIL, INC.**Reply due by 5/12/2014.** (Attachments: # 1 Exhibit 1 Declaration Ritchie, # 2 Exhibit 2 Allowable Subject Matter, # 3 Exhibit 3 Info Disclosure Stmt, # 4 Exhibit 4 English Trans Korean Patent, # 5 Exhibit 5 Claim Chart)(Kaplan, Lee) (Entered: 05/02/2014) |
| 05/12/2014 | 63 | REPLY to Response to Motion re 60 MOTION to Stay This Action *Pending Post−Grant Review of the Patent−in−Suit Before the Patent Trial and Appeal Board* , filed by USA. (Attachments: # 1 Exhibit C, # 2 Exhibit D)(Hudalla, John) (Entered: 05/12/2014) |
| 05/14/2014 | 64 | Unopposed MOTION for Leave to File Surreply in Opposition to Defendant's Motion to Stay , filed by RETURN MAIL, INC.**Response due by 6/2/2014.** (Attachments: # 1 Exhibit A)(Kaplan, Lee) (Entered: 05/14/2014) |
| 05/15/2014 | 65 | Amended MOTION for Leave to File Surreply in Opposition to Defendant's Motion to Stay , filed by RETURN MAIL, INC.**Response due by 6/2/2014.** (Attachments: # 1 Exhibit A)(Kaplan, Lee) (Entered: 05/15/2014) |
| 05/15/2014 | 66 | ORDER granting 65 Plaintiff's Unopposed Motion for Leave to File Plaintiff's Surreply in Opposition to Defendant's Motion to Stay. **Plaintiff shall promptly file the surreply. Defendant's response to the surreply is due on or before May 23, 2014.** Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 05/15/2014) |
| 05/15/2014 | 67 | SUR−REPLY re 60 MOTION to Stay This Action *Pending Post−Grant Review of the Patent−in−Suit Before the Patent Trial and Appeal Board* , filed by RETURN MAIL, INC. (Kaplan, Lee) (Entered: 05/15/2014) |
| 05/23/2014 | 68 | RESPONSE to 67 Sur−Reply *re 60 MOTION to Stay This Action Pending Post−Grant Review of the Patent−in−Suit Before the Patent Trial and Appeal Board*, filed by USA. (Attachments: # 1 Exhibit E)(Hudalla, John) (Entered: 05/23/2014) |
| 05/23/2014 | 69 | NOTICE, filed by All Plaintiffs re 67 Sur−Reply, 60 MOTION to Stay This Action *Pending Post−Grant Review of the Patent−in−Suit Before the Patent Trial and Appeal Board*, 62 Response to Motion, *Plaintiff Request for Oral Argument on Motion to Stay* (Doyle, Tyler) (Entered: 05/23/2014) |
| 06/12/2014 | 70 | ORDER re oral argument scheduling.  Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 06/12/2014) |
| 06/20/2014 | 71 | SCHEDULING ORDER:  **Oral Argument set for 7/2/2014 at 02:00 PM in National Courts Building before Senior Judge James F. Merow.** Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 06/20/2014) |
| 07/02/2014 | | Minute Entry – Was the proceeding sealed to the public –– no. Proceeding held in Washington, DC on 7/2/2014, before Senior Judge James F. Merow: Oral Argument. [Total number of days of proceeding: 1]. Official Record of proceeding taken via electronic digital recording (EDR). To order a certified transcript or an audio copy of the proceeding (click HERE)(lae) (Entered: 07/02/2014) |
| 07/11/2014 | 72 | NOTICE of Additional Authority *relating to Defendant's Motion to Stay* (Attachments: # 1 Exhibit A)(Kaplan, Lee) (Entered: 07/11/2014) |

| 07/11/2014 | 73 | NOTICE of Additional Authority *Relating to Defendant's Motion to Stay – Amended)* (Attachments: # 1 Exhibit A)(Kaplan, Lee) (Entered: 07/11/2014) |
| 07/14/2014 | 74 | Joint MOTION for Extension of Time,until October 27, 2014, to Complete Discovery , filed by RETURN MAIL, INC.**Response due by 7/31/2014.**(Doyle, Tyler) (Entered: 07/14/2014) |
| 07/14/2014 | | ORDER granting 74 Joint Motion to Extend Fact Discovery Deadline. **Fact Discovery closing: 10/27/2014.** Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 07/14/2014) |
| 07/18/2014 | | Notice Of Filing Of Certified Transcript for proceedings held on July 2, 2014. (hw1) (Entered: 07/18/2014) |
| 07/18/2014 | 75 | TRANSCRIPT of Proceedings held on 7/2/2014 before Senior Judge James F. Merow. Total No. of Pages: 47. Procedures Re: Electronic Transcripts and Redactions. To purchase a copy, contact the clerk's office at (202) 357–6414. Notice of Intent to Redact due 7/25/2014. Redacted Transcript Deadline set for 8/18/2014. Release of Transcript Restriction set for 10/17/2014. (hw1) (Entered: 07/18/2014) |
| 07/18/2014 | 76 | UNREPORTED ORDER suspending ruling on 60 Defendant's Motion to Stay Proceedings Pending CBM Review by the PTAB. Within 20 days following PTAB's decision, were it to initiate a CBM review with respect to asserted claims 39– 44 of the '548 Patent, absent agreement by the parties as to the disposition of the pending motion for a stay, the parties shall file supplemental briefs, not to exceed 10 pages, relative to the impact, if any, of the PTAB's decision on the issue of a stay. Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 07/18/2014) |
| 07/21/2014 | 77 | Notice Of Filing Of Certified Transcript for proceedings held on July 2, 2014 in Washington, DC. (dw1) (Entered: 07/21/2014) |
| 07/21/2014 | 78 | TRANSCRIPT of Proceedings held on July 2, 2014 before Senior Judge James F. Merow. Total No. of Pages: 1–47. Procedures Re: Electronic Transcripts and Redactions. To purchase a copy, contact the clerk's office at (202) 357–6414. Notice of Intent to Redact due 7/28/2014. Redacted Transcript Deadline set for 8/21/2014. Release of Transcript Restriction set for 10/20/2014. (dw1) (Entered: 07/21/2014) |
| 09/24/2014 | 79 | Joint MOTION to Amend Schedule re: 58 Scheduling Order,,,, filed by USA.**Response due by 10/14/2014.**(Hudalla, John) (Entered: 09/24/2014) |
| 09/24/2014 | 80 | ORDER granting 79 Motion to Amend Schedule**Fact Discovery due by 1/26/2015. Disclosure of expert reports due by 2/27/2015. Disclosure of any expert reports (rebuttal) due by 3/30/2015. Depositions of expert witnesses to be completed by 4/29/2015. Post discovery conference to be held on 5/8/2015. Meeting of counsel to be held on 5/22/2015. Pretrial submissions due by 6/11/2015. Responsive pretrial submissions due by 7/23/2015. Further responsive submissions and stipulations, if any due by 8/6/2015. Pretrial conference to be held on 8/27/2015. Trial shall begin on 9/15/2015.** Signed by Senior Judge James F. Merow. (TQ) Copy to parties. (Entered: 09/24/2014) |
| 10/10/2014 | 81 | NOTICE of Appearance by Conrad Joseph DeWitte, Jr for USA . (DeWitte, Conrad) (Entered: 10/10/2014) |
| 10/21/2014 | 82 | NOTICE, filed by USA re 76 Order on Motion to Stay, Unreported Order,,,, *and Joint Motion for Stay* (Attachments: # 1 Exhibit A)(DeWitte, Conrad) (Entered: 10/21/2014) |
| 10/21/2014 | 83 | ORDER GRANTING 82 MOTION TO STAY CASE pending the outcome of PTAB proceedings.  **The parties are ordered to file a status report within 14 days of a final PTAB decision or on 10/16/2015, whichever comes first.** Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 10/21/2014) |
| 10/21/2014 | | See ORDER 83 denying as moot 60 Motion to Stay.  Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 10/21/2014) |
| 10/15/2015 | 84 | NOTICE, filed by USA re 83 Order Staying Case, *Joint notice regarding PTAB decision* (Attachments: # 1 Exhibit PTAB Decision)(Foley, David) (Entered: 10/15/2015) |

| 10/16/2015 | 85 | STATUS REPORT ORDER: **Status Report due by 11/2/2015.** Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 10/16/2015) |
| 10/21/2015 | 86 | NOTICE of Appearance by David Allen Foley, Jr for USA . (Foley, David) (Entered: 10/21/2015) |
| 11/02/2015 | 87 | STATUS REPORT *of All Parties Regarding Post−Grant Review of the Patent−In−Suit*, filed by RETURN MAIL, INC. (Kaplan, Lee) (Entered: 11/02/2015) |
| 11/03/2015 | 88 | ORDER: (1)The stay of proceeding in this matter shall be continued until completion of the contemplated appeal process; (2)Should a timely appeal of the PTAB final decision not be initiated, defendant shall promptly file its contemplated motion to lift the stay and dismiss this case; and (3)Absent proceedings, pursuant to (2), upon completion of the appeal process the parties shall file promptly a status report notifying the court of the completion and indicating each party's position as to further proceedings required.  Signed by Senior Judge James F. Merow. (lae) Copy to parties. (Entered: 11/03/2015) |
| 01/11/2017 | 89 | ORDER DIRECTING THE CLERK TO RANDOMLY REASSIGN THE CASE Signed by Chief Judge Patricia E. Campbell−Smith. (lld) Copy to parties. (Entered: 01/12/2017) |
| 01/11/2017 | 90 | NOTICE of Reassignment. Case reassigned to Judge Charles F. Lettow for all further proceedings. Senior Judge James F. Merow no longer assigned to the case. (lld) (Entered: 01/12/2017) |
| 09/26/2017 | 91 | STATUS REPORT ORDER: **Joint Status Report due by 10/25/2017.** Signed by Judge Charles F. Lettow. (kw) (Entered: 09/26/2017) |
| 10/25/2017 | 92 | JOINT STATUS REPORT , filed by USA. (Foley, David) (Entered: 10/25/2017) |
| 10/26/2017 | 93 | STATUS REPORT ORDER: **Further Joint Status Report due by 12/21/2017.** Signed by Judge Charles F. Lettow. (si) Copy to parties. (Entered: 10/26/2017) |
| 12/21/2017 | 94 | JOINT STATUS REPORT , filed by USA. (Foley, David) (Entered: 12/21/2017) |
| 12/22/2017 | 95 | STATUS REPORT ORDER: **Further Joint Status Report due by 3/19/2018.** Signed by Judge Charles F. Lettow. (si) Service on parties made. (Entered: 12/22/2017) |
| 03/16/2018 | 96 | JOINT STATUS REPORT , filed by USA. (Foley, David) (Entered: 03/16/2018) |
| 03/19/2018 | 97 | STATUS REPORT ORDER: **Further Joint Status Report due by 5/18/2018.** Signed by Judge Charles F. Lettow. (si) Service on parties made. (Entered: 03/19/2018) |
| 05/18/2018 | 98 | NOTICE of Appearance by Conrad Joseph DeWitte, Jr for USA . (DeWitte, Conrad) (Entered: 05/18/2018) |
| 05/18/2018 | 99 | JOINT STATUS REPORT , filed by USA. (DeWitte, Conrad) (Entered: 05/18/2018) |
| 05/18/2018 | 100 | ORDER: Return Mail has filed a petition for certiorari. As suggested in the parties report, the court requests that the parties provide a further joint status report within two weeks after the Supreme Court acts on that petition. Signed by Judge Charles F. Lettow. (si) Service on parties made. (Entered: 05/18/2018) |
| 11/16/2018 | 101 | STATUS CONFERENCE ORDER: **Status Conference set for 11/20/2018 at 02:30 PM in Chambers (Telephonic) before Senior Judge Charles F. Lettow.** Signed by Senior Judge Charles F. Lettow. (pp) (Entered: 11/16/2018) |
| 11/20/2018 | | Minute Entry − Was the proceeding sealed to the public? No. Proceeding held in Washington, D.C. (telephonic) on 11/20/2018 before Senior Judge Charles F. Lettow: Status Conference. [Total number of days of proceeding: 1]. Official Record of proceeding taken via electronic digital recording (EDR). To order a certified transcript or an audio recording of the proceeding, click HERE. (pp) (Entered: 11/20/2018) |
| 11/20/2018 | 102 | ORDER CONTINUING STAY until the Supreme Court renders its decision on the merits. Joint Status Report due within two weeks of the Supreme Court issuing its decision.  Signed by Senior Judge Charles F. Lettow. (pp) (Entered: 11/20/2018) |
| 06/21/2019 | 103 | JOINT STATUS REPORT , filed by USA. (DeWitte, Conrad) (Entered: 06/21/2019) |

| | | |
|---|---|---|
| 06/21/2019 | <u>104</u> | ORDER CONTINUING STAY. The parties shall submit a joint status report within two weeks of the Federal Circuit issuing its decision. Signed by Senior Judge Charles F. Lettow. (pp) (Entered: 06/21/2019) |
| 06/25/2019 | | **IMPORTANT NOTICE:** On *Monday, August 26, 2019*, the United States Court of Federal Claims will upgrade its current CM/ECF system to the Next Generation of CM/ECF (NextGen). Complete information regarding the NextGen implementation can be found on the court's website at http://www.uscfc.uscourts.gov. Currently, many attorneys within a firm may share a single PACER account, but once NextGen is imple mented e–filing attorneys will no longer be able to use shared PACER accounts. To access the upgraded system, each e–filing attorney must have an individual upgraded PACER account. Preparing for NextGen CM/ECF is a two–step process. Step one is to upgrade your PACER account, and step two is to link your upgraded PACER account to your current CM/ECF filing account. This notice only addresses the first step because the second step can't be completed until on or after August 26, 2019. The first step is to check and see if your PACER account is an "Upgraded" PACER account. Many PACER accounts have already been upgraded. If either of the following statements is true, you have an upgraded PACER account and no action is required until on or after August 26, 2019: 1) you currently e–file in another NextGen court or 2) your PACER account was created after August 10, 2014. If neither of these statements is true, you must upgrade your PACER account. Additional notices will be sent at a later date on how to handle the second step in this process. If you still have questions please contact the PACER Service Center at 800–676–6856 or the Clerk's Office CM/ECF Help Desk at (202)357–6402.. (dh) (ADI) (Entered: 06/25/2019) |
| 07/19/2019 | | **IMPORTANT NOTICE:** On *August 26, 2019*, the United States Court of Federal Claims will upgrade its current CM/ECF system to the Next Generation of CM/ECF (NextGen). Complete information regarding the NextGen implementation can be found on the court's website at http://www.uscfc.uscourts.gov. Preparing for NextGen is a two–step process. Step one is to upgrade your PACER account. If you have not yet re gistered for an individual PACER account or upgraded your existing PACER account, please do so immediately. Step two is to link your upgraded PACER account to your current CM/ECF filing account. Step two cannot be completed until on or after *August 26, 2019*. To link your upgraded PACER account *on or after August 26, 2019*, you must know your current CM/ECF login and password. Do not rely on your login and password to be saved in your web browser, because that method will not work with the NextGen upgrade. If you do not know your login and/or password or have any additional questions, please call the your Clerks Office CM/ECF Help Desk at (202) 357–6402.. (dh) (ADI) (Entered: 07/19/2019) |
| 08/12/2019 | <u>105</u> | JOINT STATUS REPORT , filed by USA. (DeWitte, Conrad) (Entered: 08/12/2019) |
| 08/12/2019 | <u>106</u> | ORDER CONTINUING STAY. Joint status report due within two weeks of decision by the Patent Trial and Appeal Board.  Signed by Senior Judge Charles F. Lettow. (pp) (Entered: 08/12/2019) |
| 08/15/2019 | | *IMPORTANT NOTICE:* On *August 26, 2019*, the United States Court of Federal Claims will upgrade its current CM/ECF system to the Next Generation of CM/ECF (NextGen). Complete information regarding the NextGen implementation can be found on the court's website at http://uscfc.uscourts.gov. *Please note that the court's CM/ECF system will be unavailable from 12:00 p.m. ( EDT) on Friday, August 23, 2019, until 6:00 a.m. (EDT) on Monday, August 26, 2019.* Although the Clerk's Office will be open on August 23, 2019, it will be deemed inaccessible under Rule 6 of the Rules of the United States Court of Federal Claims for purposes of calculating deadlines. Preparing for NextGen is a two–step process. Step one is to upgrade your PACER account. You should have your individual upgraded PACER account at this time. Step two is to link your upgraded PACER account to your current CM/ECF filing account on or after *August 26, 2019*. Instructions for linking your account can be found on the court's website at  http://uscfc.uscourts.gov. To link your accounts, you *MUST* know your CM/ECF login and password–––do not rely on your browser to remember your login credentials. If you are unsure of your CM/ECF login and/or password, contact the Clerk's Office CM/ECF Help Desk *immediately* at (202) 357–6402. You may also call the Help Desk with any other questions.. (dh) (ADI) (Entered: 08/15/2019) |

| 09/04/2019 | 107 | JOINT STATUS REPORT , filed by USA. (Attachments: # 1 Exhibit A)(DeWitte, Conrad) (Entered: 09/04/2019) |
| 09/05/2019 | 108 | ORDER LIFTING STAY. **The stay previously entered in this case is lifted. The parties shall submit a joint status report on or before October 21, 2019.** Signed by Senior Judge Charles F. Lettow. (sg) (Entered: 09/05/2019) |
| 10/18/2019 | 109 | JOINT STATUS REPORT , filed by USA. (DeWitte, Conrad) (Entered: 10/18/2019) |
| 10/18/2019 | 110 | STATUS REPORT ORDER: **Further Joint Status Report due by 11/4/2019.** Signed by Senior Judge Charles F. Lettow. (sg) (Entered: 10/18/2019) |
| 11/04/2019 | 111 | JOINT STATUS REPORT , filed by USA. (DeWitte, Conrad) (Entered: 11/04/2019) |
| 11/06/2019 | 112 | **SEALED** STATUS CONFERENCE ORDER: Scheduling Conference set for 11/12/2019 at 02:30 PM in Chambers (Telephonic) before Senior Judge Charles F. Lettow. Directions for the call are contained within the order. Signed by Senior Judge Charles F. Lettow. (sg) (Main Document 112 replaced on 11/6/2019) (tb). (Entered: 11/06/2019) |
| 11/08/2019 | 113 | NOTICE of Appearance by Shahar Harel for USA . (Harel, Shahar) (Entered: 11/08/2019) |
| 11/12/2019 | 114 | SCHEDULING ORDER: **Discovery Reopens on 11/12/2019. Amended Pleadings due by 11/20/2019. Discovery Closes on 3/11/2020. Dispositive Motion(s) due by 3/26/2020.** Signed by Senior Judge Charles F. Lettow. (sg) (Entered: 11/12/2019) |
| 11/12/2019 | | Minute Entry – Was the proceeding sealed to the public? N. Proceeding held in Washington, D.C. on 11/12/2019 before Senior Judge Charles F. Lettow: Status Conference. [Total number of days of proceeding: 1]. Official record of proceeding taken via electronic digital recording (EDR). To order a certified transcript or an audio recording of the proceeding, click HERE.(sg) (Entered: 11/12/2019) |
| 11/15/2019 | 115 | Notice of Filing of Certified Transcript for proceedings held on November 12, 2019 in Washington, D.C. (ac7) (Entered: 11/15/2019) |
| 11/15/2019 | 116 | TRANSCRIPT of proceedings held on November 15, 2019 before Judge Charles F. Lettow. Total No. of Pages: 1–16. Procedures Re: Electronic Transcripts and Redactions. To order a copy of the transcript, click HERE. Notice of Intent to Redact due 11/22/2019. Redacted Transcript Deadline set for 12/13/2019. Release of Transcript Restriction set for 2/10/2020. (ac7) (Entered: 11/15/2019) |
| 11/20/2019 | 117 | MOTION to Amend Pleadings – Rule 15 1 Complaint, , filed by RETURN MAIL, INC..**Response due by 12/4/2019.** (Attachments: # 1 Exhibit A)(Kaplan, Lee) (Entered: 11/20/2019) |
| 12/02/2019 | 118 | MOTION for Reconsideration re 114 Scheduling Order , filed by USA.(Harel, Shahar) (Entered: 12/02/2019) |
| 12/03/2019 | 119 | ORDER Setting Oral Argument/Hearing on Motion 118 MOTION for Reconsideration re 114 Scheduling Order: **Motion Hearing set for 12/6/2019 at 10:00 AM in Chambers (Telephonic) before Senior Judge Charles F. Lettow. The court will initiate the call.** Signed by Senior Judge Charles F. Lettow. (sg) (Entered: 12/03/2019) |
| 12/03/2019 | 120 | RESPONSE to 118 MOTION for Reconsideration re 114 Scheduling Order , filed by RETURN MAIL, INC..**Reply due by 12/10/2019.** (Kaplan, Lee) (Entered: 12/03/2019) |
| 12/04/2019 | 121 | RESPONSE to 117 MOTION to Amend Pleadings – Rule 15 1 Complaint, , filed by USA.**Reply due by 12/11/2019.** (Attachments: # 1 Exhibit Exhibit A)(Harel, Shahar) (Entered: 12/04/2019) |
| 12/06/2019 | | Minute Entry – Was the proceeding sealed to the public? N. Proceeding held in Washington, D.C. on 12/6/2019 before Senior Judge Charles F. Lettow: Hearing. [Total number of days of proceeding: 1]. Official record of proceeding taken via electronic digital recording (EDR). To order a certified transcript or an audio recording of the proceeding, click HERE. (sg) (Entered: 12/06/2019) |

| 12/10/2019 | 122 | REPLY to Response to Motion re 118 MOTION for Reconsideration re 114 Scheduling Order , filed by USA. (Harel, Shahar) (Entered: 12/10/2019) |
|---|---|---|
| 12/11/2019 | 123 | REPLY to Response to Motion re 117 MOTION to Amend Pleadings – Rule 15 1 Complaint, , filed by RETURN MAIL, INC.. (Kaplan, Lee) (Entered: 12/11/2019) |
| 12/18/2019 | 124 | Notice of Filing of Certified Transcript for proceedings held on December 6, 2019 in Washington, D.C. (ew) (Entered: 12/18/2019) |
| 12/18/2019 | 125 | TRANSCRIPT of proceedings held on December 6, 2019 before Senior Judge Charles F. Lettow. Total No. of Pages: 1–14. Procedures Re: Electronic Transcripts and Redactions. To order a copy of the transcript, click HERE. Notice of Intent to Redact due 12/26/2019. Redacted Transcript Deadline set for 1/15/2020. Release of Transcript Restriction set for 3/16/2020. (ew) (Entered: 12/18/2019) |
| 12/19/2019 | 126 | ORDER granting 117 motion for leave to amend complaint. **Amended complaint due by 12/30/2019.** Signed by Senior Judge Charles F. Lettow. (sg) (Entered: 12/19/2019) |
| 12/20/2019 | 127 | ORDER Setting Oral Argument/Hearing on Motion 118 Motion for Reconsideration of 114 Scheduling Order: **Motion Hearing set for 1/9/2020 at 10:00 AM in Chambers (Telephonic) before Senior Judge Charles F. Lettow. The court will initiate the call.** Signed by Senior Judge Charles F. Lettow. (sg) (Entered: 12/20/2019) |
| 12/23/2019 | 128 | First AMENDED COMPLAINT against USA, filed by RETURN MAIL, INC.. , filed by RETURN MAIL, INC..Answer due by 1/6/2020. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Kaplan, Lee) (Entered: 12/23/2019) |
| 01/06/2020 | 129 | ANSWER to Amended Complaint , filed by USA.JPSR due by 2/24/2020. (Harel, Shahar) (Entered: 01/06/2020) |
| 01/09/2020 | 130 | AMENDED SCHEDULING ORDER granting in part and denying in part 118 Motion for Reconsideration re 114 Scheduling Order. **The schedule is amended as follows: discovery on all defenses closes 10/9/2020; joint status report due 10/16/2020; telephonic status conference scheduled for 10/20/2020 at 10:00AM EST.** Signed by Senior Judge Charles F. Lettow. (sg) (Entered: 01/09/2020) |
| 01/09/2020 | | Minute Entry – Was the proceeding sealed to the public? N. Proceeding held in Washington, D.C. on 1/9/2020 before Senior Judge Charles F. Lettow: Hearing. [Total number of days of proceeding: 1]. Official record of proceeding taken via electronic digital recording (EDR). To order a certified transcript or an audio recording of the proceeding, click HERE.(sg) (Entered: 01/09/2020) |
| 01/24/2020 | 131 | Notice of Filing of Certified Transcript for proceedings held on January 9, 2020, in Washington, D.C. (ac7) (Entered: 01/24/2020) |
| 01/24/2020 | 132 | TRANSCRIPT of proceedings held on January 9, 2020 before Judge Charles F. Lettow. Total No. of Pages: 1–14. Procedures Re: Electronic Transcripts and Redactions. To order a copy of the transcript, click HERE. Notice of Intent to Redact due 1/31/2020. Redacted Transcript Deadline set for 2/21/2020. Release of Transcript Restriction set for 4/20/2020. (ac7) (Entered: 01/24/2020) |
| 08/04/2020 | 133 | Joint MOTION to Amend Schedule re: 130 Order on Motion for Reconsideration,, filed by USA.**Response due by 8/18/2020.**(Harel, Shahar) (Entered: 08/04/2020) |
| 08/05/2020 | 134 | ORDER granting 133 Motion to Amend Schedule. **The schedule for further proceedings is as follows: Plaintiff's supplemental interrogatory responses due by 8/17/2020. Defendant's claim charts due by 08/28/2020. Defendant's expert report due by 11/25/2020. Plaintiff's rebuttal expert report due by 01/18/2021. Fact Discovery due by 02/9/2021. Joint Status Report due by 02/16/2021. Status Conference set for 02/22/2021 at 10:00 AM in Chambers (Telephonic) before Senior Judge Charles F. Lettow.** Signed by Senior Judge Charles F. Lettow. (sg) (Entered: 08/05/2020) |
| 10/29/2020 | 135 | **SEALED** MOTION to Amend Schedule re: 134 Order on Motion to Amend Schedule,,, filed by USA.**Response due by 11/12/2020.** (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit Exhibit F, # 7 Exhibit Exhibit G)(Harel, Shahar) (Entered: 10/29/2020) |

| | | |
|---|---|---|
| 11/12/2020 | <u>136</u> | RESPONSE to <u>135</u> MOTION to Amend Schedule re: <u>134</u> Order on Motion to Amend Schedule,, , filed by RETURN MAIL, INC..**Reply due by 11/19/2020.** (Attachments: # <u>1</u> Text of Proposed Order)(Kaplan, Lee) (Entered: 11/12/2020) |
| 11/12/2020 | <u>137</u> | \*\*SEALED\*\* MOTION to Seal Document <u>136</u> Response to Motion, *Sealed Exhibits to Docket 136*, filed by RETURN MAIL, INC..**Response due by 11/30/2020.** (Attachments: # <u>1</u> Exhibit 2, # <u>2</u> Exhibit 3, # <u>3</u> Exhibit 4, # <u>4</u> Exhibit 5, # <u>5</u> Exhibit 6, # <u>6</u> Exhibit 7, # <u>7</u> Exhibit 8)(Kaplan, Lee) (Entered: 11/12/2020) |
| 11/13/2020 | <u>138</u> | ORDER granting <u>137</u> Motion to Seal Document. **ECF No. 137 shall remain under seal pending further order of the court.** Signed by Senior Judge Charles F. Lettow. (jjk) (Entered: 11/13/2020) |
| 11/18/2020 | <u>139</u> | Joint MOTION to Amend Schedule *for Reply to* re: <u>136</u> Response to Motion,, filed by USA.**Response due by 12/2/2020.**(Harel, Shahar) (Entered: 11/18/2020) |
| 11/19/2020 | <u>140</u> | ORDER granting <u>139</u> Motion to Amend Schedule. **Defendant's Reply in support of its motion to amend its invalidity contentions due 11/23/2020. Plaintiff's response to defendant's second set of interrogatories due 11/23/2020.** Signed by Senior Judge Charles F. Lettow. (jjk) (Entered: 11/19/2020) |
| 11/23/2020 | <u>141</u> | REPLY to Response to Motion re <u>135</u> MOTION to Amend Schedule re: <u>134</u> Order on Motion to Amend Schedule,, , filed by USA. (Attachments: # <u>1</u> Exhibit, # <u>2</u> Exhibit, # <u>3</u> Exhibit, # <u>4</u> Exhibit, # <u>5</u> Exhibit)(Harel, Shahar) (Entered: 11/23/2020) |
| 12/09/2020 | <u>142</u> | MOTION for Leave to File Sur–Reply to the Defs Reply Brief ISO its Motion for Leave to Amend Invalidity Contentions , filed by RETURN MAIL, INC..**Response due by 12/23/2020.** (Attachments: # <u>1</u> Exhibit A – Sur–Reply, # <u>2</u> Text of Proposed Order)(Kaplan, Lee) Modified on 12/11/2020 to clarify Exhibit A as a Sur–Reply. (rp) (Entered: 12/09/2020) |
| 12/09/2020 | <u>143</u> | ORDER granting <u>142</u> Motion for Leave to File Sur–reply. Signed by Senior Judge Charles F. Lettow. (jjk) (Entered: 12/09/2020) |
| 01/14/2021 | <u>144</u> | \*\*SEALED\*\* ORDER Setting Hearing on <u>135</u> MOTION to Amend Schedule re: <u>134</u> Order on Motion to Amend Schedule. Motion Hearing set for 1/21/2021 10:00 AM in Chambers (Telephonic) before Senior Judge Charles F. Lettow. Details for calling in are contained in the order. Signed by Senior Judge Charles F. Lettow. (jjk) (Entered: 01/14/2021) |
| 01/18/2021 | <u>145</u> | Joint MOTION to Amend Schedule re: <u>134</u> Order on Motion to Amend Schedule,,, filed by RETURN MAIL, INC..**Response due by 2/1/2021.** (Attachments: # <u>1</u> Text of Proposed Order)(Kaplan, Lee) (Entered: 01/18/2021) |
| 01/19/2021 | <u>146</u> | \*\*SEALED\*\* ORDER granting <u>145</u> Motion to Amend Schedule. **Plaintiff's Rebuttal Expert Invalidity Report due by 1/25/2021. Fact and Expert Discovery for All Defenses due by 3/2/2021. Joint Status Report due by 3/9/2021. Status Conference set for 3/15/2021 10:00 AM EDT in Chambers (Telephonic) before Senior Judge Charles F. Lettow. Details for calling in are contained in the order.** Signed by Senior Judge Charles F. Lettow. (jjk) (Entered: 01/19/2021) |
| 01/25/2021 | | Minute Entry – Was the proceeding sealed to the public? N. Proceeding held in Washington, D.C. (Telephonic) 1/21/2021 before Senior Judge Charles F. Lettow: Hearing [Total number of days of proceeding: 1]. Official record of proceeding taken by court reporter. To order a certified transcript or an audio recording of the proceeding, click <u>HERE</u>. (jjk) (Entered: 01/25/2021) |
| 01/27/2021 | <u>147</u> | Notice of Filing of Certified Transcript for proceedings held on January 21, 2021 in Washington, D.C. (ew) (Entered: 01/27/2021) |
| 01/27/2021 | <u>148</u> | TRANSCRIPT of proceedings held on January 21, 2021 before Senior Judge Charles F. Lettow. Total No. of Pages: 1–53. <u>Procedures Re: Electronic Transcripts and Redactions</u>. To order a copy of the transcript, click <u>HERE</u>. Notice of Intent to Redact due 2/3/2021. Redacted Transcript Deadline set for 2/24/2021. Release of Transcript Restriction set for 4/26/2021. (ew) (Entered: 01/27/2021) |
| 02/22/2021 | <u>149</u> | Joint MOTION to Amend Schedule re: <u>146</u> Order on Motion to Amend Schedule,, filed by USA.**Response due by 3/8/2021.** (Attachments: # <u>1</u> Text of Proposed Order)(Harel, Shahar) (Entered: 02/22/2021) |

| 02/24/2021 | 150 | REPORTED OPINION granting 135 Motion to Amend Schedule. Defendant's Amended Invalidity Contentions due by 3/10/2021. Signed by Senior Judge Charles F. Lettow. (jjk) (Entered: 02/24/2021) |
|---|---|---|
| 02/25/2021 | 151 | **SEALED** ORDER granting 149 Motion to Amend Schedule. **Fact and Expert Discovery for All Defenses due by 3/29/2021. Joint Status Report due by 4/5/2021. Status Conference set for 4/12/2021 10:00 AM EDT in Chambers (Telephonic) before Senior Judge Charles F. Lettow. Details for calling in are contained in the order.** Signed by Senior Judge Charles F. Lettow. (jjk) (Entered: 02/25/2021) |
| 03/10/2021 | 152 | Amended Document – Supplemental Invalidity Claim Charts amending Discovery Request from Defendant The United States, filed by USA. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Errata R, # 19 Exhibit S, # 20 Exhibit T)(Harel, Shahar) Modified on 3/15/2021 to clarify filing (tb). (Entered: 03/10/2021) |
| 04/05/2021 | 153 | JOINT STATUS REPORT , filed by USA. (Harel, Shahar) (Entered: 04/05/2021) |
| 04/07/2021 | 154 | **SEALED** STATUS CONFERENCE ORDER: Status Conference rescheduled for 4/13/2021 02:30 PM EDT in Chambers (Telephonic) before Senior Judge Charles F. Lettow. Details for calling in are contained in the order. Signed by Senior Judge Charles F. Lettow. (jjk) (Entered: 04/07/2021) |
| 04/08/2021 | 155 | MOTION *to Preclude Defendant's Use of Previously Withheld Documents*, filed by RETURN MAIL, INC..**Response due by 4/22/2021.** (Attachments: # 1 Text of Proposed Order)(Kaplan, Lee) (Entered: 04/08/2021) |
| 04/13/2021 | | Minute Entry – Was the proceeding sealed to the public? N. Proceeding held in Washington, D.C. (Telephonic) 4/13/2021 before Senior Judge Charles F. Lettow: Status Conference [Total number of days of proceeding: 1]. Official record of proceeding taken via electronic digital recording (EDR). To order a certified transcript or an audio recording of the proceeding, click HERE. (jjk) (Entered: 04/13/2021) |
| 04/15/2021 | 156 | Notice of Filing of Certified Transcript for proceedings held on April 13, 2021 in Washington, D.C. (ew) (Entered: 04/15/2021) |
| 04/15/2021 | 157 | TRANSCRIPT of proceedings held on April 13, 2021 before Senior Judge Charles F. Lettow. Total No. of Pages: 1–26. Procedures Re: Electronic Transcripts and Redactions. To order a copy of the transcript, click HERE. Notice of Intent to Redact due 4/22/2021. Redacted Transcript Deadline set for 5/13/2021. Release of Transcript Restriction set for 7/12/2021. (ew) (Entered: 04/15/2021) |
| 04/22/2021 | 158 | RESPONSE to 155 MOTION *to Preclude Defendant's Use of Previously Withheld Documents* , filed by USA.**Reply due by 4/29/2021.** (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B1, # 3 Exhibit Exhibit B2, # 4 Exhibit Exhibit B3, # 5 Exhibit Exhibit B4, # 6 Exhibit Exhibit C, # 7 Exhibit Exhibit D, # 8 Exhibit Exhibit E, # 9 Exhibit Exhibit F, # 10 Exhibit Exhibit G, # 11 Exhibit Exhibit H, # 12 Exhibit Exhibit I, # 13 Exhibit Exhibit J, # 14 Exhibit Exhibit K, # 15 Exhibit Exhibit L, # 16 Exhibit Exhibit M, # 17 Exhibit Exhibit N)(Harel, Shahar) (Entered: 04/22/2021) |
| 04/29/2021 | 159 | REPLY re 155 MOTION *to Preclude Defendant's Use of Previously Withheld Documents* , filed by RETURN MAIL, INC.. (Attachments: # 1 Exhibit 1)(Kaplan, Lee) Modified on 4/30/2021 to change event type from Sur–Reply to Reply (tb). (Entered: 04/29/2021) |
| 05/03/2021 | 160 | ORDER Setting Oral Argument/Hearing on 155 MOTION *to Preclude Defendant's Use of Previously Withheld Documents*: **Motion Hearing set for 5/13/2021 at 02:30 PM EDT in Chambers (Telephonic) before Senior Judge Charles F. Lettow.** Signed by Senior Judge Charles F. Lettow. (jjk) (Entered: 05/03/2021) |
| 05/13/2021 | | Minute Entry – Was the proceeding sealed to the public? N. Proceeding held in Washington, D.C. (Telephonic) 5/13/2021 before Senior Judge Charles F. Lettow: Hearing [Total number of days of proceeding: 1]. Approximate duration of proceeding: 1 hour. Official record of proceeding taken by court reporter. To order a certified transcript or an audio recording of the proceeding, click HERE. (jjk) (Entered: 05/13/2021) |

| 05/14/2021 | 161 | Notice of Filing of Certified Transcript for proceedings held on May 13, 2021 in Washington, D.C. (ew) (Entered: 05/14/2021) |
| 05/14/2021 | 162 | TRANSCRIPT of proceedings held on May 13, 2021 before Judge Charles F. Lettow. Total No. of Pages: 1–33. Procedures Re: Electronic Transcripts and Redactions. To order a copy of the transcript, click HERE. Notice of Intent to Redact due 5/21/2021. Redacted Transcript Deadline set for 6/11/2021. Release of Transcript Restriction set for 8/9/2021. (ew) (Entered: 05/14/2021) |
| 05/17/2021 | 163 | Joint MOTION to Unseal *April 13, 2021 & May 13, 2021 Hearing Transcripts*, filed by RETURN MAIL, INC..**Response due by 6/1/2021.**(Kaplan, Lee) (Entered: 05/17/2021) |
| 05/18/2021 | 164 | MOTION to Withdraw *Docket 163 & Unopposed Motion to Unseal April 13, 2021 & May 13, 2021 Hearing Transcripts*, filed by RETURN MAIL, INC..**Response due by 6/1/2021.**(Kaplan, Lee) (Entered: 05/18/2021) |
| 05/18/2021 | 165 | ORDER denying 163 Motion to Unseal Document; denying 164 Motion to Withdraw. Signed by Senior Judge Charles F. Lettow. (jjk) (Entered: 05/18/2021) |
| 05/26/2021 | 166 | REPORTED OPINION granting in part and denying in part 155 Motion to Preclude Defendant's Use of Previously Withheld Documents. Signed by Senior Judge Charles F. Lettow. (jjk) (Entered: 05/26/2021) |
| 07/28/2021 | 167 | JOINT STATUS REPORT , filed by USA. (Harel, Shahar) (Entered: 07/28/2021) |
| 08/03/2021 | 168 | SCHEDULING ORDER: **Motion(s) for Summary Judgment due by 8/26/2021.** Signed by Senior Judge Charles F. Lettow. (jjk) (Entered: 08/03/2021) |
| 08/25/2021 | 169 | MOTION for Summary Judgment *of Invalidity under 35 USC 101*, filed by USA.**Response due by 9/22/2021.** (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C)(Harel, Shahar) (Entered: 08/25/2021) |
| 08/25/2021 | 170 | BILL OF COSTS , filed by RETURN MAIL, INC..**Objection to Bill of Costs due by 9/22/2021.** (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(Kaplan, Lee) (Entered: 08/25/2021) |
| 08/26/2021 | 171 | MOTION for Summary Judgment *Under §§ 305 and 102*, filed by USA.**Response due by 9/23/2021.** (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit Exhibit F, # 7 Exhibit Exhibit G, # 8 Exhibit Exhibit H, # 9 Exhibit Exhibit I, # 10 Exhibit Exhibit J, # 11 Exhibit Exhibit K, # 12 Exhibit Exhibit L, # 13 Exhibit Exhibit M, # 14 Exhibit Exhibit N)(Harel, Shahar) (Entered: 08/26/2021) |
| 08/26/2021 | 172 | MOTION for Partial Summary Judgment *as to Defendant The United States' Section 101 Affirmative Defense*, filed by RETURN MAIL, INC..**Response due by 9/23/2021.** (Attachments: # 1 Affidavit Declaration, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit)(Kaplan, Lee) (Entered: 08/26/2021) |
| 08/26/2021 | 173 | MOTION for Partial Summary Judgment *on Defendant's Section 305 Affirmative Defense*, filed by RETURN MAIL, INC..**Response due by 9/23/2021.** (Attachments: # 1 Exhibit, # 2 Appendix)(Kaplan, Lee) (Entered: 08/26/2021) |
| 09/22/2021 | 174 | Objections to 162 Transcript, *170 Plaintiff's Bill of Costs*, filed by USA.**Reply due by 9/29/2021.** (Harel, Shahar) (Entered: 09/22/2021) |
| 09/22/2021 | 175 | RESPONSE to 169 MOTION for Summary Judgment *of Invalidity under 35 USC 101* , filed by RETURN MAIL, INC..**Reply due by 10/6/2021.** (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Kaplan, Lee) (Entered: 09/22/2021) |
| 09/23/2021 | 176 | NOTICE, filed by RETURN MAIL, INC. re 174 Objections to Bill of Costs *Response to US's Objection to Return Mail, Inc.'s Statement of Costs*. (Kaplan, Lee) (Entered: 09/23/2021) |
| 09/23/2021 | 177 | RESPONSE to 172 MOTION for Partial Summary Judgment *as to Defendant The United States' Section 101 Affirmative Defense* , filed by USA.**Reply due by** |

| | | |
|---|---|---|
| | | **10/7/2021.** (Harel, Shahar) (Entered: 09/23/2021) |
| 09/23/2021 | 178 | RESPONSE to 171 MOTION for Summary Judgment *Under §§ 305 and 102* , filed by RETURN MAIL, INC..**Reply due by 9/30/2021.** (Attachments: # 1 Exhibit A)(Kaplan, Lee) (Entered: 09/23/2021) |
| 09/23/2021 | 179 | RESPONSE to 171 MOTION for Summary Judgment *Under §§ 305 and 102 (Section 102)*, filed by RETURN MAIL, INC..**Reply due by 10/7/2021.** (Kaplan, Lee) (Entered: 09/23/2021) |
| 09/23/2021 | 180 | RESPONSE to 173 MOTION for Partial Summary Judgment *on Defendant's Section 305 Affirmative Defense* , filed by USA.**Reply due by 10/7/2021.** (Harel, Shahar) (Entered: 09/23/2021) |
| 10/01/2021 | 181 | ORDER granting in part and denying in part 170 Motion for Bill of Costs. Signed by Senior Judge Charles F. Lettow. (klg) (Entered: 10/01/2021) |
| 10/06/2021 | 182 | REPLY to Response to Motion re 169 MOTION for Summary Judgment *of Invalidity under 35 USC 101* , filed by USA. (Harel, Shahar) (Entered: 10/06/2021) |
| 10/07/2021 | 183 | REPLY to Response to Motion re 173 MOTION for Partial Summary Judgment *on Defendant's Section 305 Affirmative Defense* , filed by RETURN MAIL, INC.. (Kaplan, Lee) (Entered: 10/07/2021) |
| 10/07/2021 | 184 | REPLY to Response to Motion re 172 MOTION for Partial Summary Judgment *as to Defendant The United States' Section 101 Affirmative Defense* , filed by RETURN MAIL, INC.. (Kaplan, Lee) (Entered: 10/07/2021) |
| 10/07/2021 | 185 | Unopposed MOTION for Leave to Exceed Page Limit of Reply in Support of Summary Judgment Motion Under 35 U.S.C. §§ 305 and 102 by 5 pages , filed by USA.**Response due by 10/21/2021.**(Harel, Shahar) (Entered: 10/07/2021) |
| 10/07/2021 | 186 | REPLY to Response to Motion re 171 MOTION for Summary Judgment *Under §§ 305 and 102* , filed by USA. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B)(Harel, Shahar) (Entered: 10/07/2021) |
| 10/08/2021 | 187 | ORDER granting 185 Motion for Leave to File Excess Pages. Signed by Senior Judge Charles F. Lettow. (klg) (Entered: 10/08/2021) |
| 10/11/2021 | 188 | MOTION to Require Prompt Payment by the United States of Certain Costs Incurred by Its Conduct in Discovery re 181 Order on Motion for Bill of Costs , filed by RETURN MAIL, INC..**Response due by 10/25/2021.** (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Kaplan, Lee) (Entered: 10/11/2021) |
| 10/21/2021 | 189 | MOTION for Reconsideration re 181 Order on Motion for Bill of Costs *and 166 Order on Motion to Preclude*, filed by USA. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Harel, Shahar) (Entered: 10/21/2021) |
| 10/25/2021 | 190 | CROSS MOTION and RESPONSE to 188 Motion for Miscellaneous Relief, filed by RETURN MAIL, INC., filed by USA.**Response due by 11/8/2021.**(Harel, Shahar) (Entered: 10/25/2021) |
| 10/25/2021 | 191 | ORDER re: 189 Defendant's Motion for Reconsideration. **Plaintiff's Response due by 11/10/2021.** Signed by Senior Judge Charles F. Lettow. (klg) (Entered: 10/25/2021) |
| 11/08/2021 | 192 | RESPONSE and reply to 190 CROSS MOTION and RESPONSE to 188 Motion for Miscellaneous Relief, filed by RETURN MAIL, INC., 188 MOTION to Require Prompt Payment by the United States of Certain Costs Incurred by Its Conduct in Discovery re 181 Order on Motion for Bill of Costs , filed by RETURN MAIL, INC..**Reply due by 11/15/2021.** (Kaplan, Lee) (Entered: 11/08/2021) |
| 11/10/2021 | 193 | RESPONSE to 189 MOTION for Reconsideration re 181 Order on Motion for Bill of Costs *and 166 Order on Motion to Preclude* , filed by RETURN MAIL, INC..**Reply due by 11/17/2021.** (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Kaplan, Lee) (Entered: 11/10/2021) |
| 11/15/2021 | 194 | REPLY to Response to Motion re 190 CROSS MOTION and RESPONSE to 188 Motion for Miscellaneous Relief, filed by RETURN MAIL, INC. , filed by USA. (Harel, Shahar) (Entered: 11/15/2021) |

**Appx44**

| 11/17/2021 | 195 | MOTION for Leave to File Reply in Support of Motion for Reconsideration , filed by USA.**Response due by 12/1/2021.** (Attachments: # 1 Exhibit Exhibit A)(Harel, Shahar) (Entered: 11/17/2021) |
|---|---|---|
| 11/18/2021 | 196 | ORDER granting 195 Motion for Leave to File Reply in Support of Motion for Reconsideration. Signed by Senior Judge Charles F. Lettow. (klg) (Entered: 11/18/2021) |
| 11/22/2021 | 197 | REPORTED OPINION AND ORDER granting 188 Motion for Prompt Payment; granting in part 189 Motion for Reconsideration; denying 190 Cross−Motion for Stay of Payment. Signed by Senior Judge Charles F. Lettow. (klg) (Entered: 11/22/2021) |
| 12/21/2021 | 198 | Unopposed MOTION for Extension of Time until January 15, 2022 to Payment of Sanctions fee (Dkt. 197) , filed by USA.**Response due by 1/4/2022.**(Harel, Shahar) (Entered: 12/21/2021) |
| 12/22/2021 | 199 | ORDER granting 198 Motion for Extension of Time. Payment shall be made by January 15, 2022. Signed by Senior Judge Charles F. Lettow. (klg) (Entered: 12/22/2021) |
| 01/19/2022 | 200 | **SEALED** ORDER Setting Hearing on Motions 171 MOTION for Summary Judgment *Under §§ 305 and 102*, 173 MOTION for Partial Summary Judgment *on Defendant's Section 305 Affirmative Defense*, 172 MOTION for Partial Summary Judgment *as to Defendant The United States' Section 101 Affirmative Defense*, 169 MOTION for Summary Judgment *of Invalidity under 35 USC 101*: **Motion Hearing set for 1/24/2022 02:30 PM in Chambers (Telephonic) before Senior Judge Charles F. Lettow.** Call−in details in order. Signed by Senior Judge Charles F. Lettow. (klg) (Entered: 01/19/2022) |
| 01/23/2022 | 201 | **STRICKEN** Pursuant to 202 Order dated 1/24/22. ~~NOTICE, filed by RETURN MAIL, INC. *Notice of Appearance of Counsel (Douglas Elliott) for Plaintiff.* (Kaplan, Lee)~~ (Entered: 01/23/2022) |
| 01/24/2022 | 202 | ORDER Striking 201 Notice of Appearance. Signed by Senior Judge Charles F. Lettow. (klg) (Entered: 01/24/2022) |
| 01/24/2022 | | Minute Entry − Was the proceeding sealed to the public? N. Proceeding held in Washington, D.C. 1/24/2022 before Senior Judge Charles F. Lettow: Hearing. [Total number of days of proceeding: 1] Approximate duration of proceeding: 2 hours and 30 minutes. Official record of proceeding taken by court reporter. To order a certified transcript or an audio recording of the proceeding, click HERE. (klg) (Entered: 01/24/2022) |
| 01/25/2022 | 203 | ORDER: **Defendant's Supplemental Brief due 2/4/22. Plaintiff's Supplemental Brief due 2/16/22.** Signed by Senior Judge Charles F. Lettow. (ac) (Entered: 01/25/2022) |
| 01/31/2022 | 204 | Notice of Filing of Certified Transcript for proceedings held on January 24, 2022 in Washington, D.C. (ew) (Entered: 01/31/2022) |
| 01/31/2022 | 205 | TRANSCRIPT of proceedings held on January 24, 2022 before Judge Charles F. Lettow. Total No. of Pages: 1−78. Procedures Re: Electronic Transcripts and Redactions. To order a copy of the transcript, click HERE. Notice of Intent to Redact due 2/7/2022. Redacted Transcript Deadline set for 2/28/2022. Release of Transcript Restriction set for 4/28/2022. (ew) (Entered: 01/31/2022) |
| 02/04/2022 | 206 | SUPPLEMENTAL BRIEF re: 169 Motion for Summary Judgment *of Invalidity Pursuant to Section 101*, filed by USA. (Harel, Shahar) (Entered: 02/04/2022) |
| 02/16/2022 | 207 | SUPPLEMENTAL BRIEF *RE DEFENDANT'S SECTION 101 AFFIRMATIVE DEFENSE*, filed by RETURN MAIL, INC.. (Kaplan, Lee) (Entered: 02/16/2022) |
| 04/06/2022 | 208 | REPORTED OPINION on 169 MOTION for Summary Judgment *of Invalidity under 35 USC 101* filed by USA, 171 MOTION for Summary Judgment *Under §§ 305 and 102* filed by USA, 172 MOTION for Partial Summary Judgment *as to Defendant The United States' Section 101 Affirmative Defense* filed by RETURN MAIL, INC., and 173 MOTION for Partial Summary Judgment *on Defendant's Section 305 Affirmative Defense* filed by RETURN MAIL, INC.; granting 169 Motion for Summary Judgment; denying as moot 171 Motion for Summary Judgment; denying 172 Motion for Partial |

| | | |
|---|---|---|
| | | Summary Judgment; denying <u>173</u> Motion for Partial Summary Judgment. The Clerk is directed to enter judgment. Signed by Senior Judge Charles F. Lettow. (ac) (Entered: 04/06/2022) |
| 04/06/2022 | <u>209</u> | JUDGMENT entered, pursuant to Rule 58, in favor of defendant. No costs. (Service on parties made.) (dls) (Entered: 04/06/2022) |
| 05/04/2022 | <u>210</u> | MOTION to Alter or Amend Judgment pursuant to Rule 59(e) , filed by RETURN MAIL, INC..(Kaplan, Lee) (Entered: 05/04/2022) |
| 05/06/2022 | <u>211</u> | ORDER denying <u>210</u> Motion to Alter Judgment. Signed by Senior Judge Charles F. Lettow. (ac) (Entered: 05/06/2022) |
| 06/03/2022 | <u>212</u> | MOTION to Substitute Attorney Joseph Michael Mercadante in place of Lee L. Kaplan , filed by RETURN MAIL, INC..**Response due by 6/17/2022.** (Attachments: # <u>1</u> Exhibit 1 Affidavit of Appointment, # <u>2</u> Exhibit 2 Lee L Kaplan Consent to Change Attorney of Record)(Mercadante, Joseph) (Entered: 06/03/2022) |
| 06/03/2022 | | CLERK'S NOTICE granting Motion to Substitute Attorney (Consented) pursuant to Rule 83.1(c)(4). Added attorney Joseph M Mercadante for RETURN MAIL, INC. Attorney Lee Landa Kaplan terminated. (hw1) (Entered: 06/03/2022) |
| 06/03/2022 | <u>213</u> | NOTICE OF APPEAL as to <u>211</u> Order on Motion to Alter Judgment, <u>209</u> Judgment, filed by RETURN MAIL, INC.. Filing fee $ 505, receipt number AUSFCC–7936756. Copy to CAFC. (Mercadante, Joseph) (Entered: 06/03/2022) |
| 06/10/2022 | | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals for the Federal Circuit re <u>213</u> Notice of Appeal. (hw1) (Entered: 06/10/2022) |
| 06/13/2022 | | CAFC Case Number 2022–1898 for <u>213</u> Notice of Appeal filed by RETURN MAIL, INC. (ac7) (Entered: 06/13/2022) |



US006826548B2

(12) **United States Patent**
Hungerpiller et al.

(10) Patent No.: **US 6,826,548 B2**
(45) **Date of Patent:** **Nov. 30, 2004**

(54) **SYSTEM AND METHOD FOR PROCESSING RETURNED MAIL**

(75) Inventors: **Ralph Mitchell Hungerpiller**, Birmingham, AL (US); **Ronald C. Cagle**, Birmingham, AL (US)

(73) Assignee: **Return Mail, Inc.,** Birmingham, AL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 142 days.

(21) Appl. No.: **10/057,608**

(22) Filed: **Jan. 24, 2002**

(65) **Prior Publication Data**

US 2003/0191651 A1 Oct. 9, 2003

**Related U.S. Application Data**

(60) Provisional application No. 60/263,788, filed on Jan. 24, 2001.

(51) Int. Cl.[7] .............................................. **G07B 17/00**
(52) U.S. Cl. ....................................... **705/401**; 382/101
(58) Field of Search ................................ 382/100, 101, 382/102, 112; 705/401, 408, 410

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,800,505 A | 1/1989 | Axelrod et al. | 364/478 |
| 4,979,605 A | 12/1990 | Svyatsky | 198/349 |
| 5,229,932 A | 7/1993 | Connell et al. | 364/401 |
| 5,319,181 A | 6/1994 | Shelhammer et al. | 235/462 |
| 5,420,403 A | 5/1995 | Allum et al. | 235/375 |
| 5,422,821 A | 6/1995 | Allen et al. | 364/478 |
| 5,514,863 A | 5/1996 | Williams | 235/494 |
| 5,770,841 A | * 6/1998 | Moed et al. | 235/375 |
| 5,925,864 A | * 7/1999 | Sansone et al. | 235/375 |
| 5,953,427 A | 9/1999 | Cordery et al. | 380/51 |
| 6,032,138 A | 2/2000 | McFiggans et al. | 705/410 |
| 6,055,520 A | 4/2000 | Heiden et al. | 705/410 |
| 6,125,357 A | 9/2000 | Pintsov | 705/408 |
| 6,175,827 B1 | 1/2001 | Cordery et al. | 705/410 |
| 6,178,411 B1 | 1/2001 | Reiter | 705/408 |
| 6,178,412 B1 | 1/2001 | Ratzenberger, Jr. et al. | 705/408 |
| 6,253,219 B1 | 6/2001 | Gardner et al. | 707/530 |
| 6,292,709 B1 | * 9/2001 | Uhl et al. | 700/226 |
| 6,370,446 B1 | 4/2002 | Divine | 700/226 |
| 6,385,504 B1 | 5/2002 | Pintsov et al. | 700/226 |
| 6,549,892 B1 | * 4/2003 | Sansone | 705/401 |
| 2001/0010334 A1 | 8/2001 | Park et al. | 235/462.14 |
| 2002/0029202 A1 | 3/2002 | Lopez | 705/406 |
| 2002/0147731 A1 | 10/2002 | Seestrom et al. | 707/104.1 |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | 1022691 A2 | 7/2000 | ........... G07B/17/00 |
| JP | 07-171505 | * 7/1995 | |
| JP | 2000334389 A | 12/2000 | ........... B07C/3/18 |
| WO | WO/ 00/10113 | 2/2000 | ........... G06K/9/00 |

OTHER PUBLICATIONS

Business Wire: "Pitney Bowes: Pitney Bowes ADDRESS-RIGHT system allows companies to make best impression and save money through the mail"; May 1, 1992.*

* cited by examiner

*Primary Examiner*—Edward R. Cosimano
(74) *Attorney, Agent, or Firm*—Womble Carlyle Sandridge & Rice, PLLC

(57) **ABSTRACT**

A method, system and program product for processing returned mail includes the steps of encoding pieces of mail with data including the identity of the intended recipient, mailing the pieces of mail to the intended recipients, collecting at a processing location those pieces of mail that are returned as undeliverable, scanning the data from the returned pieces of mail, electronically updating at least address information for the intended recipients of the returned mail, and electronically transmitting the updated address and other information to a subscriber for updating the subscriber's database of recipient addresses.

**38 Claims, 5 Drawing Sheets**





FIG. 1



FIG. 2



IDENTIFY OUTPUT FILES BY CUSTOMER NUMBER AND QUEUE FOR ADDITIONAL ADDRESS CORRECTION SERVICES
300
DOES SENDER WANT AN ATTEMPT MADE TO PROVIDE CORRECT ADDRESS FOR INTENDED RECIPIENT?
302
N
Y
PLACE RETURNED MAIL DATA RECORDS ON INTERNET WEBSITE FOR SENDER PICKUP
304
SEND RETURNED MAIL DATA RECORDS TO ADDRESS UPDATE SERVICE BUREAU
308
PICK UP DATA RECORDS OF UNDELIVERABLE USPS MAIL BY ORIGINAL MAIL SENDER
306
UPDATE ADDRESSES WHEN POSSIBLE BY SERVICE BUREAU
310
PROVIDE UPDATED RECORDS TO RETURNED MAIL SERVICE PROVIDER
312
PLACE RETURNED MAIL DATA RECORDS ON INTERNET WEBSITE OR DIAL-UP SERVER FOR SENDER PICKUP
314
PICK UP DATA RECORDS OF UNDELIVERABLE USPS MAIL BY ORIGINAL MAIL SENDER
316

FIG. 3



SENDER DATA
400
ENCODE SENDER DATA WITH PDF417 BARCODE TO PRINT ON CUSTOMER FORM SO THAT THE PDF417 BARCODE APPEARS IN THE RETURN ADDRESS LOCATION OF A DUAL PANE WINDOW ENVELOPE
402
INCLUDE RETURN ADDRESS IN THE RETURN ADDRESS SPACE AFTER SENDER LOGO AND/OR COMPANY NAME WITH PDF417 BARCODE PRINTED JUST BELOW ADDRESS
404
PRINT MAILING FORM IN HARDCOPY FORMAT AND PREPARE FOR US MAIL SYSTEM WITH RETURN ADDRESS AND PDF417 BARCODE
406
RELEASE MAILING TO UNITED STATES POSTAL SYSTEM LIKE ANY OTHER PIECE OF US MAIL
408
DETERMINE IF MAIL IS DELIVERABLE OR SHOULD BE RETURNED TO SENDER (BY USPS)
410
Y
DELIVER MAIL TO ADDRESSEE AS NORMAL
412
N
DELIVER PHYSICAL MAIL TO SENDER AS SPECIFIED ON MAIL ITEM FOR FURTHER DATA PROCESSING SERVICES
414

FIG. 4



FIG. 5

US 6,826,548 B2

**1**

# SYSTEM AND METHOD FOR PROCESSING RETURNED MAIL

## CROSS-REFERENCE TO RELATED APPLICATIONS

The present patent application is a formalization of a previously filed, co-pending provisional patent application entitled "Method of Processing Returned Mail", filed Jan. 24, 2001, as U.S. Patent Application Serial No. 60/263,788 by the inventors named in this patent application. This patent application claims the benefit of the filing date of the cited provisional patent application according to the statutes and rules governing provisional patent applications, particularly USC § 119(e)(1) and 37 CFR §§ 1.789(a)(4) and (a)(5). The specification and drawings of the provisional patent application are specially incorporated herein by reference.

## BACKGROUND OF THE INVENTION

The present invention relates generally to mail processing, and more particularly to a method, system, and program product for processing business mail that is returned to the sender due to an inaccurate or expired address for the intended recipient.

Many businesses mail thousands or even millions of pieces of mail each month to customers, clients, and prospects. Such businesses include, for example, insurance companies, mortgage and finance companies, bulk mail advertisers, and credit card companies. Inevitably, a certain percentage of the items that are mailed each month by these businesses are returned to the sender, usually because the intended recipient has moved without notice or otherwise is no longer at the address to which the mail was sent. Other causes, such as incomplete addresses and local changes in addresses of residences in an area also may result in returned mail. Intended recipients also can change their names through marriage or otherwise, which also can result in returned mail.

The processing of mail that is returned to sender historically has been a time-consuming labor-intensive process for high volume mail users. It is not uncommon for such high volume users to retain a staff of several employees whose job it is to receive the returned mail, manually research the reasons for the unsuccessful delivery, obtain, where possible, the correct addressing information for the intended recipient, and oversee a second mailing to the corrected address. Even with the availability of address updating services to aid in researching for the correct address, the process is substantially a manual one subject to human error and delays. Furthermore, the cost of maintaining a staff to handle returned mail, to update company address databases, and the postage expense that is incurred before the mail actually reaches the intended recipient is substantial. Finally, human error is always an issue with such manual systems.

Accordingly, a need exists for an improved method of processing returned mail that overcomes the historical problems with prior art manual handling and that does so quickly, more accurately, and at substantially less cost. It is to the provision of such a method and system that the present invention is primarily directed.

## SUMMARY OF THE INVENTION

Successful performance of the invention as described herein depends upon the subscribers providing specification compliant mail for processing. In general terms this means that: (1) the physical properties (length, height, thickness,

**2**

weight, etc.) of the mail to be processed conform to United States Postal Service (USPS) automation letter mail standards, modified to exclude post-cards and "self-mailers" and (2) the mail includes return address block information specially formatted as a two-dimensional barcode.

Subscribers provide the address of the return mail service provider in the return address block, which receives mail, returned as undeliverable by the USPS. The return mail provider service provider captures the data from the returned items and apply its special expertise in obtaining corrected address information. The return mail service provider then electronically transfers corrective data records to the subscriber.

In one exemplary embodiment, data including the identification of the addressee is encoded on each item of a subscriber's mail to be delivered. Items of mail found to be undeliverable subsequent to mailing are received at a processing location where they are loaded onto a transport mechanism and then optically scanned. The optically scanned data is stored in a data file for further processing. The names and addresses of the intended recipients in the data file are then transmitted to a service bureau electronically for updated addresses. Upon receiving updated addresses, the new address data is delivered to the subscriber in electronic form for us in updating the subscriber's customer address files.

## DESCRIPTION OF THE DRAWINGS

The invention is better understood by reading the following detailed description of an exemplary embodiment in conjunction with the accompanying drawings.

FIG. **1** illustrates the processing flow for the returned mail handling system in accordance with an exemplary embodiment of the present invention.

FIG. **2** illustrates the processing logic at the returned mail application servers for handling of mail determined to be undeliverable in accordance with an exemplary embodiment of the present invention.

FIG. **3** illustrates the processing logic for updating address records associated with returned mail in accordance with an exemplary embodiment of the present invention.

FIG. **4** illustrates the processing logic associated with encoding a subscriber's mailing form with the return address of the returned mail service provider in accordance with an exemplary embodiment of the present invention.

FIG. **5** illustrates the processing logic for updating customer records by a subscriber associated with returned mail in accordance with an exemplary embodiment of the present invention.

## DETAILED DESCRIPTION OF THE INVENTION

The present invention is directed to an improved method and system for processing returned mail that successfully addresses the problems with prior art methods. The methodology is offered to subscribers through a return mail processing service provider that can be centrally located or that can have regional locations. The return mail process is particularly applicable to high volume (bulk) mail users such as credit card companies, but is also applicable to any mail user who experiences and must deal with quantities of returned mail each month. The methodology of the process is described in the following.

Each piece of mail to be sent by a subscriber to its own customers is optically encoded on its face or back side with

US 6,826,548 B2

**3**

a block of machine-readable data in the form of a two-dimensional (2-D) barcode that can include a wide variety of information. This information can include the name and address of the addressee, identifying information regarding the sender, electronic mail address of the sender, and virtually any other information useful to include on the mail. In reality, a relatively large volume of information can be encoded in such optical data blocks. For example, information related to the address history of the addressee and similar data can be included.

Portable Data File 417 (PDF417) is the most widely used 2-D barcode. Developed by Symbol Technologies, Inc, this barcode can hold up to 1800 bytes of any digital data in a printed area the size of a business card. An optical scanner reads the barcode horizontally and vertically.

A subscriber, for example, a credit card company, also includes on each piece of mail, in addition to the optically encoded data, a written return address that is not the address of the subscriber but rather the address of the central, or one of the regional locations, of the service provider. Accordingly, when a piece of mail is undeliverable for any reason, it is returned by the post office to the return mail service provider offering the processing services of the present invention. As an alternative, a subscriber can elect to receive its own returned mail, bundle it together, and then deliver it to the return mail service provider for return mail processing. In any event, at the return mail service provider's location, thousands of pieces of undeliverable mail sent originally by many subscribers to their customers are received either directly from the post office or from sub-scribers.

Referring to FIG. **1**, at the return mail service provider's location, the returned mail (block **15**) is received from the United States Postal Service (block **90**) and passed through a high volume mail sorter **20** and optical scanner **40** by return mail sorter and data processing operators **30**. The optical scanner **40** reads the information previously optically encoded onto each mail piece before it was sent. This information is conveyed to a computer based application server **50** programmed to store and process the scanned information according to the methodology of the invention. The scanned information is stored in the return mail service provider's mass storage device **60**, containing a plurality of subscriber databases **62**. The information scanned from the returned mail pieces may be processed in a number of ways by the return mail application server **50** depending upon the desired services to be provided. In one exemplary embodiment, the return mail application server **50** is programmed to sort the data in an appropriate way initially, for example, by subscriber. The addresses of the addressees may then be extracted from the scanned data for processing.

The return mail application server **50** preferably is electronically linked by a data line, which may be any conventional telecommunications data line, to the computers and databases **25** of an auxiliary address service that provides up-to-date addresses for millions of people throughout the country. These may be the same address services that historically have been accessed as a research source by the return mail handling staff of subscribers in manually updating addresses of returned mail. Software interfaces are provided on the address service's computers and database **25** and in the return mail application server **50** such that the two computers may exchange data and information electronically and automatically. In one embodiment, the application server **50** transmits to the address service's computer **25** the inaccurate and/or out-of-date address of the intended recipient of each piece of returned mail. In response, the address

**4**

service provider's computer **25** returns to the return mail application server **50** the correct and up-to-date address of the intended recipient. Other information also can be accessed and downloaded such as, for example, data reflecting name changes of recipients due to marriage, or data reflecting other changes in status.

Once the updated data is downloaded from the address service's computer **25**, the application server **50** creates a database **62** for each subscriber containing a variety of information regarding the returned pieces of mail. For instance, the database **62** clearly would contain the identity of the intended recipient and the new updated address retrieved from the address service's computer **25**. Any other pertinent information also may be included such as name change information or even job or economic status changes that may be of interest or important to the subscriber.

Once the corrected up-to-date database **62** is created for the returned mail of a subscriber, (the return mail application server **50** establishes a data connection with a computer **70, 80** of the subscriber. The updated data files are then transferred electronically to the subscriber's computer **70, 80**, which is provided with software to receive and interpret the data, to update the subscriber's mailing list with the new addresses contained-in the data, and to update the subscriber client or customer files to reflect any other information that may be transmitted with the data. The subscriber may use this updated information as it deems appropriate. For example, the subscriber's computer may be programmed to produce immediate re-mailings of the invoices or other mail that originally was returned by the post office as undeliver-able. Alternatively, the subscriber may forgo such a re-mailing and simply use the updated addresses for the next successive mailing cycle.

FIG. **2** illustrates the processing logic performed at the returned mail application servers **50** for the handling of mail determined to be undeliverable. Processing starts in logic block **200** with the delivery of the physical envelopes to the return mail service provider from the United States Postal Service. The undeliverable mail is then fed through the mail sorter **20** with barcode optical scanner **40**, as indicated in input block **202**. The optical scanner **40** then reads the machine-readable information on each envelope as indicated in logic block **204**. The two-dimensional barcode is then decoded from each envelope as indicated in logic block **206**. Data contained on the envelope is collected and an output data file is created in output block **208**. The data in this output file is then sorted by customer numbers, as indicated in logic block **210**. From this sorted data, output files are created based on the customer number as indicated in output

FIG. **3** illustrates the processing logic for updating address records associated with returned mail. Processing starts as indicated in logic block **300** with the identification of output files by customer number and the queuing of the output files for additional address correction services. In decision block **302**, a test is made to determine if the sender (originator) wants the return mail application service provider to provide corrected addresses for intended recipients. If the sender does not want to have correct addresses provided for the intended recipients, the returned mail data records are placed on the Internet website of the service provider for pickup by the sender (logic block **304**). As indicated in output block **306**, the original mail sender picks up the data records of the undeliverable USPS mail. If a determination is made in decision block **302** that the sender wants to have correct addresses provided for the intended recipients, then the return mail application server then sends the returned mail data records to an address update service

US 6,826,548 B2

5

bureau, such as the USPS NCOA address correction databases or the databases provided by licensed service providers. This processing step is indicated in logic block **308**. The addresses of the intended recipients are then updated when possible based on information provided by the service bureau as indicated in output block **310**. The updated records are provided to the return mail service provider as indicated in logic block **312**. The returned mail data records are then placed on the Internet website of the service provider or a dialup service for sender pickup as indicated in logic block **314**. The original mail sender then picks up the data records of the undeliverable USPS mail as indicated in output block **316**. An alternative embodiment of the invention is illustrated in FIG. **4** in which the return mail application service provider encodes a subscriber's mailing form with the return address of the return mail service provider. Processing starts as indicated in block **400** with sender data being received by the return mail application service provider. The sender data is then encoded with a two-dimensional barcode to be printed on a customer form so that the two-dimensional barcode appears in the return address location of a dual pane window envelope as indicated in logic block **402**. The return address of the sender is included in the return address space after the sender's logo and/or company name with the two-dimensional barcode printed just below the return address as indicated in logic block **404**. The form to be mailed is then printed in hard copy format and prepared for the U.S. postal system with the return address and two-dimensional barcode included on the form as indicated logic block **406**. The mailing is then released to the U.S. postal system, like any other piece of U.S. mail, as indicated in logic block **408**. Next, in decision block **410**, a determination is made if the mail is deliverable or should be returned to the sender from the United States Postal Service. As indicated in logic block **412**, deliverable mail is then physically delivered to the addressee as normal. For undeliverable mail, the physical mail is then delivered to the sender as specified on the mail item for further data processing as indicated in logic block **414**.

FIG. **5** illustrates the processing logic for updating customer records by a subscriber that originated the returned mail. Processing begins in logic block **500** with the delivery of the actual physical envelopes found to be undeliverable by the United States Postal Service to the sender. The envelopes are individually read with a two-dimensional hand-held barcode optical scanner as indicated in input block **502**. The optical scanner reads the physical envelope as indicated in logic block **504**. Next, as indicated in logic block **506**, the two-dimensional barcode on the envelope is decoded. An output file is then created from the decoded envelopes as indicated in output block **508**. The output file so generated is then used to update the original data source as indicated in output block **510**.

The requirements for an automated system to aid in data capture (and outcome-based sorting) of returned mail items includes the following components, which are available from Lockheed Martin Distribution Technologies, Inc:

1. a standard letter mail transport;
2. a camera subsystem to read the PDF417 2-D barcode. Hardware and process software in this device are derived from a standard mixed media optical character recognition (MLOCR) camera configuration. Recognition software is integrated to read a PDF417 format two-dimensional barcode printed as a portion of the return address block.
3. an application specific sort program to coordinate camera and transport processes.

6

When the return mail service provider receives the returned mail as undeliverable items from the USPS (from a mixture of subscriber mailings), the letters are face and passed through the transport mechanism. The camera system attempts to read the two-dimensional barcode as the item passes. The possible outcomes of this operation are:

1. no two-dimensional barcode is located on the envelope—such items are either improperly faced in the transport or are not bar-coded;
2. a two-dimensional barcode is found, but cannot be decoded—such items could have been printed at a non-compliant quality level or marred/damaged during transit through the USPS system, or could simply be "chance" failures in the recognition process;
3. a two-dimensional barcode is found and successfully decoded. Physical sorting of the mail and the recording of envelope data depends on the read outcome. Rejected mail can be selectively routed to different reject bins depending on the two different reject types (i.e., no code found or code cannot be determined). No data is saved for rejected items. Data records for successfully decoded items are saved for later retrieval with the items themselves routed to a successful read bin. Data records are saved in a date/time-stamp file corresponding to the time of run-initialization. At any time, the operator may momentarily end processing, causing this file to be closed and become network accessible for the return mail service provider data processing operations. On processing restart, a new and newly named data file is opened with new envelope data records saved to this file. The data content of the 2-D barcode can be four to seven lines as follows:

1. one alphanumeric string (20–60 characters);
2. three to six lines of address information (maximum of 40 characters per line); and
3. a total maximum of 300 characters (including nonprinting characters).

An output file is created for each mail run, with run beginning and end defined by operator action at the sort computer user interface. The name for each output file incorporates a date/time relative to the time of run initialization. The output file contains records only for successfully read 2-D Codes. A vertical bar marks the beginning and end of each record in the file. Another record delimiting character can be specified instead of the vertical bar. However, care must be taken to ensure that it is not a possible character within the barcode data. Between the pair of vertical bars is the continuous byte string returned by the 2-D barcode decode process. Thus, the content and parsing structure of the printed code are transparent to recognition and output processes with line interpretation/parsing governed by embedded line delimiters (such as CR/LF).

Accordingly, it will be appreciated that an improved method of processing returned mail is now provided that addresses the shortcomings of historical manual updating methods and does so at a substantially reduced cost. A high volume mail user subscriber need no longer retain large staffs for manually receiving, researching, updating, and re-mailing pieces of mail that are returned undeliverable. The methodology of the present invention, instead of being virtually all manual, is accomplished virtually entirely automatically through the exchange of data files between computers. Thus, not only is the necessity for the physical handling of large volumes of physical envelopes eliminated for subscribers, the address file updating process can be accomplished much quicker than is possible with manual

**7**

processing. The likelihood of human error in researching and updating addresses is eliminated with the result that a more reliable and constantly updated address database may be maintained.

The returned mail handling system of the present invention can be realized in software or a combination of hardware and software. Any kind of computer system or other apparatus adapted for carrying out the methods described herein is suited. A typical combination of hardware and software in this context could be a web-based server computer with a computer program that, when loaded and executed, controls the web-based server computer such that it carries out the methods described herein. The returned mail handling system can be embedded in a computer program product, which includes all the features enabling the implementation of the methods described herein, and which, when loaded in a computer system, is able to carry out these methods.

Additionally, the corresponding structures, materials, acts, and equivalents of all means plus function elements in any claims are intended to include any structure, material or acts for performing the functions in combination with other claim elements as specifically claimed.

Those skilled in the art will appreciate that many modifications to the exemplary embodiment of the present invention are possible without departing from the spirit and scope of the present invention. In addition, it is possible to use some of the features of the present invention without the corresponding use of the other features. Accordingly, the foregoing description of the exemplary embodiment is provided for the purpose of illustrating the principles of the present invention and not in imitation thereof since the scope of the present invention is defined solely by the appended claims.

What is claimed is:

**1**. A method for processing a plurality of undeliverable mail items comprising the steps of:

encoding data including intended recipient identification information on each of a plurality of mail items prior to mailing;

receiving those items of the plurality of mail items that are returned as being undeliverable;

scanning and decoding the encoded data on the items of undeliverable mail to identify intended recipients having incorrect addresses; and

electronically transferring to the sender information for the identified intended recipients for the sender to update the sender's mailing address files.

**2**. The method for processing a plurality of undeliverable mail items of claim **1**, further comprising the steps of:

storing the decoded data in a data file;

updating the stored data to correct the address of each intended recipient of the items of undeliverable mail; and

delivering the updated data to a subscriber electronically for use in updating the mailing address files of the subscriber.

**3**. The method for processing a plurality of undeliverable mail items of claim **1**, wherein the recipient identification information encoded on each mail item includes a name and an address associated with an intended recipient of the mail item.

**4**. The method for processing a plurality of undeliverable mail items of claim **1** further comprising the step of loading the plurality of undeliverable mail items on a transport mechanism for sorting into a plurality of categories.

**8**

**5**. The method for processing a plurality of undeliverable mail items of claim **4** wherein the plurality of categories includes a barcode not decoded category and a barcode decoded successfully category.

**6**. The method for processing a plurality of undeliverable mail items of claim **1** wherein the step of scanning the encoded data on the undeliverable mail includes reading an optically encoded barcode on each item and decoding the barcode to determine the intended recipient identification information associated with an intended recipient of the item.

**7**. The method for processing a plurality of undeliverable mail items of claim **6** further comprising the step of generating an output file of the identified intended recipients from the scanned and decoded data in the optically encoded barcode.

**8**. The method for processing a plurality of undeliverable mail items of claim **7** further comprising the step of transmitting the generated output file to a mailing address service provider in order to obtain an updated address for each intended recipient of an undeliverable mail item.

**9**. The method for processing a plurality of undeliverable mail items of claim **1** wherein the step of encoding data includes placing an optically encoded barcode on each of the plurality of mail items.

**10**. The method for processing a plurality of undeliverable mail items of claim **9**, wherein the optically encoded bar code is placed on either the front side or the back side of each mail item.

**11**. The method for processing a plurality of undeliverable mail items of claim **9**, wherein the optically encoded bar code is placed in a return address section on each of the plurality of mail items.

**12**. The method for processing a plurality of undeliverable mail items of claim **9** wherein the barcode is a two-dimensional barcode.

**13**. The method for processing a plurality of undeliverable mail items of claim **12** wherein the two-dimensional barcode is a Portable Data File 417 (PDF417) barcode.

**14**. A method for processing returned mail items sent by a subscriber to a recipient, the returned mail items incorporating encoded intended recipient identification information, the method comprising the steps of:

collecting the returned mail items at a processing location;

reading the encoded intended recipient identification information from the returned mail items to identify intended recipients having incorrect addresses;

electronically gathering updated recipient identification information including a different an updated address of the intended recipient; and

electronically transmitting updated recipient identification information to the subscriber for updating of a subscriber's address database.

**15**. The method for processing returned mail items of claim **14** further comprising the step of loading the plurality of undeliverable mail items on a transport mechanism for sorting into a plurality of categories.

**16**. The method for processing returned mail items of claim **15** wherein the plurality of categories includes a barcode not decoded category and a barcode decoded successfully category.

**17**. The method for processing returned mail items of claim **14** wherein the step of reading the encoded information includes scanning an optically encoded barcode on each item and decoding the barcode to determine identification information associated with the intended recipient of the item.

US 6,826,548 B2

| 9 | 10 |

**18**. The method for processing returned mail items of claim **17** further comprising the step of generating an output file of the identified intended recipients from the scanned and decoded data in the optically encoded barcode.

**19**. The method for processing returned mail items of claim **18** further comprising the step of transmitting the generated output file to a mailing address service provider in order to obtain an updated a address for each intended recipient of an undeliverable mail item.

**20**. The method for processing returned mail items of claim **14** wherein the encoded information is placed in an optically encoded barcode on each of the plurality of mail items.

**21**. The method for processing a plurality of undeliverable mail items of claim **20**, wherein the optically encoded bar code is placed on either the front side or the back side of each mail item.

**22**. The method for processing a plurality of undeliverable mail items of claim **20**, wherein the optically encoded bar code is placed in a return address section on each of the plurality of mail items.

**23**. The method for processing returned mail items of claim **20** wherein the barcode is a two-dimensional barcode.

**24**. The method for processing returned mail items of claim **23** wherein the two-dimensional barcode is a Portable Data File 417 (PDF417) barcode.

**25**. A computer readable medium containing a computer program product comprising instructions for controlling a computer system to process a plurality of undeliverable mail items, the computer program product comprising:

    program instructions that capture optically scanned encoded data including intended recipient identification information on each item of undeliverable mail and identify intended recipients having incorrect addresses;

    program instructions that store the captured and identified intended recipient data in a data file;

    program instructions that update the stored data to incorporate an updated address of the intended recipient of each item of undeliverable mail; and

    program instructions that transmit the updated intended recipient address information to a subscriber electronically to update the address files of the subscriber.

**26**. The computer program product for controlling a computer system to process a plurality of undeliverable mail items of claim **25** wherein the encoded identification information includes a name and current address associated with the intended recipient of the mail item.

**27**. The computer program product for controlling a computer system to process a plurality of undeliverable mail items of claim **25** further comprising program instructions that transmit the stored data file electronically to a mailing address service provider in order to obtain an updated address for each intended recipient of an undeliverable mail item.

**28**. The computer program product for controlling a computer system to process a plurality of undeliverable mail items of claim **25** wherein the encoded data is placed in an optically encoded barcode on each mail item.

**29**. The computer program product for controlling a computer system process a plurality of undeliverable mail items of claim **28** wherein the bar code is a two-dimensional bar code.

**30**. The computer program product for controlling a computer system to process a plurality of undeliverable mail items of claim **28**, wherein the optically encoded bar code is placed on either the front side or the back side of each mail item.

**31**. The computer program product for controlling a computer system to process a plurality of undeliverable mail items of claim **28**, wherein the optically encoded bar code is placed in a return address section on each of the plurality of mail items.

**32**. A system for processing a plurality of undeliverable mail items comprising:

    a scanner for reading optically encoded data that includes intended recipient identification information on each item of undeliverable mail;

    a processor for operation of a computer program for decoding the scanned data, identifying the intended recipient identification information in the decoded data, writing the identified recipient identification information into a data file, and transferring to a sender information for the identified intended recipient for the sender to update the sender's mailing address files; and

    a database for storing the data file containing identified recipient identification information.

**33**. The system for processing a plurality of undeliverable mail items of claim **32** wherein the optically encoded data contains a two-dimensional bar code.

**34**. The system for processing a plurality of undeliverable mail items of claim **32**, further comprising a mail transport device for conveying the plurality of undeliverable items and sorting the undeliverable mail items into a plurality of bins.

**35**. The system for processing a plurality of undeliverable mail items of claim **32**, wherein the scanner is a hand-held device.

**36**. The system for processing a plurality of undeliverable mail items of claim **32**, wherein the scanner is a mixed media optical character recognition (MLOCR) device.

**37**. The system for processing a plurality of undeliverable mail items of claim **32** wherein the computer program includes instructions that update the stored data in the data file with an updated address associated with each of the intended recipients of the undeliverable mail items.

**38**. The system for processing a plurality of undeliverable mail items of claim **37** wherein the computer program includes instructions that deliver the updated address data to a subscriber in electronic form for use in updating the address files for the intended recipients.

\*   \*   \*   \*   \*

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.     : 6,826,548 B2                                    Page 1 of  1
DATED           : November 30, 2004
INVENTOR(S)  : Return Mail, Inc.

It is certified that error appears in the above-identified patent and that said Letters Patent is
hereby corrected as shown below:

Column 7,
Line 39, after "mail items" insert -- from a sender --.

Column 8,
Line 49, delete "a different".

Column 9,
Line 8, delete "a".

Signed and Sealed this

Twenty-sixth Day of April, 2005

JON W. DUDAS
*Director of the United States Patent and Trademark Office*

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.        : 6,826,548 C1                          Page 1 of 1
APPLICATION NO.   : 90/008470
DATED             : January 4, 2011
INVENTOR(S)       : Ralph M. Hungerpiller et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

On the Ex Parte Reexamination Certificate Title page, Item (60), under Related U.S. Application Data, delete "Feb." and insert --Jan.-- therefor.

Signed and Sealed this
Seventeenth Day of April, 2012

David J. Kappos
*Director of the United States Patent and Trademark Office*



US006826548C1

(12) **EX PARTE REEXAMINATION CERTIFICATE** (7964th)
# United States Patent
Hungerpiller et al.

(10) **Number:**        **US 6,826,548 C1**
(45) **Certificate Issued:**        **Jan. 4, 2011**

(54) **SYSTEM AND METHOD FOR PROCESSING RETURNED MAIL**

(75) Inventors: **Ralph Mitchell Hungerpiller**, Birmingham, AL (US); **Ronald C. Cagle**, Birmingham, AL (US)

(73) Assignee: **Return Mail, Inc.**, Birmingham, AL (US)

**Reexamination Request:**
No. 90/008,470, Jan. 31, 2007

**Reexamination Certificate for:**
| | |
|---|---|
| Patent No.: | **6,826,548** |
| Issued: | **Nov. 30, 2004** |
| Appl. No.: | **10/057,608** |
| Filed: | **Jan. 24, 2002** |

Certificate of Correction issued Apr. 26, 2005.

**Related U.S. Application Data**

(60) Provisional application No. 60/263,788, filed on Feb. 24, 2001.

(51) **Int. Cl.**
| | |
|---|---|
| *B07C 3/00* | (2006.01) |
| *B07C 3/18* | (2006.01) |
| *G06Q 10/00* | (2006.01) |

(52) **U.S. Cl.** ...................................... **705/401**; 382/101
(58) **Field of Classification Search** ........................ None
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,796,196 A | 1/1989 | Durst, Jr. et al. | |
| 4,800,505 A | 1/1989 | Axelrod et al. | |
| 4,831,555 A | 5/1989 | Sansone et al. | |
| 4,979,605 A | 12/1990 | Svyatsky | |
| 5,005,124 A | 4/1991 | Connell et al. | |
| 5,079,714 A | 1/1992 | Manduley et al. | |
| 5,161,109 A | 11/1992 | Keating et al. | |
| 5,229,232 A | 7/1993 | Connell et al. | |
| 5,319,181 A | 6/1994 | Shellhammer et al. | |

| | | | |
|---|---|---|---|
| 5,420,403 A | 5/1995 | Allum et al. | |
| 5,422,821 A | * 6/1995 | Allen et al. | .................. 700/219 |
| 5,470,427 A | 11/1995 | Mikel et al. | |
| 5,514,863 A | 5/1996 | Williams | |
| 5,612,889 A | * 3/1997 | Pintsov et al. | ............... 700/226 |
| 5,682,429 A | * 10/1997 | Cordery et al. | ............... 705/60 |
| 5,703,783 A | 12/1997 | Allen et al. | |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0 673 686 A1 | 9/1995 |
| EP | 1 022 691 A2 | 7/2000 |
| JP | 7-171505 A | 7/1995 |
| JP | 2000-334389 A | 12/2000 |
| KR | 2001-0064264 | 7/2001 |
| WO | WO 00/10113 A1 | 2/2000 |

OTHER PUBLICATIONS

Postal Addressing Standards—Publication 28, Nov. 2000, pp. 129.*

(Continued)

*Primary Examiner*—Lynne H Browne

(57)        **ABSTRACT**

A method, system and program product for processing returned mail includes the steps of encoding pieces of mail with data including the identity of the intended recipient, mailing the pieces of mail to the intended recipients, collecting at a processing location those pieces of mail that are returned as undeliverable, scanning the data from the returned pieces of mail, electronically updating at least address information for the intended recipients of the returned mail, and electronically transmitting the updated address and other information to a subscriber for updating the subscriber's database of recipient addresses.

**At the time of issuance and publication of this certificate, the patent remains subject to pending reissue application number 11/605,488 filed Nov. 29, 2006. The claim content of the patent may be subsequently revised in the reissue processing.**



## US 6,826,548 C1
Page 2

### U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 5,731,574 | A | * | 3/1998 | Bodie et al. | 235/375 |
| 5,770,841 | A | | 6/1998 | Moed et al. | |
| 5,781,634 | A | * | 7/1998 | Cordery et al. | 705/60 |
| 5,790,429 | A | | 8/1998 | Baker et al. | |
| 5,862,243 | A | | 1/1999 | Baker et al. | |
| 5,871,288 | A | | 2/1999 | Ryan, Jr. et al. | |
| 5,925,864 | A | | 7/1999 | Sansone et al. | |
| 5,930,796 | A | | 7/1999 | Pierce et al. | |
| 5,953,427 | A | * | 9/1999 | Cordery et al. | 380/51 |
| 5,984,174 | A | | 11/1999 | Kato et al. | |
| 6,032,138 | A | | 2/2000 | McFiggans et al. | |
| 6,055,520 | A | | 4/2000 | Heiden et al. | |
| 6,125,357 | A | | 9/2000 | Pintsov | |
| 6,131,101 | A | | 10/2000 | Maitino et al. | |
| 6,175,827 | B1 | | 1/2001 | Cordery et al. | |
| 6,178,411 | B1 | | 1/2001 | Reiter | |
| 6,178,412 | B1 | | 1/2001 | Ratzenberger, Jr. et al. | |
| 6,253,219 | B1 | | 6/2001 | Gardner et al. | |
| 6,269,344 | B1 | | 7/2001 | Junger | |
| 6,292,709 | B1 | | 9/2001 | Uhl et al. | |
| 6,311,104 | B1 | | 10/2001 | Shea et al. | |
| 6,370,446 | B1 | | 4/2002 | Divine et al. | |
| 6,371,521 | B1 | * | 4/2002 | Petkovsek | 283/67 |
| 6,385,504 | B1 | | 5/2002 | Pintsov et al. | |
| 6,457,012 | B1 | * | 9/2002 | Jatkowski | 707/101 |
| 6,532,452 | B1 | | 3/2003 | Pintsov et al. | |
| 6,536,659 | B1 | | 3/2003 | Hauser et al. | |
| 6,549,892 | B1 | | 4/2003 | Sansone | |
| 6,557,000 | B1 | | 4/2003 | Seestrom et al. | |
| 6,680,783 | B1 | * | 1/2004 | Pierce et al. | 358/1.14 |
| 6,741,724 | B1 | * | 5/2004 | Bruce et al. | 382/101 |
| 6,865,561 | B1 | | 3/2005 | Allport et al. | |
| 7,647,231 | B2 | * | 1/2010 | Kuebert et al. | 705/1 |
| 2001/0010334 | A1 | | 8/2001 | Park et al. | |
| 2002/0029202 | A1 | | 3/2002 | Lopez | |
| 2002/0147731 | A1 | | 10/2002 | Seestrom et al. | |

### OTHER PUBLICATIONS

United States Postal Service, Address Change Service, Publication 8, Jul. 1997.

United States Postal Service, Domestic Mail Manual DMM53, Jan. 1, 1998.

United States Postal Service, Volumes, Characteristics, and Costs of Processing Undeliverable–As–Addressed Mail (Sep. 10, 1999).

Business Wire, "Pitney Bowes: Pitney Bowes Addressright system allows companies to make best impression and save money through the mail," May 1, 1992.

George, Tischelle, Fossil to Launch Online Return Process, InformationWeek (Aug. 4, 2000) at http://www.informationweek.com/story/showArticle.jhtml?articleID=6509470 (Sep. 20, 2006).

Tygar, J.D. et al., Crytographic Postage Indicia, Asian Computing Science Conference, 378–391 (1996) at http://www.cs.ucsd.edu/~bsy/pub/asian–96.ps.

United States Postal Service, Address Change Service, publication 8 (Jul. 1997).

United States Postal Service, Address Change Service, publication 8 (Sep. 1998).

United States Postal Service, DMM53 Domestic Mail Manual (excerpts) (Jan. 1, 1998).

United States Postal Service, Fiscal Year Closing Guidance, Postal Bulletin 22004 (Aug. 12, 1999).

United States Postal Service, Holiday Publicity Kit for Postmasters, Postal Bulletin 21984 (Nov. 5, 1998).

United States Postal Service, Information–Based Indicia Program (IBIP), Performance Criteria for Information–Based Indicia and Security Architecture for Open IBI Postage Evidencing Systems (PCIBI–O) (Feb. 23, 2000).

International Search Report issued on Aug. 13, 2003 in corresponding International Application No. PCT/US03/01177.

Written Opinion issued on Sep. 30, 2003 in corresponding International Application No. PCT/US03/01177.

International Preliminary Examination Report issued on May 18, 2004 in corresponding International Application No. PCT/US03/01177.

Examination Report issued on Oct. 1, 2004 in corresponding New Zealand Application No. 534843.

Notice of Opposition to Grant of Application filed on Jul. 17, 2006 in corresponding New Zealand Application No. 534843.

Opponent's Statement of Case filed on Aug. 21, 2006 in corresponding New Zealand Application No. 534843.

Supplemental European Search Report issued on Feb. 28, 2006 in corresponding European Application No. 03705775.9.

Examination Report issued on Mar. 15, 2007 in corresponding European Application No. 03705775.9.

Examination Report issued on Jul. 4, 2006 in corresponding Australian Application No. 2003207564.

Letter from the U.S. Postal Service addressed to Locaters International, Inc. dated Oct. 1, 1982.

Letters from the U.S. Postal Service dated Jul. 16, 1990.

Letter from the U.S. Postal Service address to Sim & Henry dated Jun. 16, 1982.

Letter from the U.S. Postal Service dated Nov. 3, 1982.

U.S. Postal Service Management Instruction "Furnishing Address Changes to Election Boards and Voter Registration Commissions," issued Jan. 31, 1989.

House Report No. 102–1086, Part 2, pp. 1–9 (1992).

The Federal Register, vol. 65, No. 99, pp. 32136–38, dated May 22, 2000.

Privacy Act Systems of Records, Jul. 1999, pp. 391–392.

Privacy Act Systems of Records—Appendix, Jul. 1999, pp. 379–381.

The Federal Register, vol. 67, No. 241, pp. 77097–98 and 77089–90, dated Dec. 16, 2002.

The Federal Register, vol. 67, No. 105, pp. 38041–43, dated May 31, 2002.

The Federal Register, vol. 54, No. 206, pp. 43657–58, dated Oct. 26, 1989.

U.S. General Accounting Office: Report to Congressional Requesters. "U.S. Postal Service: Improved Oversight Needed to Protect Privacy of Address Changes," Aug. 13, 1996, pp.1–29.

Document 1—Compliant for Declaratory Judgment of Invalidity and Unenforceability of Patent, filed Mar. 11, 2005 in Case No. 2:05CV70956. pp. 1–45.

Document 2—Statement of Disclosure of Corporate Affiliations and Financial Interest, filed Mar. 11, 2005 in Case No. 2:05CV70956.

Document 3—Report on the Filing or Determination of an Action Regarding a Patent or Trademark, filed Mar. 14, 2005 in Case No. 2:05CV70956. pp. 1–2.

Document 4—Plaintiff's Motion to Dismiss, filed Jun. 23, 2005 in Case No. 2:05CV70956.

Document 5—Order Dismissing Case Without Prejudice, filed Jun. 28, 2005 in Case No. 2:05CV70956.

US 6,826,548 C1

Page 3

United States Postal Service, Postal Bulletin, PB 22042, Jan. 25, 2001, pp. 1–112.

United States Postal Service, Postal Bulletin, PB 22083, Aug. 22, 2002, pp. 1–80.

United States Postal Service, Postal Bulletin, PB 21993, Mar. 11, 1999, pp. 1–88.

United States Postal Service, Postal Bulletin, PB 22038, Nov. 30, 2000, pp. 1–176.

United States Postal Service, Confirmation Services Technical Guide, Publication 91, May 2008, pp. 1–104.

Mailpiece Quality Control (MQC) Program–Contents, Self–Study Guide Modules, Sep. 2007, Modules 1–10 and Appendix A.

United States Postal Service, National Customer Support Center, ACS Service, http://ribbs.usps.gov/index.cfm?page=acs; pp. 1–2.

United States Postal Service, DMM 507 Mailer Services, http://pe.usps.com/text/dmm300/507.htm#wp1223780; pp. 1–80.

United States Postal Service, Postal Bulletin, PB 21934, Dec. 5, 1996, pp. 1–56.

Address Change Service Application, Address Change Service Department, National Address Information Center.

Letter from U. S. Postal Services addressed to Honorable Thomas C. Sawyer, Nov. 24, 1993.

Letter from U.S. House of Representatives addressed to Honorable Marvin Runyon, Oct. 5, 1993.

Letter from U.S. Postal Service addressed to Managers, Sales (Area), Dec. 20, 1994.

Letter from U.S. Postal Service, Customer and Automation Service Department, Aug. 28, 1991.

Letter from U.S. Postal Service, National Customer Support Center, Aug. 8, 1996.

Postal Automated Redirection System—The USPS Solution, 13th International Conference on Postal Automation, May 23–28, 1999.

The Federal Register, vol. 62, No. 60, pp. 15055–15065, Mar. 28, 1997.

United States Postal Service, Your Guide to Address Change Services, pp. 1–25, May 1, 1991.

United States Postal Service, Address Change Service, Addendum to Publication 8 Address Change Service, Publication 8, Sep. 1998.

United States Postal Service, Address Change Service, Creative Solutions for Your Business Needs, News Briefs, Publication 8, Jul. 1990.

United States Postal Service, Address Change Service, Third–Class Address Change Service, Sep. 13, 1988.

United States Postal Service, *Draft* Information–Based Indicia Program (IBIP) Performance Criteria for Information–Based Indicia and Security Architecture for Closed IBI Postage Metering Systems (PCIBI–C) Jan. 12, 1999.

United States Postal Service, National Customer Support Center, Move Update, pp. 1–12, Apr. 1997.

United States Postal Service, Postal Bulletin, Second–Generation Address Change Service, PB 21798, Sep. 19, 1991.

United States Postal Service, The Mailroom Companion, vol. 2, No. 2, pp. 1–8, Feb. 1997.

* cited by examiner

US 6,826,548 C1

**1**

# EX PARTE
# REEXAMINATION CERTIFICATE
# ISSUED UNDER 35 U.S.C. 307

THE PATENT IS HEREBY AMENDED AS
INDICATED BELOW.

**Matter enclosed in heavy brackets [ ] appeared in the
patent, but has been deleted and is no longer a part of the
patent; matter printed in italics indicates additions made
to the patent.**

AS A RESULT OF REEXAMINATION, IT HAS BEEN
DETERMINED THAT:

Claims **1-38** are cancelled.

New claims **39-63** are added and determined to be patent-
able.

*39 A method for processing returned mail items sent by a
sender to an intended recipient, the method comprising:*

*decoding, subsequent to mailing of the returned mail
items, information indicating whether the sender wants
a corrected address to be provided for the intended
recipient, on at least one of the returned mail items;*

*obtaining an updated address of the intended recipient
subsequent to determining that the sender wants a cor-
rected address to be provided for the intended recipi-
ent; and*

*electronically transmitting an updated address of the
intended recipient to a transferee, wherein the trans-
feree is a return mail service provider.*

*40. A computer program product residing on a computer
readable medium comprising instructions for causing a
computer to:*

*store decoded information indicating whether a sender
wants a corrected address to be provided and a cus-
tomer number, each associated with at least one of a
plurality of mail items returned subsequent to mailing
as being undeliverable;*

*determining from the decoded data that the customer
wants a corrected address to be provided for at least
one of the plurality of undeliverable mail items;*

*receive an updated address of an intended recipient for at
least one of the plurality of undeliverable mail items,
subsequent to and based upon the determining step;
and*

*transmit the updated address to a transferee, wherein the
transferee is a return mail service provider.*

*41. A system for processing a plurality of undeliverable
mail items comprising:*

*a first detector, wherein the first detector detects, subse-
quent to mailing the undeliverable mail items, encoded
information on at least one of the plurality of undeliver-
able mail items indicating whether a sender wants a
corrected address to be provided for at least one of the
undeliverable mail items; and*

*a processor that uses a computer program comprising
instructions that cause the system to: i) decode the
information indicating whether the sender wants a cor-
rected address to be provided; ii) encode and decode
intended recipient identification information; and iii)
enable an updated address of an intended recipient to
be sent to a transferee, wherein the transferee is a
return mail service provider.*

**2**

*42. A method for processing a plurality of undeliverable
mail items, comprising:*

*receiving from a sender a plurality of mail items, each
including i) a written addressee, and ii) encoded data
indicating whether the sender wants a corrected
address to be provided for the addressee;*

*identifying, as undeliverable mail items, mail items of the
plurality of mail items that are returned subsequent to
mailing as undeliverable;*

*decoding the encoded data incorporated in at least one of
the undeliverable mail items;*

*creating output data that includes a customer number of
the sender and at least a portion of the decoded data;*

*determining if the sender wants a corrected address pro-
vided for intended recipients based on the decoded
data;*

*if the sender wants a corrected address provided, elec-
tronically transferring to the sender information for the
identified intended recipients that enable the sender to
update the sender's mailing address files; and*

*if the sender does not want a corrected address provided,
posting return mail data records on a network that is
accessible to the sender to enable the sender to access
the records.*

*43. The method of claim 42, further comprising transmit-
ting the name and address of the intended recipients to a
mailing address service provider, subsequent to the deter-
mining step, in order to obtain an updated address for each
intended recipient of an undeliverable mail item.*

*44. The method of claim 42, wherein the encoded data
further indicates a name and address of the intended recipi-
ent.*

*45. The method of claim 42, wherein the plurality of mail
items further include a written return address that is not that
address of the sender.*

*46. A method for processing a plurality of undeliverable
mail items, comprising:*

*receiving from a sender a plurality of mail items, each
including i) a written addressee, and ii) encoded data
indicating whether the sender wants a corrected
address to be provided for the addressee;*

*identifying, as undeliverable mail items, mail items of the
plurality of mail items that are returned subsequent to
mailing as undeliverable;*

*decoding the encoded data incorporated in at least one of
the undeliverable mail items;*

*creating output data that includes a customer number of
the sender and at least a portion of the decoded data;*

*determining, based on the decoding step, if the sender
wants a corrected address provided for intended recipi-
ents;*

*if the sender wants a corrected address provided, elec-
tronically transferring to the sender information for the
identified intended recipients that enable the sender to
update the sender's mailing address files, including a
name change and a job change of intended recipients;
and*

*if the sender does not want a corrected address provided,
posting return mail data records on a network that is
accessible to the sender to enable the sender to access
the records.*

*47. The method of claim 46, further comprising transmit-
ting the name and address of the intended recipients to a
mailing address service provider, subsequent to the deter-
mining step, in order to obtain an updated address for each
intended recipient of an undeliverable mail item.*

US 6,826,548 C1

**3**

48. The method of claim 46, wherein the encoded data further indicates a name and address of the intended recipient.

49. The method of claim 46, wherein the plurality of mail items further include a written return address that is not that address of the sender.

50. A method for processing a plurality of undeliverable mail items, comprising:

receiving from a sender a plurality of mail items, each including i) a written addressee, and ii) encoded data indicating whether the sender wants a corrected address to be provided for the addressee;

identifying, as undeliverable mail items, mail items of the plurality of mail items that are returned subsequent to mailing as undeliverable;

decoding the encoded data incorporated in at least one of the undeliverable mail items;

creating first output data that includes a customer number of the sender and at least a portion of the decoded data;

sorting the first output data by customer number, after creating the first output data;

creating second output data for a customer number that includes the name and address of the intended recipients associated with the customer number, after the sorting step;

determining if the sender wants a corrected address provided for intended recipients;

if the sender wants a corrected address provided, electronically transferring to the sender information for the identified intended recipients that enable the sender to update the sender's mailing address files, including a name change and a job change of intended recipients; and

if the sender does not want a corrected address provided, posting return mail data records on a network that is accessible to the sender to enable the sender to access the records.

51. The method of claim 50, wherein the encoded data further indicates a name and address of the intended recipient.

52. The method of claim 50, wherein the plurality of mail items further include a written return address that is not that address of the sender.

53. The method of claim 50, further comprising transmitting the name and address of the intended recipients to a mailing address service provider in order to obtain an updated address for each intended recipient of an undeliverable mail item.

54. A method for processing a plurality of undeliverable mail items, comprising:

receiving from a sender a plurality of mail items, each including i) a written addressee, and ii) encoded data indicating whether the sender wants a corrected address to be provided for the addressee;

identifying, as undeliverable mail items, mail items of the plurality of mail items that are returned subsequent to mailing as undeliverable;

decoding the encoded data incorporated in at least one of the undeliverable mail items;

creating first output data that includes a customer number of the sender and at least a portion of the decoded data;

sorting the content of the first output data by customer number;

creating second output data that includes a customer number and the name and address of the intended

**4**

recipients associated with the customer number, after the sorting step;

determining if the sender wants a corrected address provided for intended recipients based on the decoded data;

if the sender wants a corrected address provided, i) electronically transmitting the name and address of the intended recipient to an address correction service provider and receiving an updated address of the intended recipient from the address correction service provider; ii) electronically transferring to the sender, subsequent to receiving an updated address of the intended recipient from the address correction service provider, information for the identified recipients that enable the sender to update the sender's mailing address files; and

if the sender does not want a corrected address provided, posting return mail data records on a network that is accessible to the sender to enable the sender to access the records.

55. The method of claim 54, wherein the encoded data further indicates a name and address of the intended recipient.

56. The method of claim 54, wherein the plurality of mail items further include a written return address that is not that address of the sender.

57 A method for processing a plurality of undeliverable mail items, comprising:

receiving from a sender a plurality of mail items, each including i) a written addressee, and ii) encoded data indicating whether the sender wants a corrected address to be provided for the addressee;

identifying, as undeliverable mail items, mail items of the plurality of mail items that are returned subsequent to mailing as undeliverable;

decoding the encoded data incorporated in at least one of the undeliverable mail items;

creating first output data that includes a customer number of the sender and at least a portion of the decoded data including the name and address of the intended recipient;

sorting the content of the first output data by customer number;

creating second output data for a customer number that includes the name and address of the intended recipients associated with the customer number, after the sorting step;

determining if the sender wants a corrected address provided for intended recipients based on the decoded data;

if the sender wants a corrected address provided, i) electronically transmitting the name and address of the intended recipient to an address correction service provider and receiving an updated address of the intended recipient from the address correction service provider; and ii) electronically transferring to the sender, subsequent to receiving an updated address of the intended recipient from the address correction service provider, information for the indentified intended recipients that enable the sender to update the sender's mailing address files; and

if the sender does not want a corrected address provided, posting return mail data records on a network that is accessible to the sender to enable the sender to access the records.

58. The method of claim 57, wherein the encoded data further indicates a name and address of the intended recipient.

US 6,826,548 C1

| 5 | 6 |

*59. The method of claim 57, wherein the plurality of mail items further include a written return address that is not that address of the sender.*

*60. A system for processing a plurality of undeliverable mail items, comprising:*

    *a letter transport for receiving from a sender a plurality of undeliverable mail items that are returned subsequent to mailing as being undeliverable, each undeliverable mail item including i) a written addressee, and ii) encoded data indicating whether the sender wants a corrected address to be provided for the addressee;*

    *a camera for decoding the encoded data incorporated in at least one of the undeliverable mail items; and*

    *a computer for i) creating first output data that includes a customer number of the sender and at least a portion of the decoded data including the name and address of the intended recipient, iii) sorting the content of the first output data by customer number, after creating the first output data; ii) creating second output data for a customer number that includes the name and address of the intended recipients associated with the customer number, after the sorting the content of the output file by customer number; and iv) determining if the sender wants a corrected address provided for intended recipients based on the decoded data;*

    *wherein the computer, upon determining that the sender wants a corrected address provided, i) electronically transmits the name and address of the intended recipient to an address correction service provider and receives and updated address of the intended recipient from the address correction service provider; and ii) electronically transfers to the sender, subsequent to receiving an updated address of the intended recipient from the address correction service provider, information for the identified intended recipients that enable the sender to update the sender's mailing address files; and*

    *wherein the computer, upon determining that the sender does not want a corrected address provided, posts return mail data records on a network that is accessible to the sender to enable the sender to access the records.*

*61. The method of claim 60, wherein the encoded data further indicates a name and address of the intended recipient.*

*62. The method of claim 60, wherein the plurality of mail items further include a written return address that is not that address of the sender.*

*63. A system for processing a plurality of undeliverable mail items, comprising:*

    *a hand-held barcode optical scanner for decoding encoded data on undeliverable mail items that are returned subsequent to mailing as being undeliverable, the encoded data indicating whether a sender wants a corrected address to be provided for the addressee incorporated, wherein each undeliverable mail item also includes a written addressee; and*

    *a computer for i) creating first output data that includes a customer number of the sender and at least a portion of the decoded data including the name and address of the intended recipient; ii) sorting the content of the first output data by customer number, after creating the first output data; iii) creating second output data for a customer number that includes the name and address of the intended recipients associated with the customer number, after the sorting the content of the output file by customer number; and iv) determining if the sender wants a corrected address provided for intended recipients based on the decoded data;*

    *wherein the computer, upon determining that the sender wants a corrected address provided, i) electronically transmits the name and address of the intended recipient to an address correction service provider and receives an updated address of the intended recipient from the address correction service provider; and ii) electronically transfers to the sender, subsequent to receiving an updated address of the intended recipient from the address correction service provider, information for the identified intended recipients that enable the sender to update the sender's mailing address files; and*

    *wherein the computer, upon determining that the sender does not want a corrected address provided, posts return mail data records on a network that is accessible to the sender to enable the sender to access the records.*

\*   \*   \*   \*   \*